**SCHUBERT JONCKHEER & KOLBE LLP**
ROBERT C. SCHUBERT (S.B.N. 62684)
rschubert@sjk.law
AMBER L. SCHUBERT (S.B.N. 278696)
aschubert@sjk.law
DANIEL L.M. PULGRAM (S.B.N. 354569)
dpulgram@sjk.law
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220

**TYCKO & ZAVAREEI LLP**
SABITA J. SONEJI (S.B.N. 224262)
ssoneji@tzlegal.com
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

DAVID A. MCGEE (*pro hac vice* to be sought)
dmcgee@tzlegal.com
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900

*Counsel for Plaintiff Ryan Keller and Keller Holdings LLC.*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RYAN KELLER, individually and on behalf of his business, KELLER HOLDINGS LLC (DBA SecureSight), and on behalf of all others similarly situated, | No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| AUTOMATTIC INC., a Delaware corporation, and MATTHEW CHARLES MULLENWEG, an individual, |  |
| *Defendants.* |  |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Plaintiff Ryan Keller ("Plaintiff"), on behalf of his business, Keller Holdings LLC, and on behalf of all others similarly situated, by and through counsel, bring this action against Automattic Inc., ("Automattic") and Matthew Charles Mullenweg ("Mullenweg") (collectively "Defendants"). Plaintiff's allegations herein are based upon personal knowledge as to his own acts, and based upon his investigation, his counsel's investigation, and information and belief as to all other matters.

## SUMMARY OF ACTION

1.      This case involves Defendants deliberately abusing their power and control over the WordPress ecosystem to purposefully, deliberately, and repeatedly disrupt contracts between Plaintiff and the putative class and the third-party business WPEngine Incorporated ("WPEngine" or "WPE"). Seeking to injure WPE and resolve a purported dispute between Defendants and WPE, Defendants intentionally sabotaged WPE's ability to provide its contractual services to customers, and indeed they have publicly and repeatedly bragged about how their interference has so degraded WPE's services that they are causing customers, like Plaintiff, to no longer be able to use WPE. Defendants' interference has sent shockwaves throughout the global WordPress ecosystem and has harmed hundreds of thousands of businesses and individuals who use WPEngine services, including Plaintiff and the Class.[1]

2.      Understanding the nature of the WordPress open-source software and the relationship between Plaintiff, WPE, and Defendants is critical to evaluating the merits of this action. WordPress is a massively successful free open-source web content management system, which allows individuals and businesses to create and build their own websites. WordPress maintains at least 54,000 plugins ("Plugins"), 11,000 themes, and unlimited layout customization options, which allow website developers and operators significant freedom of choice and customization when building and operating a website.[2] A significant proportion, by some estimates

---

[1] For example, Defendants' have maintained a website, WP Engine Tracker, to publicly show how many WPEngine customers have left WPEngine since Defendants' started engaged in their conduct. *See* https://wordpressenginetracker.com/ (last accessed, February 14, 2025).

[2] *See* https://barn2.com/blog/wordpress-market-share (last accessed February 14, 2025). As noted below, WordPress's own statements show they maintain at least 54,000 plugins while the foregoing article quotes a higher figure.

more than 40%, of all websites globally operate using the free open-source WordPress software.[3] WordPress software has long been promised to be free and available to everyone forever.

3.     One of the reasons for the massive success of WordPress has been the WordPress community, which consists of, among others, volunteers worldwide who are constantly creating, maintaining, and updating WordPress software and fixing security issues, as well as developing and updating innumerable tools, some known as Plugins,[4] to aid website developers with building and updating numerous aspects of their websites. The WordPress Plugins and software that website developers and operators rely on to build and allow their websites to continue to function are automatically updated from a central repository at the WordPress.org website. The use of the WordPress.org website as the central repository for these tens of thousands of Plugins, tools, and themes, including continuous updates of those Plugins, tools, and themes, is hard-coded into the WordPress core open-source software. In other words, when a developer uses WordPress source code, Plugins, or other tools, updates are automatically applied to those features for all users when the central repository is updated.

4.     The WordPress source code was originally owned and/or controlled by Defendant Mullenweg's for-profit company, Defendant Automattic. However, in 2010, Defendants represented that the source code would be transferred to the nonprofit WordPress Foundation (created by Mullenweg), which would ensure free and open access for all. Prior to September 2024, it was widely understood that the WordPress.org website was controlled by the non-profit WordPress Foundation. However, Mullenweg has recently claimed that the WordPress.org website is his own personal website which he can exclusively control as he sees fit.[5]

---

[3] *Id.*
[4] Per WordPress, a Plugin is a package of code that extends the core functionality of WordPress. Plugins extend the functionality of a website. *See* https://developer.wordpress.org/plugins/intro/what-is-a-plugin/ (last accessed February 14, 2025). For example, a Plugin could be used to automatically display links to the top ten most recent posts on a website or allow individuals to book appointments online.
[5] According to reports, Automattic has an entire division dedicated to the wordpress.org website. It is unclear who funds wordpress.org's infrastructure.

