ROSEMARIE T. RING, SBN 220769
  rring@gibsondunn.com
JOSEPH R. ROSE, SBN 27902
  jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

*Attorneys for Defendants Automattic Inc. and
Matthew Charles Mullenweg*

JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER *(pro hac vice*
forthcoming*)*
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193 Telephone:
212.351.2400
Facsimile: 212.351.6335

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RYAN KELLER, individually and on behalf of his business, KELLER HOLDINGS LLC (d/b/a SecureSight), and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>　　　　Defendants. | Case No. 3:25-CV-01892-AMO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>**Hearing:**<br>Date:　August 7, 2025<br>Time:　2:00 p.m.<br>Place:　Courtroom 10<br><br>Hon. Araceli Martínez-Olguín |

1

## <u>NOTICE OF MOTION AND MOTION</u>

2

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on August 7, 2025, at 2:00 p.m., or as soon thereafter as it may

4

be heard, in Courtroom 10 of this Court, located at 450 Golden Gate Avenue, San Francisco, California,

5

Defendants Automattic Inc. and Matthew Charles Mullenweg will and do move this Court for an order

6

under Federal Rule of Civil Procedure 12(b)(6) dismissing all claims in Plaintiff Ryan Keller's

7

Complaint. Defendants base this Motion on the following grounds:

8

Plaintiff's claim for intentional interference with contractual relations (Claim 1) fails because

9

he does not allege economic harm or actual disruption, nor does he adequately identify any contract or

10

contractual terms that were breached.

11

Plaintiff's claim for intentional interference with prospective economic relations (Claim 2)

12

similarly fails because he does not allege economic harm or actual disruption, nor does he plead the

13

existence of a prospective economic relationship. Both claims for intentional interference also fail

14

because Plaintiff does not allege facts sufficient to show that Defendants acted with the requisite intent

15

to cause him economic harm. And at the very least, Plaintiff does not allege facts sufficient to show

16

that Defendant Automattic Inc. intended to disrupt any contract or prospective economic relationship.

17

Plaintiff's claim for violation of California's Unfair Competition Law ("UCL") (Claim 3) fails

18

because he does not allege that he "lost money or property" as a result of Defendants' alleged conduct.

19

Plaintiff is not entitled to restitution under the UCL because he does not allege that Defendants took

20

any money or property from him. Separately, Plaintiff's UCL claim is barred because he has not alleged

21

the unavailability of an adequate legal remedy.

22

This Motion is based on this Notice of Motion and Motion; the following Memorandum of

23

Points and Authorities in support; all matters of which the Court may take judicial notice; the record in

24

this Action; and any other documentary and oral evidence and argument that may be presented to the

25

Court on this Motion.

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................................................. I

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      INTRODUCTION ................................................................................................................. 1

II.     STATEMENT OF ISSUES TO BE DECIDED ................................................................. 2

III.    BACKGROUND ................................................................................................................... 2

IV.     LEGAL STANDARD ........................................................................................................... 4

V.      ARGUMENT ........................................................................................................................ 4

        A.      Plaintiff fails to plausibly allege either of his intentional-interference claims ............. 4

                1.      The elements of Plaintiff's intentional-interference claims .............................. 4

                2.      Plaintiff has not suffered any actual disruption or economic harm ................. 5

                3.      Plaintiff does not adequately allege any contract or breach. ........................... 7

                4.      Plaintiff does not sufficiently plead a prospective economic relationship ........ 8

                5.      At a minimum, Plaintiff does not allege that Automattic had the
                        requisite intent to support a claim for intentional interference ....................... 10

        B.      Plaintiff lacks standing to assert a UCL claim because he has not "lost money
                or property" as a result of Defendants' alleged conduct ............................................. 11

        C.      Plaintiff cannot obtain restitution under the UCL ...................................................... 13

        D.      The UCL claim separately fails because Plaintiff has adequate remedies at law ....... 14

VI.     CONCLUSION ................................................................................................................... 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Academy of Motion Pictures Arts & Sciences v. GoDaddy.com, Inc.*,
  2010 WL 11463697 (C.D. Cal. Sept. 20, 2010)...................................................................13

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004)...............................................................................................4

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) .................................................................................9

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ...........................................................................14, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................4, 13

*Baird v. Sabre Inc.*,
  2013 WL 12130570 (S.D. Cal. May 8, 2013) .....................................................................13

*Banga v. Experian Info. Solutions*,
  2010 WL 11531066 (N.D. Cal. Mar. 8, 2010) ....................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................................4

*ConsumerDirect, Inc. v. Pentius, LLC*,
  2022 WL 16949657 (C.D. Cal. Aug. 25, 2022)....................................................................8

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
  479 F.3d 1099 (9th Cir. 2007).........................................................................................5, 9

*Day v. California Lutheran Univ.*,
  2023 WL 4893650 (9th Cir. 2023)......................................................................................12

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal. 4th 376 (1995) .....................................................................................................8, 10