Schubert Jonckheer & Kolbe LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

5.      Creating a website from scratch using WordPress software can be time consuming and requires technical skill. This means that the average individual or business owner may not have the time or know-how to use, or learn how to use, WordPress software. As a result, numerous for-profit companies now offer web hosting platforms for WordPress. These companies offer tools that streamline and help manage the process of building or maintaining a website built with WordPress software for businesses and individuals who wish to create websites, such as Plaintiff. Some of these WordPress platform-hosting companies, such as WordPress.com and Pressable, are owned or controlled by Defendants Mullenweg and Automattic, while others, such as WPE, are independent.

6.      In September 2024 Defendants engaged in a self-described campaign of "nuclear war" against WPE, while ignoring the very real collateral damage that would ensue, due to a purported trademark dispute (which WPE claims was actually attempted extortion).[6] As part of this campaign of "nuclear war," Defendants blocked WPE's access to the WordPress.org repository including software updates and patches, security updates, and Plugins[7] starting at least as early as September 24, 2024. This action was temporarily rescinded to allow WPE to mirror certain data on the WordPress.org website on September 28, 2024, following which Defendants permanently blocked access again three days later. Plaintiff is not aware of any remotely comparable event where access to critical WordPress.org repository information was permanently blocked.

7.      Plaintiff and the class have suffered harm as a result of WPE's inability to access the repository. WordPress software is hard-coded to draw exclusively upon the WordPress.org repository for auto-updates, and use of WordPress.org is crucial for the efficient and effective use of the Plugins, updates, and patches needed for effective website creation, development, and maintenance for websites built using WordPress software, code, and tools. Although some partial

---

[6] As reported, "When WPE did not capitulate, Defendants carried out their threats, unleashing a self-described 'nuclear' war against WPE." *See* https://www.cio.com/article/3545272/things-get-nasty-in-lawsuit-between-wordpress-org-and-wp-engine.html (last accessed February 14, 2025).

[7] Although Defendants are now claiming that the blocked access was a result of WPE suing Defendants, this is not true. Defendants blocked access after receiving a cease-and-desist letter from WPE (which was sent as a result of numerous documented threats by Defendants officers, including Mullenweg, and numerous public attacks against WP Engine). There was no active litigation at the time Defendants blocked WPE services.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

workarounds exist, they are time consuming and require high levels of expertise to implement, which is precisely what Plaintiff sought to avoid when he purchased WPE hosting services in the first place.

8.      Defendants have no justifiable reason for interfering in the contracts between Plaintiff and WPE, and indeed they are actively seeking to capitalize on the disruption they themselves caused. Both WordPress.com and Pressable, web-hosting platforms owned by Defendants which compete with WPE, have been running major advertising campaigns offering to buy out WPE customers including advertising that their products have better "performance, security, and support." These advertising campaigns started immediately after Defendants blocked WordPress.org services from WPE, which caused decreased performance of WPE customer websites, security issues due to no longer having access to the central repository, and limited the website support that WPE could offer its customers due to being cut off from the central repository. Indeed, these advertising campaigns seeking to capitalize on Defendants' deliberate disruption of WPE services are ongoing.[8]

9.      Moreover, Defendants have utilized their position and access to WordPress core systems to publish a list of WPE customers and their websites, including websites owned by Plaintiff, in an effort to pressure website owners to cease using WPE services. On December 10, 2024, a district court issued an injunction ordering Defendants to take down this list of websites, including those of Plaintiff. *See* Case No. 24-cv-06917-AMO Dkt. No. 17.

10.     In addition to deliberately disrupting WPE's services and contracts with clients, including Plaintiff, Defendants, and in particular Mullenweg, have made numerous public statements disparaging WPE and attempting to influence individuals to not contract to use WPE's services. For example, in an October 2, 2024 X post, Mullenweg called WPE a "distressed asset" and conversed with a potential WPE customer and attempted to dissuade the customer from using WPE. Case No. 24-cv-06917-AMO Dkt. No. 64 at 18.

---

[8] *See* https://pressable.com/wpe-contract-buyout/ (Last Accessed February 14, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

11.    As a result of Defendants deliberate tortious interference and unfair competition, Plaintiff faces an impossible situation where he must either accept a fundamentally degraded and less stable service from WPE than originally agreed or must take considerable time, effort, and expense to migrate his websites to a new web platform. Plaintiff and the putative class were harmed when their contracts were disrupted and the increased instability and perceived risk of using WPE has decreased the value of services paid for.

12.    Plaintiff, individually and on behalf of a nationwide class, alleges claims of (1) Intentional Interference with Contractual Relations (2) Intentional Interference with Prospective Economic Relations; and (3) violation of California's Unfair Competition Law (Cal. Civ. Code §§ 17200, *et seq.*).

## **PARTIES**

*Plaintiff*

13.    Plaintiff Ryan Konrad Keller is a citizen and resident of Broadview Heights, Ohio. He brings this action individually and on behalf of his company, Keller Holdings LLC, and on behalf of all others similarly situated. His small business uses WPEngine to create, maintain, and update his business website and it has been impacted by the WordPress service disruption. His business operates by creating websites for companies and individuals using WPEngine services.