*Eclectic Prop. E., LLC v. Marcus & Millichap Co.*,
  2010 WL 384736 (N.D. Cal. Jan. 29, 2010) .................................................................10, 11

*Finato v. Keith Fink & Assocs.*,
  2017 WL 7202104 (C.D. Cal. Jan. 19, 2017) .......................................................................9

*In re Ford Tailgate Litig.*,
  2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ....................................................................15

Gibson, Dunn &
Crutcher LLP

*Gopher Media LLC v. Melone*,
  2023 WL 8790266 (S.D. Cal. Dec. 19, 2023)....................................................................7

*Griffith v. TikTok, Inc.*,
  697 F. Supp. 3d 963 (C.D. Cal. 2023)....................................................................11, 12,

*Guzman v. Polaris Indus. Inc.*,
  49 F.4th 1308 (9th Cir. 2022)....................................................................14

*Hazel v. Prudential Fin., Inc.*,
  2023 WL 3933073 (N.D. Cal. June 9, 2023) ....................................................................12

*Honey Bum, LLC v. Fashion Nova, Inc.*,
  63 F.4th 813 (9th Cir. 2023)....................................................................10

*Image Online Design, Inc. v. Internet Corp. for Assigned Names and Numbers*,
  2013 WL 489899 (C.D. Cal. Feb. 7, 2013)....................................................................7

*Infectolab Americas LLC v. ArminLabs GmbH*,
  2021 WL 292182 (N.D. Cal. Jan. 28, 2021) ....................................................................6, 9

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  821 F. App'x 897 (9th Cir. 2020) ....................................................................4

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2023) ....................................................................10, 13

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ....................................................................11

*Logistick Inc. v. AB Airbags, Inc.*,
  543 F. Supp. 3d 881 (S.D. Cal. 2021)....................................................................9

*Moog Inc. v. Skyryse, Inc.*,
  2023 WL 3432213 (C.D. Cal. Apr. 14, 2023) ....................................................................8

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)....................................................................14

*Mort v. United States*,
  86 F.3d 890 (9th Cir. 1996) ) ....................................................................14

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001)....................................................................4

*Pabalate v. Nationstar Mortgage LLC*,
  2017 WL 2439012 (N.D. Cal. June 6, 2017) ....................................................................12

*Reichman v. Poshmark, Inc.*,
  267 F. Supp. 3d 1278 (S.D. Cal. 2017)....................................................................12

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
  2014 WL 524076 (N.D. Cal. Feb. 14, 2014)....................................................................9

*Sharma v. Volkswagen AG,*
    524 F. Supp. 3d 891(N.D. Cal. 2021) ........................................................................14

*Somers v. Apple, Inc.,*
    729 F.3d 953 (9th Cir. 2013)........................................................................................4

*Song v. Drenberg,*
    2019 WL 1998944 (N.D. Cal. May 6, 2019) ...............................................................9

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020)......................................................................................14

*Sybersound Records v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008).....................................................................................5

*Trindade v. Reach Media Grp., LLC,*
    2013 WL 3977034 (N.D. Cal. July 31, 2013) ...........................................................10

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.,*
    117 F. Supp. 3d 1092 (C.D. Cal. 2015).......................................................................7

*Unite Eurotherapy, Inc. v. Walgreen Co.,*
    2017 WL 513008 (S.D. Cal. Feb. 7, 2017) ................................................................7

*United Artists Corp. v. United Artist Studios LLC,*
    2019 WL 8221088 (C.D. Cal. Aug. 2, 2019) ..............................................................7

*Upper Deck Co. v. Panini Am., Inc.,*
    469 F. Supp. 3d 963 (S.D. Cal. 2020) ....................................................................5, 6

*Vascular Imaging Prof'ls, Inc. v. Digirad Corp.,*
    401 F. Supp. 3d 1005 (S.D. Cal. 2019) ..................................................................5, 6

*Walker v. Geico Gen. Ins. Co.,*
    558 F.3d 1025 (9th Cir. 2009)....................................................................................13

**Statutes**

Cal. Bus. & Prof. Code § 17204 ...............................................................................11

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
CASE NO. 3:25-CV-01892-AMO

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        Plaintiff Ryan Keller is a customer of non-party WPEngine, Inc. ("WPE"), a company that

4    helps businesses build and run their websites. He claims Defendants did various things to harm WPE,

5    and in the process they ended up affecting WPE's customers too, including him. But Plaintiff hasn't

6    alleged any tangible economic impact on his business or his contract with WPE that would support a

7    claim for tortious interference or unfair competition. He continues to maintain the same contractual

8    relationship with WPE that existed before Defendants' purported actions; his business remains

9    operational; his websites continue to function; and he retains access to WPE's services. At most,

10   Plaintiff claims to have been inconvenienced because he was worried about how his websites and his

11   business *could* be impacted, and he has some unspecific gripes about "decreased performance" of his

12   website. But even if all of that were true, it doesn't support any of the claims asserted in the Complaint.