*Defendants*

14.    Defendant Automattic is a Delaware Corporate with its principal place of business in San Francisco, California. Automattic owns and operates several for-profit businesses in the WordPress ecosystem including WordPress.com, WordPress VIP, and Pressble.com, as well as WooCommerce, Inc. (an ecommerce tool).

15.    Defendant Matthew Charles Mullenweg is also the CEO and President of Automattic and purports to own a controlling share of the Automattic (84%).[9] Mullenweg has substantial contacts in California due to being CEO and President of Automattic and the founding director of the WordPress Foundation, a California nonprofit public benefit corporation.

---

[9] *See* https://techcrunch.com/2024/10/30/matt-mullenweg-talks-about-automattics-staffing-issues-and-financials-at-techcrunch-disrupt/?guccounter=1 (Last Accessed February 14, 2025).

16.     At all relevant times, except as may be otherwise indicated, Defendants and Automattic were jointly engaged in the wrongful acts alleged herein. Defendant Mullenweg was acting wrongfully on behalf of his company and in order to enrich himself, and Automattic was acting at his direction and for his benefit. Both parties jointly engaged in the wrongful acts alleged and are jointly liable.

### JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction and diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The class contains more than 100 members (indeed, it contains at least tens of thousands of members), and many of these members, including Plaintiff, have citizenship diverse from Defendants. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the case in controversy.

18.     The exercise of personal jurisdiction over Defendants is appropriate. Jurisdiction over Defendant Automattic is appropriate because Automattic has its principal place of business within this district, regularly conducts business in this district, and the claims at issue arise in substantial part out of its activities in this district. Jurisdiction over Defendant Mullenweg is appropriate because he is the CEO and President of Automattic, which is based in this District.

19.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2), and 1391(c)(1) and (2) because Defendant Automattic resides in this district and Defendant Mullenweg has substantial and routine relevant contacts in this district.

20.     Divisional Assignment: This action arises in the City and County of San Francisco, in that a substantial part of the events that give rise to the claims asserted herein occurred in the City and County of San Francisco, where Defendants reside. Pursuant to L.R. 3-2(d), all civil actions that arise in San Francisco shall be assigned to the San Francisco or Oakland Division.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1

## FACTUAL ALLEGATIONS

2

**I.    Background – The WordPress Ecosystem**

3      21.    WordPress is a major pillar of the internet. Its open-source free software is at the

4    core of millions of websites worldwide.

5      22.    The WordPress open-source code is theoretically administered by the WordPress

6    Foundation. The Foundation is a nonprofit organization charged with maintaining the WordPress

7    code and ecosystem. According to its website, "[t]he point of the foundation is to ensure free access,

8    in perpetuity, to the software projects we support."[10]

9      23.    Due to its promise of free access for everyone in perpetuity and opensource ideals

10    and transparency, WordPress has exploded in popularity. Since its founding in 2010 it has grown

11    to encompass, by its own estimates, more than 40% of all websites in the world.

12      24.    One of the greatest attractions of the WordPress is the WordPress "ecosystem."

13    Because WordPress is free and open source, it has attracted innumerable programmers and

14    engineers who combine efforts to improve or utilize the service. As a result, WordPress boasts that

15    it has over 54,000 freely available Plugins available for use in its repository.[11]

16      25.    Due to the huge number of freely available Plugins in the WordPress repository,

17    websites run using WordPress Plugins and code are highly customizable with various tools that

18    serve different purposes depending on individual need. Free access to these tens of thousands of

19    tools is a major element of the attraction to WordPress software and a major element of its staying

20    power. Moreover, Plugins not only enable enhanced website functionality and capacity, they are

21    essential for website administration, security, and updates.

22      26.    The WordPress source code and repository is stored on the WordPress.org website.

23    Plugins are stored, categorized, and reviewed in the repository, and the core WordPress software

24    includes more than 1,500 call backs to the WordPress.org website for functionality, updates, and

25    patches. Access to WordPress.org is essential for the use of WordPress software and the efficient

26

27    ---

[10] https://wordpressfoundation.org/ (Last Accessed February 14, 2025).

28    [11] https://wordpressfoundation.org/projects/ (Last Accessed February 14, 2025).

Class Action Complaint                                                                    8

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

and effective use of the Plugins, updates, and patches needed for effective website creation and development in the WordPress ecosystem.

27.     For years it was widely understood that WordPress.org was controlled by the WordPress Foundation. However, Mullenweg recently revealed that he controls WordPress.org as his own personal website.[12] This alarmed many WordPress contributors who believed they were aiding the non-profit WordPress Foundation, not donating substantial time, effort, and resources to Mullenweg's personal website.

28.     Defendant Matt Mullenweg was a founder of WordPress and created the WordPress foundation in 2010. Mullenweg split the nonprofit WordPress Foundation from his for-profit company, Automattic.

29.     Although Mullenweg claimed to have given the WordPress trademark to the WordPress foundation, he now purports to have retained for himself and Automattic exclusive, irrevocable, and perpetual rights to the WordPress commercial trademark. He also apparently claims to have reserved personal individual control over the WordPress.org website (including the vital repository), for himself.

30.     Creating a website from scratch can be difficult. As a result, a number of companies offer "managed website hosting" where they will create a website framework and management structure that makes it easier for developers and customers to create and control websites within a particular web-ecosystem.