13       First, both of Plaintiff's intentional-interference claims (Counts One and Two) fail because he

14   does not plead any actual disruption or harm to a contract or a prospective economic relationship. He

15   concedes that he remains a WPE customer to this day and continues to receive the same services under

16   the same contract. To be sure, Plaintiff says that he *considered* changing web hosting services, but his

17   mere frustration—absent a breach or disruption of an economic relationship—cannot sustain a tortious

18   interference claim.

19       Second, Plaintiff's claim for intentional interference with his WPE contract (Count One) also

20   fails because he does not identify the terms of that contract, which of those terms WPE supposedly

21   breached, how Defendants were responsible for that breach, and whether Defendants even knew of his

22   contract or the terms at issue. Without this basic information, the Court cannot evaluate whether

23   Plaintiff has stated a claim for tortious interference with his contractual rights.

24       Third, Plaintiff's claim for intentional interference with a prospective economic relationship

25   (Count Two) fails because the only economic relationship asserted in the Complaint—the one between

26   Plaintiff and WPE—already *exists* in the form of a contract. Plaintiff cannot assert a separate claim on

27   behalf of other potential customers who might have wanted to do business with WPE.

28       Fourth, both intentional-interference claims should be dismissed as to Defendant Automattic,

at the very least. Plaintiff fails to allege that Automattic took any specific actions with the requisite intent to interfere with his business or contractual relationships.

Finally, Plaintiff's claim under California's Unfair Competition Law (Count Three) fails for multiple reasons. He lacks statutory standing because he has not alleged that he "lost money or property as a result of" Defendants' purported actions toward WPE. Plaintiff refers to unspecified "service disruptions" and says he needed to spend time addressing them, but none of that amounts to an economic injury sufficient to support standing under the UCL. Relatedly, Plaintiff is not eligible for restitution under the UCL because he does not allege that Defendants took any money or property from him; there is nothing for Defendants to return in the form of restitution. Moreover, Plaintiff seeks equitable remedies but does not allege that his legal remedies—namely, money damages—would be inadequate to address any alleged harm here.

In sum, the Complaint is defective on multiple levels and the Court should dismiss it.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiff sufficiently pleaded his claims for intentional interference with contractual relations (Count 1) or intentional interference with prospective economic relations (Count 2).

2. Whether Plaintiff sufficiently pleaded that Defendants had the requisite intent to support a claim for intentional interference (Counts 1 and 2).

3. Whether Plaintiff has statutory standing to pursue his UCL claim.

4. Whether Plaintiff may obtain restitution.

5. Whether Plaintiff sufficiently pleaded that he does not have adequate remedies at law.

## III.    BACKGROUND

The following facts, drawn from the Complaint, are taken as true for purposes of this motion only. Defendant Automattic Inc. and its CEO, Defendant Matthew Mullenweg, are key contributors to and stewards of the WordPress ecosystem, an open-source content management system on which millions of websites globally rely. Compl. ¶¶ 2, 21, 23. Automattic operates services including WordPress.com, WordPress VIP, and Pressable, while also contributing to the open-source infrastructure maintained via WordPress.org. *Id.* ¶¶ 14, 22, 24, 28-29. The WordPress software is free

and open-source, and no user—including Plaintiff—has paid Defendants for use of the software distributed via WordPress.org. *Id.* ¶¶ 2, 43.

This action stems from a commercial dispute between Defendants and WPE, a web hosting company that uses WordPress software to help its customers set up and run their websites. Compl. ¶¶ 6, 30-31. That dispute became public on or around September 20, 2024, following communications between the parties and a cease-and-desist letter that WPE sent on September 23. *Id.* ¶ 34. The next day (September 24), in response to WPE's misuse and subsequent refusal to address trademark concerns, Defendants adjusted WPE's access to WordPress.org's central plugin and update repository. *Id.* ¶¶ 6, 34, 38. Access was temporarily restored to WPE between September 27 and 30, during which WPE mirrored certain repository data, but restrictions were reimposed on October 1. *Id.* ¶¶ 6, 38-39. On December 10, Defendants restored WPE's access to WordPress.org pursuant to a court order issued in a separate matter also pending before this Court (Case No. 3:24-cv-06917-AMO). *See id.* ¶¶ 9, 53.

Plaintiff Ryan Keller operates a business creating websites using WPE services; he alleges that his business was affected by WPE's temporary access restrictions between September 24 and December 10, 2024. Compl. ¶¶ 13, 47-53. Plaintiff asserts that WPE's customers, including him, temporarily experienced degraded services and had difficulty accessing plugin updates and backend website functions during this time. *Id.* ¶¶ 7, 35-36, 49-51. But he acknowledges that he and WPE found workarounds to avoid disruptions in service, and his business relationship with WPE is ongoing. *Id.* ¶ 54. Plaintiff does not identify any contract that was breached—either by WPE or by him. Nor does he identify any customers that he supposedly lost, or any other concrete harm that he claims to have suffered beyond generic allegations of having expended time dealing with temporary but unspecified website disruptions. *See* Compl. ¶¶ 50, 52.