31.     WPE is a managed website-hosting company that hosts and manages websites for customers utilizing WordPress software, including its Plugins. In this respect it is a direct competitor to Mullenweg and Automattic, who own competing managed website hosting services such as WordPress.com, and Pressable. WPE has grown significantly in the past several years and has a substantial customer base. WPE's customer base ranges from small businesses and individuals to major companies such as Yelp, Thompson-Reuters, and Dropbox.

---

[12] *See* https://www.theverge.com/2024/10/4/24262232/matt-mullenweg-wordpress-org-wp-engine (last accessed February 14, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

32.     Plaintiff is in the business of creating websites for paying customers. Plaintiff is a long-time WPE customer who has used WPE for more than a decade to manage and build websites for his clients, as well as for his own business website. Prior to September 2024, Plaintiff had no complaints about WPE and intended to continue to use WPE in both a personal and professional capacity for the indefinite future.

## II.     The Dispute Between Automattic and WP Engine

33.     Starting or around September 20, 2024, Defendants initiated a highly public and vocal dispute with WPE. While Defendants claim the origins of the conflict lies in a trademark dispute concerning whether the name "WPEngine" violates the WordPress commercial trademark owned by Automattic, WPE contends that Defendants' actions were a poorly disguised attempt to extort WPE out of tens of millions of dollars against the threat of making it virtually impossible for WPE (and its customers) to conduct its ordinary business.

34.     The dispute first became public when Mullenweg publicly excoriated WPE at a WordPress keynote address on September 20, 2024 (as he had promised to do in threatening texts to WPE employees and officers).[13] After WPE sent a cease-and-desist letter to Automattic on September 23, 2024, Automattic and Mullenweg almost immediately blocked WPE from accessing WordPress.org resources (on September 24, 2024). Plaintiff has found no other instance when WordPress blocked a major webhost from accessing its resources, which they had long promised would be free and available to everyone forever.

35.     Defendants' actions had an immediate and severe impact on WPE customers. These customers, including Plaintiff, were unable to install or update Plugins or themes and had limited administrative access to the websites they operated, as well as limited access to software updates, editing tools, and access control because these features were all tied to the WordPress central repository.[14] This not only crippled website owners' ability to control and modify their websites in

---

[13] *See* https://www.therepository.email/mullenweg-threatens-corporate-takeover-of-wp-engine (last accessed February 14, 2025).

[14] Websites typically have two components, a "frontend" and "backend". The frontend is what users accessing a website see, such as the visual elements like buttons, checkboxes, graphics, and

1    a managed environment, as they had paid WPE for, but also created a significant security risk, as

2    security vulnerabilities may not be left unpatched.

3        36.    WPE customers, including Plaintiff, suffered from substantially degraded website

4    performance for several days. All WPE customers are party to a Service Level Agreement (SLA)

5    which promises a certain level of website uptime. The multiple days of severely degraded services

6    substantially exceeded the permissible SLA allowed by contract.

7        37.    Almost immediately after Defendants blocked WP Engine, Defendants' companies,

8    such as Pressable, began an advertising campaign aimed at stoking customer backlash in an attempt

9    to convince customers to break their contracts with WPE.

10        38.    Defendants temporarily lifted the ban on WP Engine for three days (between

11    September 27 and 30), to allow WP Engine to make a mirror of some of the WordPress plugins and

12    code, but they quickly shut off access again on October 1, 2024.

13        39.    While WPE was able to mirror many parts of the Original WordPress.org system

14    based on information gathered in those three days, the mirrored servers could not provide service

15    equivalent to the standard that existed prior to September 24, 2024. The hard-coded references to

16    WordPress.org in core WordPress code and lack of access to the automatically updated plugins

17    repository, for example, meant the work-around was both difficult to implement and provided

18    degraded services compared with the originally contracted services.

19        40.    While Defendants claim that their decision to block access by Plaintiff and Class

20    Members was a typical cessation of business relationships during ongoing litigation, it was anything

21    but. WPE has produced voluminous evidence that the so-called trademark dispute is a mere pretext

22    to sabotage WPE's services and relationship with its customers. This evidence includes, but is not

23    limited to, numerous text messages from Mullenweg threatening WPE if it refused to pay at least

24    8% of their revenue to Automattic, Mullenweg's for-profit company, including threatening a

25    "nuclear war" if his demands were not met; statements from Mullenweg indicating the fees he

26    sought were based on what he thought WPE could afford, rather than what the value of the

27    ─────────────────────────────────────
     text messages. The backend is the data and infrastructure that make the website function. It
28    includes the source code for the website, and relevant here, plugins.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

trademark actually was; WPE's own longstanding use of the "WP" nomenclature, which was expressly permitted on the WordPress foundation website;[15] and engaging in unprecedented and malicious conduct utterly unrelated to the trademark dispute, such as seizing control of the popular ACF (Alternate Custom Fields) Plugin.[16]