Plaintiff asserts three claims against Defendants: (1) intentional interference with contractual relations; (2) intentional interference with prospective economic relations; and (3) violation of the UCL. He seeks to pursue these claims on behalf of a nationwide class of "[a]ll persons in the United States who had ongoing active WPE WordPress Web Hosting Plans on or before September 24, 2024 through December 10, 2024." Compl. ¶ 58.

## IV.    LEGAL STANDARD

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court should grant a motion to dismiss when a plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ixchel Pharma, LLC v. Biogen, Inc.*, 821 F. App'x 897, 898 (9th Cir. 2020) (mem.) (affirming dismissal of intentional-interference claims). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). While allegations of material fact are assumed to be true and viewed in the light most favorable to the plaintiff, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## V.    ARGUMENT

The core problem with all three of Plaintiff's claims is that he fails to explain how, specifically, WPE's purportedly "degraded services" and "decreased performance" affected him in any concrete way—that is, how the alleged period of disruption breached any term in his WPE contract or affected a prospective economic relationship, or how any of the alleged performance issues caused him to lose money or property.

### A.    Plaintiff fails to plausibly allege either of his intentional-interference claims

Both of Plaintiff's intentional-interference claims (Counts One and Two) fail as a matter of law because:  (1) he does not allege he suffered any actual disruption or economic harm; (2) he does not adequately plead the terms of his contract with WPE, the breach or disruption of any of those terms, or Defendants' knowledge of his contract and the specific terms at issue; (3) he fails to identify any prospective economic relationship that he would have benefitted from; and (4) he fails to allege that Defendants intended to disrupt any contract or prospective economic relationship.

#### 1.    The elements of Plaintiff's intentional-interference claims

In California, a claim for intentional interference with contract requires a plaintiff to allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract;

(3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007).

A claim for intentional interference with prospective economic relations has similar elements; a plaintiff must allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST*, 479 F.3d at 1108. And with a prospective-economic-relations claim, the plaintiff must also allege that the defendant's conduct was independently wrongful—i.e., that it is "wrongful by some [legal] measure beyond the fact of interference itself." *Id.* (cleaned up).

### 2.    Plaintiff has not suffered any actual disruption or economic harm

To state a cognizable claim for tortious interference, Plaintiff must plead plausible, concrete facts that identify actual disruption and economic harm to a business relationship. *See, e.g.*, *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 982 (S.D. Cal. 2020) ("general conclusory allegations regarding lost sales, absent well-plead facts in support of these contentions, does not satisfy the pleading requirements for interference with economic relations") (citing *Vascular Imaging Prof'ls, Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1014 (S.D. Cal. 2019)). Courts frequently dismiss intentional-interference claims at the pleading stage when the allegations of disruption or harm are too general, speculative, or conclusory. *See Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (finding it is not enough for plaintiff to allege it "ha[d] been harmed because its ongoing business and economic relationships with Customers [had] been disrupted" to sustain a tortious interference claim).

For instance, in *Upper Deck*, the plaintiff, a sports trading card company, brought tortious interference claims against a competitor for its use of a basketball player's image, alleging that the competitor diluted the value of plaintiff's licensing agreement with that player. But the court dismissed the claims because there was no allegation of actual disruption of the licensing agreement or the future relationship with the player. The generic allegations of "diverted sales and loss of goodwill and value" were not supported by specific facts—such as a reduction in sales of that player's trading card. *Upper*

Gibson, Dunn &
Crutcher LLP

*Deck*, 469 F. Supp. 3d at 982-83.

Similarly, in *Infectolab Americas LLC v. ArminLabs GmbH*, 2021 WL 292182, at \*5-6 (N.D. Cal. Jan. 28, 2021), the plaintiff alleged it had an "Exclusive Supply Agreement" with a third party, giving it the right to be the exclusive United States partner for various products used to diagnose tickborne diseases. The plaintiff sued a competitor for tortious interference, alleging that when the competitor marketed those products in the United States, it disrupted the plaintiff's rights under the agreement. Still, the court dismissed the claims because general allegations of "breach or disruption" that "resulted in damages" were not specific enough to show cognizable harm; the plaintiff needed to point to identifiable lost sales or give a concrete explanation as to how contractual performance became more difficult or expensive. *Id.* at \*5; *see also Vascular Imaging*, 401 F. Supp. 3d at 1013 (conclusory allegations of lost sales and damage to customer relationships not enough).

Here, Plaintiff comes nowhere near alleging an actual disruption or harm to his contract with WPE or to any prospective economic relationships. At most, Plaintiff relies on speculative allegations that Defendants *could* disrupt WPE's ability to provide "website hosting and related services" to him or his customers, Compl. ¶ 70; *see also id.* ¶ 74, but the mere potential for disruption is not enough. For example, Plaintiff alleges he "*explore[d]* moving his website to another managed web host," *id.* ¶ 47, "*prepar[ed]* for moving his and his clients' websites," *id.* ¶ 50, and "*seriously consider[ed]* not renewing contracts with WPE," *id.* ¶ 74 (emphasis added). Yet despite any purported inconvenience and frustration Plaintiff might have experienced, he ultimately did *not* "move his websites away from WPEngine." *Id.* ¶ 54.