41.    In any event, Defendants' actions knowingly and intentionally caused harm to Plaintiff and Class Members. Between September 24-27, 2024 and October 1, 2024 and December 10, 2024 (when the District Court enjoined Defendants' actions), Defendants engaged in a sustained and deliberate campaign to disrupt and inhibit the relationship between WPE and its customers. In addition to the crippling decision to shut down access to the core WordPress architecture (for software expressly promised to be always free and available to everyone), Defendant:

- added a checkbox to the WordPress.org website requiring someone to attest they were unaffiliated with WP Engine before they could access its resources;

- stole WPE's most popular plugin and renamed the author to give themselves credit for the product, repeatedly alluding that worse was to come for WPE and the increased risk that this product would be unstable (and specifically that Defendants would ensure it was less usable);

---

[15] Prior to the public dispute with WPE, WordPress advised on its website that "The abbreviation "WP" is not covered by the WordPress trademarks and you are free to use it in any way you see fit." *See* Internet Archive at (http://web.archive.org/web/20240912061820/https://wordpressfoundation.org/trademark-policy/). However, following the emergence of the dispute with WordPress, that same website now contains a new complaint about WPE, accusing them of making billions of dollars off the free WordPress software while not contributing back to the "community" sufficiently. *See* (https://wordpressfoundation.org/trademark-policy/) (Last Accessed February 14, 2025). While Defendants may be unhappy with the extent that WPE "contributes back" to software which was promised to be free and available to anyone, this is not a basis for a trademark dispute. There is no requirement to "give back" in order to use open-source software, and it is unclear why a statement about WPE's alleged lack of donations and purported profitability is on the trademark policy webpage.

[16] Among other things, Mullenweg seized control over the popular ACF plugin relating to a purported security vulnerability. This has never been done for a major plugin before (ACF had more than 2 million downloads). Mullenweg/Automattic also changed the name of the plugin and changed the authorship from WPE to WordPress.org (Mullenweg's personal website).

- sent emails to WPE customers attempting to poach them by claiming they could restore access to the website if the WPE customer left WPE;

- created a website showing the entire WPE customer base designed to induce customers to leave WPE;

- made public statements and threats towards WPE and its customers.

42.    Defendants have made no secret that their *intent* is to induce Plaintiff and Class Members to leave WPE by degrading the services WPE provides to its paying customers. When Defendant Mullenweg was asked about WPE customers who were harmed because "all of those millions of websites that depend, that are still running on WPEngine because they cannot get updates," Mullenweg responded:

> "Who pays any dollars to WordPress.org? [to the audience] No hands, right? There's nothing to pay for, it's all free. But people are paying 400 million dollars to WPEngine that promises them security, updates, hosting, et cetera. So they were selling the free stuff on WordPress.org to their customers. And then when we turned them off, they got mad."[17]

43.    As Mullenweg himself acknowledged, customers, including Plaintiff and Class Members, were paying WPE $400 million to manage the "free stuff" from WordPress.org including contractual promises of "security, updates, hosting, et. cetera." By Mullenweg's own admission, he turned off the services that WPE was selling to its customers, deliberately inhibiting the services and contracts between WPE and Plaintiff and Class Members.

44.    Mullenweg's statements in that interview are *far* from the only statements he has made. As the district court held in its order enjoining Defendants' unlawful conduct: "Defendants' conduct is designed to induce breach or disruption. That is made explicit in at least the following posts and texts which state, in part:

- 'I know that this is the nuclear option, it sets us down a specific path.' Brunner Dec. ¶ 28 & Ex. F.

- 'If you're saying 'next week' that's saying 'no,' so I will proceed with the scorched earth nuclear approach to [WPEngine].' *Id.* ¶ 31 & Ex. F.

---

[17] https://www.youtube.com/watch?v=f15Xn23Mytg&t=3474s (last accessed February 14, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

- 'I don't think they're worth a fraction of that now. Customers are leaving in droves. . . . It's a distressed asset.' Jenkins Decl. ¶ 11 & Ex. 10.

- "I suspect there are going to be millions of sites moving away from [the ACF Plugin] in the coming weeks." *Id.* ¶ 12 & Ex. 11.

- "Hmm, I guess you'll have to wait and see why people might not trust ACF as much going forward." Brunner Decl. ¶ 58 & Ex. I."

Case No. 3:24-cv-06917-AMO (Dkt. 64 at 29:13-23).

45.    There are voluminous statements in the public domain and in the district court's record in the above-referenced case, which unambiguously demonstrate Defendants' intent to disrupt the relationship between WPE, Plaintiff, and the putative class. Defendants' intent to disrupt the relationship between WPE, Plaintiff, and the putative class is further established by their marketing, which deliberately targeted concerns about the WPE uncertainty that Defendants themselves caused, and their public statements about how they were going to poach the harmed WPE customers.

46.    Even if Defendants' trademark case had merit (it likely does not), it does not excuse Defendants' deliberate and vindictive targeting of Plaintiff and Class's contracts with WPE. Defendants' actions caused irreparable harm to WPEngine, Plaintiff, and the putative class. Moreover, Defendants' deliberate withholding of open-source software pending a demand for tens of millions of dollars to be paid to their for-profit enterprise poses a grave danger to WordPress's entire open-source ecosystem built on free exchange and access to information. Mullenweg profited greatly from the growth of open-source WordPress through his ownership of Automattic and WordPress.com. Withholding access to this open-source software pending personal payment to him and entities he controls is a betrayal of open-source principles and harms not just Plaintiff, Class Member, and WP Engine, but indeed for the entire internet as a whole.