The Complaint includes a host of conclusory allegations referring to "decreased performance" of websites, "security issues," and "limited website support." *E.g.,* Compl. ¶ 8. Plaintiff vaguely asserts that he needed to respond to these issues and had to "spend time and expense to manage, update, and modify his website." *Id.* ¶ 52; *see also id.*, ¶ 50. But courts routinely reject these sorts of boilerplate assertions of harm; plaintiffs must instead plead facts identifying actual disruption of an economic relationship and a measurable economic injury. *See, e.g., Upper Deck*, 469 F. Supp. 3d at 982; *Vascular Imaging*, 401 F. Supp. 3d at 1014. There is no allegation, for example, that any of these purported service issues caused Plaintiff or WPE not to perform their contractual duties, or that Plaintiff lost

Gibson, Dunn &
Crutcher LLP

specific customers or website traffic as a result. *See, e.g.*, *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *13 (S.D. Cal. Dec. 19, 2023) (failure to allege actual disruption without losing business of existing customers). And even if Plaintiff did spend additional time tending to his website, that alone doesn't constitute economic harm—what specific "expense" did Plaintiff incur to manage his own website? Absent concrete allegations of economic injury, Plaintiff cannot state an intentional-interference claim.

### 3. Plaintiff does not adequately allege any contract or breach.

To allege a cognizable claim for intentional interference with a contract (Count One), a plaintiff must plead sufficient facts to establish the existence of a valid contract, the relevant terms of that contract, that the defendant was aware of the contract and its terms, and how, specifically, the other party to the contract breached those terms. *See UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015). This is because, "to understand whether [the plaintiff's] performance was disrupted require[s] the district court to determine what contractual rights they possess[ed]." *Id.*; *see also United Artists Corp. v. United Artist Studios LLC*, 2019 WL 8221088, at *5 (C.D. Cal. Aug. 2, 2019). Plaintiff has come nowhere close to that here.

For example, in *Image Online Design, Inc. v. Internet Corp. for Assigned Names and Numbers*, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013), the United States government authorized the defendant to administer the Internet's primary domain system, including new top-level domains. The plaintiff operated a .WEB domain registry and applied unsuccessfully for official approval of that domain. The plaintiff sued, alleging that the defendant's rejection disrupted its business interests and "interfere[d] with [its] contractual relations." *Id.* at 9. But the court rejected this claim because the plaintiff had not identified any contracts or any actual disruption. To sufficiently plead this claim, a plaintiff "must allege actual interference with *actual* contracts, such that a result is a *specific* breach, not merely general damage to the business." *Id.* (emphasis added). By contrast, courts have allowed this type of claim to proceed beyond the pleading stage when the plaintiff attached a sample contract and identified the provisions that were allegedly breached. *See Unite Eurotherapy, Inc. v. Walgreen Co.*, 2017 WL 513008, at *3 (S.D. Cal. Feb. 7, 2017).

Here, Plaintiff alleges that Defendants "disrupted" unspecified terms in his contract with WPE,

and that "WPE could not fully fulfill its contractual obligations." Compl. ¶ 70. But Plaintiff does not identify any actual term of a WPE contract; he does not explain how WPE breached that term; and he doesn't articulate how either Defendant knew about that (or any other) term and intended to cause WPE to breach it. In fact, Plaintiff strongly suggests there was no breach at all, since his relationship with WPE is still ongoing and WPE was able to find workarounds to resolve alleged service interruptions. *Id.* ¶¶ 39, 54.

The closest Plaintiff comes to alleging a specific contract term is his reference to a "Service Level Agreement" with WPE, which, he says, "promises a certain level of website uptime," and the "degraded services substantially exceeded the permissible" amount of downtime under that contract. Compl. ¶ 36. There are no allegations that Defendants even knew about this term (or any term) of Plaintiff's contract with WPE—especially when the Complaint itself defines this supposed contract term in the vaguest of ways. What "certain level of website uptime" did the WPE contract promise, and how was that to be measured? What is the "permissible" amount of downtime under the contract? How exactly was the website service "degraded" during the period in question and how did Defendants' conduct proximately cause that alleged "degradation"? What specific term in the WPE contract did any of this violate, and how? Plaintiff pleads none of this necessary factual detail.

In short, the Complaint does not answer "[t]he central inquiry" of the "contractual rights that are at issue" or how Defendants allegedly caused Plaintiff or WPE to breach that contract. *Moog Inc. v. Skyryse, Inc.*, 2023 WL 3432213, at *20 (C.D. Cal. Apr. 14, 2023) (quoting *ConsumerDirect, Inc. v. Pentius, LLC*, 2022 WL 16949657, at *3 (C.D. Cal. Aug. 25, 2022)).