### III.    Plaintiff's Experiences

47.    Defendants' interference significantly impacted the business of Plaintiff Keller. While Plaintiff Keller was happy with WPE services and intended to continue using WPE services, the service disruption and degraded service, coupled with repeated public statements and threats

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1    made by Defendants, led Plaintiff to explore moving his website and all those operated by his

2    business to another managed web host.

3        48.    Plaintiff's livelihood revolves around building and operating websites, and

4    significant disruptions will impact his business including his own capacity to fulfill his contractual

5    obligations to his own clients.

6        49.    Plaintiff Keller's websites were significantly impacted by outages despite WPE's

7    attempts to create workarounds.

8        50.    Plaintiff Keller has had to spend significant time and expense responding to the

9    service disruptions and degradations, preparing for moving his and his clients' websites to a new

10   host, and in investigating a new host environment after a long and successful prior partnership with

11   WPE. He is not alone in the harm he has suffered.

12       51.    Plaintiff Keller's personal website was also significantly impacted. Access to the

13   WordPress backend was available intermittently, and Plaintiff Keller received emails related to this

14   downtime.

15       52.    Plaintiff Keller pays WPE $3,300 per year for its "Scale Plan," 2 additional websites,

16   and GeoTargeting and Multi-Site services. Due to Defendants' actions, Plaintiff Keller was unable

17   to update his website in a standard marketing cycle adjustment. Plaintiff Keller had to spend time

18   and expense to manage, update, and modify his website as a result of Defendants cutting off WPE

19   from the WordPress ecosystem and therefore, did not receive the benefit of his bargain with WPE

20   as Plaintiff Keller had to do the work that he pays WPE for.

21       53.    During the course of the disruption (prior to the December 10 injunction), Plaintiff

22   Keller maintained significant concerns that the inability to update Plugins and the intermittent

23   disruptions to the website backend could create a security vulnerability that would damage his

24   website, in addition to potentially harming those of his customers and his professional reputation.

25       54.    If the district court had not issued its December 10 preliminary injunction, Plaintiff

26   Keller would have had no choice but to move his websites away from WPEngine. Indeed, if the

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1    preliminary injunctive relief is not made permanent, Plaintiff Keller would move his services away

2    from WPE to another web host.

3        55.    Moving to another managed web host would require significant financial investment

4    and risk. If he were forced to change hosts, there is a good possibility that functions on the 20 or so

5    websites operated by Plaintiff, as well as Plaintiff's own website, would break or that there would

6    be additional downtime. There would be a serious risk that this could cause him to lose clients, and

7    it would take major resources, including hours spent and money invested, to attempt to mitigate the

8    risk of harm.

9        56.    To the extent that there may be technical workarounds to mitigate the harm caused

10   by Defendants' deliberate disruption and denial of services, this entirely misunderstands the

11   purpose for website management systems like WPEngine. Customers, like Plaintiff, purchase

12   managed web-hosting services from providers such as WPE in order to *avoid* having to spend

13   significant time and effort working on manual updates and complex and difficult backend website

14   construction and modification. Plaintiff and Class Members paid for the tools to make website

15   construction, operation, and function efficient and effective. A workaround that requires as much

16   or more work than operating the website without the managed web host to begin with is not an

17   effective mitigation of harm; it is a breach of the fundamental purpose of the contract.

18       57.    As Defendants have repeatedly stated, they anticipate many more people will be

19   compelled to leave WPEngine as a result of their self-described campaign of "scorched earth

20   nuclear war" against WPE. In Defendants' self-proclaimed war, hurting innocent class members is

21   not by accident; it is the intended result. Even customers who have stayed with WPE nevertheless

22   suffered months of significantly degraded service worth far less than they paid for because of

23   Defendant's deliberate attempt to leverage their power and control over the WordPress ecosystem

24   to cripple a competitor (and its customers) and redirect Plaintiff and Class Members to Defendants'

25   own for-profit businesses.

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Class Action Complaint                                                                    16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

## **CLASS ACTION ALLEGATIONS**

58.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(1)-(3) of the Federal Rules of Civil Procedure, on behalf of himself, his business and a Nationwide Class defined as:

> **All persons in the United States who had ongoing active WPE WordPress Web Hosting Plans on or before September 24, 2024 through December 10, 2024.**

59.     Excluded from the Nationwide Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, coconspirators, successors, subsidiaries, and assigns. Also excluded from the Nationwide Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

60.     This action is brought and may be properly maintained as a class action pursuant to Rule 23. This action satisfies the requirements of Rule 23, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

61.     **Numerosity.** The Nationwide Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Nationwide Class Members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff, on information and belief, alleges that the Nationwide Class includes at least hundreds of thousands of WPE customers including the hundreds of thousands of websites identified by Defendants on their "WP Engine Tracker" website https://wordpressenginetracker.com.