### 4. Plaintiff does not sufficiently plead a prospective economic relationship

Plaintiff's claim for interference prospective economic relations (Count Two) independently fails due to the absence of any alleged prospective economic relationship that Defendants supposedly disrupted.

In the realm of intentional-interference claims, the California Supreme Court has emphasized the need to "firmly distinguish" between existing contractual relationships and prospective economic relations. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995). The Ninth Circuit has reiterated this distinction—prospective economic relations lie in a "zone where the rewards

and risks of competition are dominant," warranting less judicial solicitude than interference with existing contracts. *CRST*, 479 F.3d at 1108. The pleading requirements are more exacting for prospective-economic-relationship claims, since the economic relationship or advantage is by definition "only prospective," and thus can easily veer into the realm of speculation. *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1151 (N.D. Cal. 2019). This is why "California law precludes recovery for overly speculative claims by 'requir[ing] proof that it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference.'" *Infectolab*, 2021 WL 292182, at *4 (citation omitted).

To adequately plead a prospective economic relationship, Plaintiff must allege facts showing that it was reasonably probable that an identifiable relationship would have materialized but for Defendant's interference. *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2014 WL 524076, at *14 (N.D. Cal. Feb. 14, 2014). This requires Plaintiff to identify a specific "economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff," not just a "hope of future transactions." *Song v. Drenberg*, 2019 WL 1998944, at *7 (N.D. Cal. May 6, 2019) (citation omitted); *Logistick Inc. v. AB Airbags, Inc.*, 543 F. Supp. 3d 881, 887 (S.D. Cal. 2021) (dismissing claim where plaintiff failed to identify prospective customers, negotiations, or terms of anticipated sales).

Plaintiff alleges that due to Defendants' alleged actions toward WPE, he "must seriously consider not renewing contracts with WPE, allowing the contracts to lapse, terminating the contracts, or not expanding contracts with WPE." Compl. ¶ 74. But these allegations confirm that Plaintiff's relationship with WPE is *ongoing*—not *prospective*. Claims based on alleged interference with an existing, ongoing contract necessarily fail, even if the plaintiff is *considering* not renewing that contract. *Finato v. Keith Fink & Assocs.*, 2017 WL 7202104, at *7 (C.D. Cal. Jan. 19, 2017).

Further (and fatally), there are no allegations that Plaintiff has any economic interest in *other* customers' relationships with WPE, much less any interest that would give him "the *probability* of future economic benefit." *Song*, 2019 WL 1998944, at *7 (emphasis added). Unlike cases where a plaintiff alleges that specific future business was lost due to a defendant's interference—e.g., cancelled events or terminated negotiations with identified third parties—Plaintiff alleges no actual loss of any

Gibson, Dunn & Crutcher LLP

anticipated business or economic advantage. There is no suggestion that Plaintiff sought or secured business opportunities beyond the WPE relationship, or that Defendants disrupted such opportunities. *See supra* Part A.2.

Because Plaintiff does not allege a disrupted *prospective* relationship that he was likely to benefit from economically, his prospective-economic-relations claim fails as a matter of law. *See Della Penna*, 11 Cal. 4th at 392; *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 824 (9th Cir. 2023).

### 5. At a minimum, Plaintiff does not allege that Automattic had the requisite intent to support a claim for intentional interference

Intent is an element of both intentional-interference claims (Counts One and Two). Plaintiff must allege that each Defendant has the requisite intent and knowledge to (1) disrupt an existing contract and prospective economic relationship, or (2) design its actions such that it knew "the interference was certain or substantially certain to occur as a result of its action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2023); *see Trindade v. Reach Media Grp., LLC*, 2013 WL 3977034, at *15-16 (N.D. Cal. July 31, 2013) (allegations of intent were inadequate where there were no allegations of specific knowledge of contracts, just allegations of awareness of the existence of contracts with customers). Plaintiff also must "adequately plead facts sufficient to inform each defendant of the specific allegations against it under each asserted cause of action," and not "simply lump all of the defendants together in a group." *Eclectic Prop. E., LLC v. Marcus & Millichap Co.*, 2010 WL 384736, at *2 (N.D. Cal. Jan. 29, 2010).