62.     **Commonality.** Common legal and factual questions exist that predominate over any questions affecting only individual Class Members. These common questions, which do not vary among Class Members and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

    a.   Whether Defendants had implied contracts with Plaintiff and the putative class;

    b.   Whether Defendants had a duty to keep WordPress "free for everyone";

    c.   Whether Defendants intended to interfere in the relationship between WPE and Plaintiff and the putative Class;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

  d. Whether Defendants actually interfered in the relationship between WPE and Plaintiff and the putative Class;

  e. Whether Defendants engaged in independently wrongful conduct.

  f. Whether Defendants' actions constitute unfair competition.

  g. Whether Plaintiff and Class Members were harmed.

  h. Whether Plaintiff and Class Members are entitled to actual, statutory, or other forms of damages and other monetary relief; and,

  i. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief or restitution.

63. **Typicality.** Plaintiff's claims are typical of other Class Members' claims because Plaintiff and Class Members were subjected to the same allegedly unlawful conduct and damaged in the same way through having their contracts with WPE disrupted and therefore overpaying on their contracts with WPE due to Defendants' actions to limit WPE's access to the WordPress ecosystem, including regular updates, tools, Plugins, and other software, which meant that WPE could not perform for Plaintiff or the Class the services contracted for.

64. **Adequacy of Representation.** Plaintiff is an adequate class representative because he is a Class Member, and his interests do not conflict with the Class interests. Plaintiff retained counsel who are competent and experienced in class action litigation. Plaintiff and his counsel intend to prosecute this action vigorously for the Class's benefit and will fairly and adequately protect their interests.

65. **Predominance and Superiority.** The Class can be properly maintained because the above common questions of law and fact predominate over any questions affecting individual Class Members. A class action is also superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford individual litigation, the court system could not. It would be unduly burdensome if thousands of individual cases proceed. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the

---

1  courthouse, and the risk of an inequitable allocation of recovery among those with equally

2  meritorious claims. Individual litigation would increase the expense and delay to all parties and the

3  courts because it requires individual resolution of common legal and factual questions. By contrast,

4  the class-action device presents far fewer management difficulties and provides the benefit of a

5  single adjudication, economies of scale, and comprehensive supervision by a single court.

6  66.  **Declaratory and Injunctive Relief.** The prosecution of separate actions by

7  individual Class Members would create a risk of inconsistent or varying adjudications with respect

8  to individual Class Members that would establish incompatible standards of conduct for

9  Defendants. Such individual actions would create a risk of adjudications that would be dispositive

10 of the interests of other Class Members and impair their interests. Defendants have acted and/or

11 refused to act on grounds generally applicable to the Class, making final injunctive relief or

12 corresponding declaratory relief appropriate.

13  ### CLAIMS FOR RELIEF

14  **Count One**
**Intentional Interference with Contractual Relations**
**On behalf of Plaintiff and the Class**

15

16  67.  Plaintiff incorporates by reference and realleges each allegation above as though

17 fully set forth herein.

18  68.  At all relevant times (at or before September 20, 2024), there were valid contracts

19 between Plaintiff and Class Members and the third party WPE.

20  69.  At all relevant times, Defendants knew that class members maintained valid

21 contracts with the third party WPE.

22  70.  As alleged herein, Defendants deliberately acted with the intent to disrupt those

23 contracts through cutting off WPE's access to the WordPress's technology, software, Plugins, and

24 other tools thereby ensuring that WPE could not fully fulfill its contractual obligations to the

25 Plaintiff and Class Members for website hosting and related services, or if WPE could find a

26 workaround to block of access to WordPress's technology, software, Plugins, and other tools to

27

28

Class Action Complaint                                                                    19

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

fulfill its obligations, it made performance of WPE's contracts with its customers more expensive and difficult.

71. As a result, Defendants' conduct has prevented and may prevent full performance of the contracts in the future depending on the outcome of WPE's case against Defendants. Defendants' conduct meant that WPE could not install or update Plugins or themes, had limited access to software updates, editing tools, and access control to the WordPress central repository, which meant WPE could not perform necessary contractual functions that Plaintiff and the Class paid WPE to perform. Further, Plaintiff and the Class experienced significant service interruptions and their contracts with WPE guaranteed certain levels of service, which WPE was unable to fulfill due to Defendants' conduct. As a result of Defendant's conduct, Plaintiff and the Class did not receive the benefit of their bargain with WPE.

72. Plaintiff and Class Members have been and will be harmed, and Defendants know of this harm (including because Defendants, including Mullenweg, acknowledged the harm in interviews and have made public statements concerning the harm) and were a substantial factor in its cause.

**Count Two**
**Intentional Interference with Prospective Economic Relations**
**On behalf of Plaintiff and the Class**

73. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them by reference as though set forth in full.

74. As alleged herein, Defendants have intentionally interfered with prospective economic relationships between current and former WPE customers (class members) and WPE. Class members, such as Plaintiff, must seriously consider not renewing contracts with WPE, allowing the contracts to lapse, terminating the contracts, or not expanding contracts with WPE as a result of Defendants' interference.

75. Plaintiff and Class Members and WPE would have likely maintained or expanded relationships to the benefit of class members under the prospective relationship.