Plaintiff's intent allegations are inadequate under these standards. As explained above, Plaintiff fails to adequately plead Defendants' knowledge of the alleged contract and the terms at issue, and thus necessarily fails to establish that either of the Defendants intended to interfere with those terms. And even assuming Plaintiff's allegations against Defendant Mullenweg were sufficient, he does not allege facts sufficient to show that Automattic had the requisite intent to disrupt any contract or prospective economic relationship. The few factual allegations potentially touching on intent are about only Defendant Mullenweg. Plaintiff tries to "simply lump" Mullenweg and Automattic together, *Eclectic Prop. E., LLC*, 2010 WL 384736, at *2, but that's not sufficient to sustain his tortious interference claims. *See, e.g.*, Compl. ¶¶ 6 & n.6, 35, 41, 42-46. For instance, Plaintiff alleges that *Defendants* use

Gibson, Dunn &
Crutcher LLP

of the trademark dispute to justify the "decision to block [Plaintiff's] access" to WordPress.org was "a mere pretext," Compl. ¶ 40, but the only factual allegation supporting that assertion refers to Mullenweg, not Automattic. *Id.* Plaintiff likewise alleges "*Defendants* have made no secret that their *intent* is to induce Plaintiff and Class Members to leave WPE," but again he quotes only Mullenweg. Compl. ¶ 42. Plaintiff has fallen into the very pitfall this Court cautioned against in *Eclectic Properties*: He has failed to allege that *Automattic* intended to interfere with anything.

**B.    Plaintiff lacks standing to assert a UCL claim because he has not "lost money or property" as a result of Defendants' alleged conduct**

UCL claims may be brought only by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition" (Cal. Bus. & Prof. Code § 17204), which requires "some form of economic injury." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). This statutory standing requirement is "substantially narrower" than Article III, because "a UCL plaintiff's 'injury in fact' specifically involve[s] 'lost money or property,'" whereas Article III standing "may be intangible." *Id.* at 324.

Plaintiff has not adequately alleged that he "lost money or property" as a result of Defendants' supposed conduct towards WPE. He relies on unspecified assertions that his website was "impacted," that he spent "time" and incurred some sort of "expense" to modify his website in response, that he has "significant concerns" about the "security" of his website going forward, and that there's also a risk of "potentially harming" his customers' websites. Compl. ¶¶ 50-53. None of this suffices for standing under the UCL.

For example, in *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 977-78 (C.D. Cal. 2023), the court dismissed a UCL claim where the theory of economic loss was purely hypothetical. The plaintiff alleged that TikTok's collection of her private data amounted to "lost money or property" because the data could be monetized. *Id.* at 978. But the allegation that "she *could* have sold the limited data" or that she even "*attempted* or *intended* to sell her data" was insufficient to establish standing under the UCL. *Id.* (emphasis added). And in *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 996 (S.D. Cal. 2012), the plaintiff's alleged "heightened risk of identity theft, time and money spent on mitigation of that risk, and property value in one's information, do not suffice

Gibson, Dunn &
Crutcher LLP

as injury under the UCL." *See also Pabalate v. Nationstar Mortgage LLC*, 2017 WL 2439012, at *8 (N.D. Cal. June 6, 2017) (dismissing UCL claim because the "allegation that [plaintiff] 'will suffer' damages is, at this point, merely speculative and vague"); *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) ("just because Plaintiffs' data is valuable in the abstract, and because [defendant] might have made money from it, does not mean that Plaintiffs have 'lost money or property' as a result.").

Courts have often explained that conclusory and unspecific allegations of "economic injury" aren't enough to demonstrate standing under the UCL. In *Seitzinger v. Select Portfolio Servicing, Inc.*, 2018 WL 2010993, at *4 (N.D. Cal. Apr. 30, 2018), this Court dismissed a UCL claim for failure to plead a concrete injury because "nowhere in the complaint" did the plaintiff allege "that she spent any money or lost property value in non-conclusory terms." Similarly, in *Alvarez v. Nationstar Mortgage, LLC*, 2017 WL 1153029, at *9 (N.D. Cal. Mar. 28, 2017), this Court dismissed a UCL claim where the plaintiff alleged that he suffered "various damages and injuries, including the cost of attempting to prevent the loss of title to the Property." "[S]uch conclusory allegations," the Court concluded, "do not support the required showing of a loss of money or property." *Id.*; *see also Day v. California Lutheran Univ.*, 2023 WL 4893650, at *2 (9th Cir. 2023) (allegation that plaintiff "'lost money' in the form of 'compensation' is conclusory, and without more, insufficient to establish standing to pursue her UCL claim").

Here, the Complaint offers nothing more than vague and conclusory allegations of harm. Plaintiff must do more than offer a generic allegation of some unspecified "expense" to manage and modify his own website (Compl. ¶ 52). Who did he pay? Why did he pay that person? What did that person do for him? How is any of that connected to Defendants' purported actions? Without these facts, there's no plausible allegation that Plaintiff was "actually injured," in the form of lost money or property, by Defendants' alleged misconduct toward WPE. *Griffith*, 697 F. Supp. at 976. Plaintiff's frustration, alleged inconvenience, and time spent on his website are not the same as "lost money or property" for UCL standing purposes. *See Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1287 (S.D. Cal. 2017) ("waste of time, aggravation, and stress do not constitute loss or deprivation of money or property sufficient to satisfy the economic injury requirement").