76.    Defendants knew of these relationships and prospective relationships.

77.    Defendants intended to disrupt those relationships and prospective relationships.

78.    Defendants engaged in independently wrongful conduct in the course of interfering with those prospective relationships including violations of the UCL (Section 17200 California Business and Professions Code).

79.    Defendants conduct has and will disrupt those prospective relationships. For example, but for the December 10 injunction, Plaintiff would have not renewed his contact with WPE.

80.    Plaintiff and the Class have been and will be harmed.

81.    Defendant's wrongful conduct has been and will be a substantial factor in the harm.

82.    As a direct and proximate result of the interference, Plaintiff and the Class are entitled to relief as set forth herein.

**Count Three**
**California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.***
**On behalf of Plaintiff and the Class**

83.    Plaintiff, individually and on behalf of the Class, incorporates by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

84.    Plaintiff pleads this claim for equitable relief, including restitution and injunctive relief, in the alternative to his claims for damages.

85.    Defendants violated California's Unfair Competition Law (the "UCL"), CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, by engaging in unlawful, unfair, or fraudulent business acts and practices that constitute acts of "unfair competition" as defined in the UCL with respect to their conduct and actions with towards Plaintiff and the class.

86.    Defendants' actions as alleged herein in this Class Action Complaint constitute an "unlawful" practice as encompassed by CAL. BUS. & PROF. CODE §§ 17200 *et seq.* because Defendants' intentional disruption of services they promised to keep free and available to everyone in perpetuity in order to either extort (as claimed by WPE) or ruin a competitor constitute unlawful business practices such as monopolistic practices. Defendants deliberately wielded their power over

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

the WordPress.org website like a cudgel, not only blocking access to the website but stealing resources like the ACF plugin, forcing visitors to click a checkbox asserting they are not associated with WPE, publishing WPE customer website addresses in an attempt to pressure customers to leave WPE, and repeatedly threatening future consequences including the risk of additional service disruptions for class members who did not leave WPE.

87.     Defendant's tortious interference, as alleged herein in this class action complaint, including intentionally disrupting a competitor's service in order to degrade and undermine the services Plaintiff and the class received, constitutes an unfair unlawful practice under CAL. BUS. & PROF. CODE §§ 17200.

88.     Defendants' actions as alleged in this Class Action Complaint also constitute an "unfair" practice as encompassed by CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious. The harm caused by Defendants' wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to the Class, including Plaintiff Keller. In particular, Defendants abuse of the open-source internet architecture and apparent singular control over what they claim to be more than 40% of all websites in the world through a single individual (Matt Mullenweg)'s personal website (WordPress.org), is an appalling deception and is contrary to every conceivable public policy.

89.     Moreover, public policy cannot support Defendants' actions. A trademark dispute, even if legitimate, is not cause for the deliberate sabotage of the websites of innocent third-party individuals and companies who merely used WPE services. Defendant's patterns of unscrupulous behavior deliberately targeted at WPE indeed demonstrates that these trademark claims are a mere pretext for its unlawful and injurious conduct.

90.     As a result of Defendants' unlawful and unfair conduct, Plaintiff and the Class were damaged and injured by the significant costs of remedying Defendants' disruption of their websites.

91.     Defendants' wrongful practices constitute a continuing course of unfair competition because Defendants continued and indeed enhanced their efforts to interfere with the relationships

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

between Class Members and WPE up until the December 10, 2024 preliminary injunction. In the absence of a permanent injunction, on information and belief, Defendants will resume attempting to disrupt WPE services and will further harm class members. Indeed, in the absence of a permanent injunction, Plaintiff will have no option but to terminate his relationship with WPE because of the danger Defendants' unlawful and unfair business practices pose to his livelihood.

92.    Plaintiff and the class seek equitable relief pursuant to Cal. Bus. & Prof. Code § 17203 to end Defendants' wrongful practices including requiring Defendants to cease its tortious interference with contract.

93.    Plaintiff and the class also seek an order requiring Defendants to make full restitution of all monies it received through its wrongful conduct, along with all other relief permitted under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and the Class set forth herein, respectfully request the following relief:

A.    That the Court certify this action as a class action and appoint Plaintiff and their counsel to represent the Class;

B.    That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein and directing Defendants cease interference in the contractual relationship between WPE and the class;

C.    That the Court award compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

D.    That the Court award statutory or punitive damages as allowed by law in an amount to be determined at trial;

E.   That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of Defendants' unlawful acts, omissions, and practices;

F.   That the Court award to Plaintiff and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses; and

G.   That the Court award pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: February 21, 2024                     */s/ Amber L. Schubert*

**SCHUBERT JONCKHEER & KOLBE LLP**
ROBERT C. SCHUBERT (S.B.N. 62684)
rschubert@sjk.law
AMBER L. SCHUBERT (S.B.N. 278696)
aschubert@sjk.law
DANIEL L.M. PULGRAM (S.B.N. 354569)
dpulgram@sjk.law
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220

**TYCKO & ZAVAREEI LLP**
SABITA J. SONEJI (S.B.N. 224262)
ssoneji@tzlegal.com
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

DAVID A. MCGEE (*pro hac vice* to be sought)
dmcgee@tzlegal.com
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Class Action Complaint                                                    24