Likewise, Plaintiff claims he pays WPE annually under their contract, and in exchange he gets certain website services—namely, the "Scale Plan," "Geo Targeting," and "Multi-Site services." Compl. ¶ 52. Plaintiff then vaguely alleges that these "services" were somehow impacted by Defendants' purported actions, and as a result, he "did not receive the benefit of his bargain with WPE as Plaintiff Keller had to do the work that he pays WPE for." *Id.* These allegations are far too generic and conclusory to identify lost money or property. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff never explains what these services are, let alone how they were supposedly lost, unavailable, or otherwise impacted in a way that caused him to lose the benefit of his bargain with WPE. Without "alleging any specific facts as to what was lost and how," Plaintiff is left with mere "legal conclusions, insufficient to satisfy even the minimal pleading burden under Rule 8." *Academy of Motion Pictures Arts & Sciences v. GoDaddy.com, Inc.*, 2010 WL 11463697, at *10 (C.D. Cal. Sept. 20, 2010); *see also Baird v. Sabre Inc.*, 2013 WL 12130570, at *3 (S.D. Cal. May 8, 2013) (dismissing UCL claim for failure to plead "lost money or property" where plaintiff failed to allege specific "facts" showing how the defendant's alleged conduct caused "economic injury to plaintiff").

## C.    Plaintiff cannot obtain restitution under the UCL

To obtain restitution under the UCL (or more generally), a plaintiff must show that the defendant is in possession of either money or property in which he has an ownership interest. *Banga v. Experian Info. Solutions*, 2010 WL 11531066, at *3 (N.D. Cal. Mar. 8, 2010). That is, restitution is available only for "money or property that defendants took directly from plaintiff" under the UCL. *Korea Supply*, 29 Cal. 4th at 1149. But Plaintiff does not allege that Defendants took any money or property from him. Rather, he alleges that he paid *WPE* in exchange for services under their contract. Compl. ¶¶ 32, 35 (emphasis added). And he concedes throughout the Complaint that Defendants' services are "free and open source." *E.g.*, *id.* at ¶ 24. Since Plaintiff does not allege that he ever paid Defendants *anything*—or that Defendants otherwise took money or property from him, even indirectly—there's nothing for Defendants to return to Plaintiff in the form of restitution. *See Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009).

**D.    The UCL claim separately fails because Plaintiff has adequate remedies at law**

Plaintiff's UCL claim seeks "disgorgement and restitution of all earnings, profits, compensation, and benefits received." Compl. ¶¶ 83-93. But the UCL claim is equitable in nature, and Plaintiff cannot pursue equitable relief without establishing that legal remedies—i.e., money damages—are inadequate. *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (where legal remedies are adequate, federal courts lack equitable jurisdiction to consider the merits of an equitable claim). Plaintiff has not made any such showing here.

The Ninth Circuit held in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) that a plaintiff cannot pursue equitable relief while simultaneously claiming entitlement to legal remedies. The court reasoned that federal courts "must apply traditional equitable principles before awarding restitution under the UCL." *Id.* at 841. One well-established equitable principle is that, to obtain equitable relief, a plaintiff must lack an "adequate remedy at law." *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992))). Thus, absent a showing by the plaintiff that he "lack[s] an adequate remedy at law," district courts should dismiss claims for equitable relief. *Sonner*, 971 F.3d at 844; *see Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009-10 (N.D. Cal. 2020) (dismissing request for restitution at the pleading stage because plaintiff did not allege that "under usual principles of equity, their remedies at law would be inadequate to what restitution could provide").

Plaintiff's UCL claim seeks restitution and disgorgement, but he has adequate remedies at law and has not adequately pleaded otherwise. The Complaint primarily seeks monetary damages and sounds in contract. Plaintiff's theory is that he paid WPE for services that Defendants allegedly disrupted, and Defendants should therefore pay as damages the "costs of remedy[ing]" that disruption. Compl. ¶ 89. This is "exactly the type of injury for which legal remedies are appropriate." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908(N.D. Cal. 2021) (damages would be adequate to remedy a "loss of money and/or loss in value").

Plaintiff has not articulated why his legal remedies would be inadequate. He bases his request for damages on the same underlying factual predicates as his request for equitable remedies—i.e., the

1   unspecified cost and burden of having his services disrupted. This Court has reasoned in a different

2   context that "where an [equitable claim] relies upon the same factual predicates as a plaintiff's legal

3   causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes

4   of action." *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014). And nowhere

5   in the Complaint does Plaintiff explain how restitution would go beyond, or be distinct from, the

6   general and punitive damages he seeks. *See Apple*, 500 F. Supp. 3d at 1009.

### VI.      CONCLUSION

8          For these reasons, the Court should dismiss the Complaint.

10   DATED: May 5, 2025                          Respectfully submitted,

11                                               GIBSON, DUNN & CRUTCHER LLP

13                                               By: */s/ Kahn A. Scolnick*
                                                     Kahn A. Scolnick

14                                               *Attorney for Defendants Automattic Inc. and*
                                                 *Matthew Charles Mullenweg*

---

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
CASE NO. 3:25-CV-01892-AMO

Gibson, Dunn &
Crutcher LLP