ROSEMARIE T. RING, SBN 220769
 rring@gibsondunn.com
JOSEPH R. ROSE, SBN 27902
 jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

KAHN A. SCOLNICK, SBN 228686
 kscolnick@gibsondunn.com
LEONORA COHEN, SBN 319463
 lcohen@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP 333
South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

JOSH A. KREVITT, SBN 208552
 jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER *(admitted pro hac vice)*
 osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendants Automattic Inc.
and Matthew Charles Mullenweg*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RYAN KELLER and SHARON SCHANZER, individually and on behalf of their businesses, KELLER HOLDINGS LLC (d/b/a SecureSight) and RLDGROUP, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>        Defendants. | Case No. 3:25-CV-01892-AMO<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Hearing:**<br>Date:    August 7, 2025<br>Time:    2:00 p.m.<br>Place:   Courtroom 10<br><br>Hon. Araceli Martínez-Olguín |

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 7, 2025, at 2:00 p.m., or as soon thereafter as it may be heard, in Courtroom 10 of this Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Automattic Inc. and Matthew Charles Mullenweg will and do move this Court for an order under Federal Rule of Civil Procedure 12(b)(6) dismissing all claims in Plaintiffs' First Amended Class Action Complaint. Defendants base this Motion on the following grounds:

Plaintiffs' claims for intentional interference with contractual relations (Claim 1) and intentional interference with prospective economic relations (Claim 2) fail because they do not allege facts showing that Defendants knew about any of the agreements or prospective economic relationships at issue, or that Defendants acted with intent to interfere with either.

Second, Plaintiffs' claim for intentional interference with contractual relations fails for the additional reason that Plaintiffs fail to adequately allege the contract at issue or how it was disrupted.

Third, Plaintiffs' claim for intentional interference with prospective economic relations (Claim 2) also fails because the only alleged relationship in the First Amended Complaint is Plaintiffs' existing contractual relationship with WPE, which cannot support a separate prospective-interference claim. Plaintiffs do not identify any other specific third-party relationships from which they derived economic benefit, nor do they allege facts showing that Defendants intended to disrupt such relationship.

Finally, Plaintiffs' claim for violation of California's Unfair Competition Law ("UCL") (Claim 3) fails for several independent reasons. Plaintiffs lack standing under the UCL because they do not allege that they "lost money or property as a result of" Defendants' alleged conduct. Their references to services disruptions, time spent on mitigation, and speculative expenses do not qualify as economic injury under the UCL. Plaintiffs are also not entitled to restitution under the UCL because they do not allege that Defendants obtained any money or property from them. Moreover, Plaintiffs' UCL claim is barred because they have not alleged the unavailability of an adequate legal remedy.

This Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities in support; the record in this Action; and any other documentary and oral evidence and argument that may be presented to the Court on this Motion.

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ........................................................ 2

III.    BACKGROUND ....................................................................................................... 2

        A.    Factual Background ...................................................................................... 2

        B.    Procedural History ....................................................................................... 3

IV.     LEGAL STANDARD ............................................................................................... 4

V.      ARGUMENT ............................................................................................................ 4

        A.    Plaintiffs fail to plausibly allege either of their intentional-interference claims ........... 4

              1.    The elements of Plaintiffs' intentional-interference claims ............................. 5

              2.    Plaintiffs do not adequately allege Defendants knew about, intended to interfere with, and did interfere with their WPE contracts or prospective economic relationships ........................................................................................ 5

              3.    Plaintiffs do not sufficiently plead a prospective economic relationship ......... 9

        B.    Plaintiffs lack standing to assert a UCL claim because they have not "lost money or property" as a result of Defendants' alleged conduct ................................ 11

        C.    Plaintiffs cannot obtain restitution under the UCL ..................................... 13

        D.    The UCL claim separately fails because Plaintiffs have adequate remedies at law ........................................................................................................ 13

VI.     CONCLUSION ....................................................................................................... 14

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004)......................................................................................4

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) ......................................................................9

*Amazon.com Services LLC v. Paradigm Clinical Research Institute, Inc.*,
  631 F. Supp. 3d 950 (W.D. Wash. 2022) ....................................................................6

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) .......................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................4

*Banga v. Experian Info. Solutions*,
  2010 WL 11531066 (N.D. Cal. Mar. 8, 2010) ...........................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................4

*Bullwinkle v. U.S. Bank, N.A.*,
  2013 WL 5718451 (N.D. Cal. Oct. 21, 2013) ............................................................12

*ConsumerDirect, Inc. v. Pentius, LLC*,
  2022 WL 16949657 (C.D. Cal. Aug. 25, 2022) ...........................................................9

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
  479 F.3d 1099 (9th Cir. 2007)...................................................................................5, 9

*Dare v. Aegis Wholesale Corp.*,
  2019 WL 1455799 (S.D. Cal. Apr. 2, 2012)...............................................................17

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal. 4th 376 (1995) .............................................................................................9, 10

*Finato v. Keith Fink & Assocs.*,
  2017 WL 7202104 (C.D. Cal. Jan. 19, 2017) .............................................................10

*In re Ford Tailgate Litig.*,
  2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ...........................................................14

*Guzman v. Polaris Indus. Inc.*,
  49 F.4th 1308 (9th Cir. 2022)......................................................................................13

*Honey Bum, LLC v. Fashion Nova, Inc.*,
  63 F.4th 813 (9th Cir. 2023).........................................................................................10

*Image Online Design, Inc. v. Internet Corp. for Assigned Names and Numbers*,
   2013 WL 489899 (C.D. Cal. Feb. 7, 2013) ................................................................................8

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   821 F. App'x 897 (9th Cir. 2020) ...........................................................................................4

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2023) ....................................................................................................7, 13

*Kwisket Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ....................................................................................................11, 12

*Logistick Inc. v. AB Airbags, Inc.*,
   543 F. Supp. 3d 881 (S.D. Cal. 2021) ...................................................................................10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................................................11

*Moog Inc. v. Skyryse, Inc.*,
   2023 WL 3432213 (C.D. Cal. Apr. 14, 2023) ......................................................................7, 9

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ...............................................................................................................13

*Mort v. United States*,
   86 F.3d 890 (9th Cir. 1996)....................................................................................................13

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ..................................................................................................4

*Parker v. U.S. Bancorp*,
   2016 WL 7495824 (C.D. Cal. Sept. 13, 2016) ......................................................................12

*Quinonez v. United States*,
   667 F. Supp. 3d 1015 (N.D. Cal. 2023) ..................................................................................6

*Reichman v. Poshmark, Inc.*,
   267 F. Supp. 3d 1278 (S.D. Cal. 2017) .................................................................................12

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
   2014 WL 524076 (N.D. Cal. Feb. 14, 2014)..........................................................................10

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ..................................................................................14

*Simon v. Eastern Ky. Welfair Rights Org.*,
   426 U.S. 26 (1976) .................................................................................................................11

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013)....................................................................................................4

*Song v. Drenberg*,
   2019 WL 1998944 (N.D. Cal. May 6, 2019) .........................................................................10

Gibson, Dunn &
Crutcher LLP

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................................. 13, 14

*Swipe & Bite, Inc. v. Chow*,
    147 F. Supp. 3d 924 (N.D. Cal. 2015) ...................................................................................... 5, 6, 7

*Trindade v. Reach Media Group, LLC*,
    2013 WL 3977034 (N.D. Cal. July 31, 2013) ................................................................................ 6, 7

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) .............................................................................................. 7

*Unite Eurotherapy, Inc. v. Walgreen Co.*,
    2017 WL 513008 (S.D. Cal. Feb. 7, 2017) ........................................................................................ 8

*United Artists Corp. v. United Artist Studios LLC*,
    2019 WL 8221088 (C.D. Cal. Aug. 2, 2019) ..................................................................................... 7

*Walker v. Geico Gen. Ins. Co.*,
    558 F.3d 1025 (9th Cir. 2009) ........................................................................................................ 13

**Statutes**

Cal. Bus. & Prof. Code § 17204 .......................................................................................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Ryan Keller and Sharon Schanzer allege they are customers of non-party WPEngine, Inc. ("WPE"), a company that hosts WordPress websites. They claim Defendants took certain actions against WPE that affected WPE's customers, including them. But Plaintiffs continue to maintain the same contractual relationship with WPE that existed before Defendants' purported actions; their businesses remain operational; their websites continue to function; and they retain access to WPE's services. At most, Plaintiffs claim they were inconvenienced because they were worried about how their websites and their business *could* be impacted by what occurred between Defendants and WPE, and they claim to have taken steps to alleviate those concerns. But even if all of that were true, it doesn't mean Plaintiffs have legally cognizable claims against Defendants.

*First*, Plaintiffs' claims for intentional interference with their WPE contracts and their prospective economic relationships with WPE (Count One and Count Two) both fail because Plaintiffs do not identify whether or how Defendants knew about their WPE contracts or the specific terms at issue, let alone that Defendants had the requisite intent to interfere with those contracts or relationships.

*Second*, Plaintiffs' contractual-interference claim also fails because they do not adequately allege the terms of their WPE contracts or how, specifically, WPE's performance of those terms was hindered or rendered impossible. Defendants identified this fatal flaw in their prior motion to dismiss Plaintiffs' original complaint (Dkt. 20), and the First Amended Complaint does little more than add some technical jargon about service plans that are not clearly tethered to Plaintiffs' WPE contracts or any cognizable harm. Plaintiffs also do not identify what, specifically, that jargon means or how Defendants' alleged conduct impacted the performance of the terms at issue. To the contrary, Plaintiffs confirm that WPE found workarounds that allowed Plaintiffs to continue to do business with WPE.

*Third*, Plaintiffs' claim for intentional interference with a *prospective* economic relationship also fails because the only economic relationship asserted in the First Amended Complaint—the one between Plaintiffs and WPE—already *exists* in the form of a contract. Plaintiffs cannot assert a separate claim on behalf of other potential customers who might have wanted to do business with WPE.

*Finally*, Plaintiffs' claim under California's Unfair Competition Law (Count Three) fails for

multiple reasons. There is no statutory standing because Plaintiffs have not alleged facts to support a plausible inference that they "lost money or property as a result of" Defendants' purported actions toward WPE. Plaintiffs refer to unspecified "service disruptions" and says they needed to spend time addressing them, but none of that amounts to an economic injury sufficient to support standing under the UCL. Likewise, Plaintiffs are not eligible for restitution under the UCL because they do not allege that Defendants took any money or property from them; there is nothing for Defendants to return in the form of restitution. Moreover, Plaintiffs seek equitable remedies but do not allege that their legal remedies—namely, money damages—would be inadequate to address any alleged harm here.

In sum, the First Amended Complaint does not allege any cognizable claim against Defendants and should be dismissed in its entirety.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs sufficiently pleaded their claims for intentional interference with contractual relations (Count 1) or intentional interference with prospective economic relations (Count 2).

2. Whether Plaintiffs have statutory standing to pursue their UCL claim.

3. Whether Plaintiffs may obtain restitution.

4. Whether Plaintiffs sufficiently pleaded that they do not have adequate remedies at law.

## III.    BACKGROUND

### A.    Factual Background

The following facts, drawn from the First Amended Complaint, are taken as true for purposes of this motion only. Defendant Automattic Inc. and its CEO, Defendant Matthew Mullenweg, are key contributors to and stewards of the WordPress ecosystem, an open-source content management system on which millions of websites globally rely. First Amended Complaint (FAC) ¶¶ 2, 22, 24. Automattic operates services including WordPress.com, WordPress VIP, and Pressable, while also contributing to the open-source infrastructure maintained via WordPress.org. *Id.* ¶¶ 15, 23, 25, 29-30. The WordPress software is free and open-source, and no users—including Plaintiffs and WPE—have paid Defendants for use of the software distributed via WordPress.org. *Id.* ¶¶ 2, 44.

WPE is a "managed website hosting" company that sells its hosting platform, plugins, themes, support, and other tools to customers like Plaintiffs to handle the technical aspects of running a

WordPress website. FAC ¶¶ 31-32. WPE uses WordPress's opensource software to help WPE's customers. *Id*. ¶¶ 3, 31-32. In particular, WPE did not host its own plugins on its own servers; instead, they were automatically updated by linking to the WordPress's central plugin and update repository. *Id*. ¶ 3.

This action stems from a commercial dispute between Defendants and WPE. FAC ¶ 6. That dispute became public on or around September 20, 2024, following communications between the parties and a cease-and-desist letter that WPE sent on September 23. *Id*. ¶ 35. The next day (September 24), in response to WPE's misuse and subsequent refusal to address trademark concerns, Defendants adjusted WPE's access to WordPress.org's central plugin and update repository. *Id.* ¶¶ 6, 35, 39. Access was temporarily restored to WPE between September 27 and 30, during which WPE mirrored certain repository data, but restrictions were reimposed on October 1. *Id*. ¶¶ 6, 39-40. On December 10, Defendants restored WPE's access to WordPress.org pursuant to a court order issued in a separate matter also pending before this Court (Case No. 3:24-cv-06917-AMO). *See id.* ¶¶ 9, 54.

Plaintiff Ryan Keller claims he operates a business creating websites using WPE services, and he alleges that his business was affected by WPE's temporary access restrictions between September 24 and December 10, 2024. FAC ¶¶ 13, 48-54. Plaintiff Sharon Schanzer, a New York-based business owner, similarly claims she builds and maintains websites using WPE services and alleges her business operations were disrupted during the same period. *Id*. ¶ 14.  Plaintiffs assert that WPE's customers, including them, temporarily experienced degraded services and had difficulty accessing plugin updates and backend website functions during this time. *Id*. ¶¶ 7, 36-37, 50-52. But they acknowledge that they and WPE found workarounds to avoid disruptions in service and focus on voluntary business decisions *they* made based on a "likelihood" and "potential" that they would have to move their clients to a new host.  *See, e.g., id.* ¶¶ 48, 51, 53, 55, 60.  Indeed, their business relationships with WPE are ongoing. *Id*. ¶¶ 55, 62.

**B.    Procedural History**

Plaintiffs filed their complaint on February 21, 2025, asserting three claims against Defendants: (1) intentional interference with contractual relations; (2) intentional interference with prospective economic relations; and (3) violation of the UCL.  Plaintiffs sought to pursue these claims on behalf of

a nationwide class of "[a]ll persons in the United States who had ongoing active WPE WordPress Web Hosting Plans on or before September 24, 2024 through December 10, 2024." Dkt. 1, ¶ 58-93. Defendants moved to dismiss on various grounds. Dkt. 20. Rather than oppose the motion, Plaintiffs amended their complaint, adding a new named plaintiff and a handful of new factual allegations. Dkt. 30. The claims themselves remain unchanged.

## IV.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted when a plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ixchel Pharma, LLC v. Biogen, Inc.*, 821 F. App'x 897, 898 (9th Cir. 2020) (mem.) (affirming dismissal of intentional-interference claims). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). While allegations of material fact are assumed to be true and viewed in the light most favorable to the plaintiff, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## V.     ARGUMENT

The fundamental defect here is Plaintiffs' failure to connect any actionable disruption of their WPE contracts with anything Defendants knew about or intended to do. Plaintiffs don't allege that Defendants were aware of any of the specific terms of their WPE contracts; they don't allege how Defendants' alleged conduct toward WPE impacted the performance of those terms; they don't allege that Defendants knew about or intended to bring any of that disruption about; and they don't allege what money or property they supposedly lost as a result. At best, Plaintiffs point to business decisions they voluntarily made due to concerns about WPE's reliability, but that alone cannot support any of the claims asserted in the First Amended Complaint.

### A.   Plaintiffs fail to plausibly allege either of their intentional-interference claims

Both of Plaintiffs' intentional-interference claims (Counts One and Two) fail as a matter of law

because: (1) they do not adequately plead Defendants' knowledge of their contracts and the specific terms at issue, let alone intent to interfere and actual resulting disruption; and (2) they fail to identify any prospective economic relationship that they would have benefitted from.

### 1. The elements of Plaintiffs' intentional-interference claims

In California, a claim for intentional interference with contract requires a plaintiff to allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007).

A claim for intentional interference with prospective economic relations has similar elements; a plaintiff must allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Id.* at 1108. And with a prospective-economic-relations claim, the plaintiff must also allege that the defendant's conduct was independently wrongful—i.e., that it is "wrongful by some [legal] measure beyond the fact of the interference itself." *Id.* (cleaned up).

### 2. Plaintiffs do not adequately allege Defendants knew about, intended to interfere with, and did interfere with their WPE contracts or prospective economic relationships

To allege a cognizable claim for intentional interference with a contract (Count One) or intentional interference with a prospective economic relationship (Count Two), Plaintiffs must plead sufficient facts to establish that Defendants were *aware* of and *intended* to interfere with those relationships, and that some actual interference resulted. *See Swipe & Bite, Inc. v. Chow,* 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015). Here, at most, Plaintiffs allege that Defendants took some actions meant to affect WPE—but that is a number of significant steps removed from a viable claim that Defendants knew about, intended to interfere with, and *did* interfere with Plaintiffs' specific contracts or their unidentified prospective economic relationships.

**No alleged knowledge of Plaintiffs' contracts.** Plaintiffs allege nothing to indicate whether

or how Defendants knew about their contracts with WPE or the terms at issue, which are the basis for both intentional interference claims. FAC ¶¶ 75, 82. They allege that because of Defendants' actions toward WPE, Plaintiffs received degraded services that fell short of the uptime commitments in their Service Level Agreement (SLA) with WPE, Keller didn't receive all the benefits of his WPE "Scale Plan," and Schanzer didn't receive all the benefits of her WPE "Premium 1 Plan." FAC ¶¶ 37, 53, 61. Both Plaintiffs assert that their respective plans included promises of automated WordPress and PHP updates, daily backups, security patching, plugin risk scans, and fully managed WP, PHP, and MySQL services. *Id*. But nothing in the First Amended Complaint suggests that Defendants knew about the SLA or the Scale or Premium 1 Plans, the types of services either plan promised, or even about Plaintiffs themselves—let alone that Defendants somehow knew their purported actions would cause WPE not to be able to fulfil any of its obligations under the SLA or either of Plaintiffs' plans.

In *Trindade v. Reach Media Group, LLC*, the court dismissed tortious interference claims because the plaintiff's allegations lacked any detail about whether the defendant had "knowledge of any specific contracts or details about the contracts" or "specific relationships." 2013 WL 3977034, at *15-17 (N.D. Cal. July 31, 2013). The plaintiff alleged the defendant made comments indicating it knew the harm it was causing and was aware of the plaintiff's reputation in the industry, business model, and "the existence of the multiple contractual relations with customers." *Id*. at *15. But that "generalized knowledge of any contractual relationships" wasn't enough; there needs to be knowledge of a *specific* contractual relationship or *specific* prospective relationship that the defendant intended to disrupt. *Id*. at *15-17; *see also Quinonez v. United States*, 667 F. Supp. 3d 1015, 1031 (N.D. Cal. 2023) (similar); *Amazon.com Services LLC v. Paradigm Clinical Research Institute, Inc*., 631 F. Supp. 3d 950, 969 (W.D. Wash. 2022) (similar).  Plaintiffs' claims here suffer from the same defects.

The closest Plaintiffs come is their assertion that "[a]t all relevant times, Defendants knew that class members maintained valid contracts with the third party WPE." FAC ¶ 76. But courts routinely reject this kind of broad, conclusory allegation as insufficient. For instance, in *Swipe & Bite,* the plaintiff alleged the defendant knew of plaintiff's agreements with "contractors, vendors, employees, and customers." 147 F. Supp. 3d at 935.  The court found this insufficient and dismissed the intentional-interference, since there was no allegation that the defendant "had knowledge of the agreements with

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:25-CV-01892-AMO

6

these *specific* customers or of the valid contract with [the third party]." *Id.* (emphasis added); *see also Moog Inc. v. Skyryse, Inc.*, 2023 WL 3432213, at *21 (C.D. Cal. Apr. 14, 2023) (finding the allegation that a defendant was "aware of these contracts" insufficient to support a contractual interference claim). Plaintiffs don't allege concrete facts showing that Defendants knew about their agreements with WPE, the terms of such agreements, or that Defendants knew their conduct toward WPE would somehow cause it not to be able to meet its contractual obligations to Plaintiffs.

**No alleged intent**.    For similar reasons, Plaintiffs haven't plausibly pleaded the "intent" element of either tortious interference claim. Plaintiffs must allege that each Defendant has the requisite intent to (1) disrupt an existing contract and prospective economic relationship, or (2) design its actions such that it knew "the interference was certain or substantially certain to occur as a result of its action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2023).

As just explained, there's nothing in the operative complaint alleging that Defendants knew about Plaintiff's WPE contracts or the terms of their "Scale" or "Premium 1" plans. Plaintiffs allege only that Defendants acted to harm WPE generally, not that they intended to disrupt any specific WPE customer's contract or prospective relationship. Logically, then, there is no plausible allegation that either of the Defendants *intended* to interfere with those terms or relationships.  *See Trindade,* 2013 WL 3977034, at *16 ("Because [counter-plaintiff] fails to sufficiently allege that Lenahan had anything more than generalized knowledge of any contractual relationships, it likewise fails to allege that Lenahan developed the requisite intent to disrupt those relationships.").

**No alleged disruption or breach of WPE contracts.**    Relatedly, Plaintiffs fail to allege that WPE was unable to perform any of the terms of the SLA or Plaintiffs' "Scale" or "Premium 1" plans. The contractual-interference claim requires Plaintiffs to plead how, specifically, Defendants prevented performance of their WPE contracts or made performance more expensive or difficult. *See* CACI No. 2201; *UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015). This is because, "to understand whether [the plaintiff's] performance was disrupted require[s] the district court to determine what contractual rights they possess[ed]." *UMG Recordings*, 117 F. Supp. 3d at 1115; *see also United Artists Corp. v. United Artist Studios LLC*, 2019 WL 8221088, at *5

(C.D. Cal. Aug. 2, 2019). Plaintiffs have pleaded nowhere close to that here.

For example, in *Image Online Design, Inc. v. Internet Corp. for Assigned Names and Numbers*, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013), the United States government authorized the defendant to administer the Internet's primary domain system, including new top-level domains. The plaintiff operated a domain registry and applied unsuccessfully for official approval of that domain. The plaintiff sued, alleging that the defendant's rejection disrupted its business and "interfere[d] with [its] contractual relations." *Id.* at 9. But the court rejected this claim because the plaintiff had not identified any contracts or any actual disruption. A plaintiff "must allege actual interference with *actual* contracts, such that a result is a *specific* breach, not merely general damage to the business." *Id.* (emphasis added). This is why plaintiffs often attach the contract at issue to the complaint, so courts can identify and understand the provisions that were allegedly disrupted. *See, e.g., Unite Eurotherapy, Inc. v. Walgreen Co.*, 2017 WL 513008, at *3 (S.D. Cal. Feb. 7, 2017).

Here, the closest Plaintiffs come to alleging a specific contract term is their reference to a "Service Level Agreement" with WPE, which, they say, "promises a certain level of website uptime, generally 99.95% of the time with certain exclusions for maintenance," and they allege the "degraded services substantially exceeded the permissible" amount of downtime under that contract. FAC ¶ 37. But even accepting this allegation as true, Plaintiffs fail to allege what specifically their own contracts promised, how uptime was calculated, what the baseline measurement was, or how the performance during the relevant period deviated from that standard. The reference to "generally 99.95%" uptime, qualified by unspecified "exclusions for maintenance," is too vague and disconnected from any definite obligation or quantifiable breach or disruption. What is the "permissible" amount of downtime under each Plaintiff's contract?  How exactly was the website service "degraded" during the period in question and how did Defendants proximately cause that alleged "degradation"? What specific term in the WPE contract did any of this violate, and how? Plaintiffs plead none of this necessary factual detail.

Plaintiffs also point to a range of technical features allegedly included in their hosting plans with WPE—though it remains unclear how these features relate to the Service Level Agreement or the claims asserted in this case, or even what several of them are. Plaintiffs reference daily backups, security patching, plug in scans, and "fully managed WP, PHP, and MySQL updates," among other

technical features. FAC ¶¶ 53, 61. Defendants and the Court are left to guess how, if at all, features like "MySQL services" or "one-click staging" connect to the contracts at issue. Simply quoting technical jargon and unspecific terms from Plaintiffs' plans isn't enough. They don't adequately and specifically allege what WPE was obligated to provide, how WPE's performance was prevented or made more expensive or difficult, and how Defendants caused any of that. In fact, Plaintiffs suggest there ended up being no performance issues after all, since their relationships with WPE are still ongoing and WPE was able to find workarounds to resolve alleged service interruptions. *Id.* ¶¶ 40, 55.

At bottom, the First Amended Complaint does not answer "[t]he central inquiry" of the "contractual rights that are at issue," or how Defendants allegedly caused the performance of that contract to become more difficult or impossible. *Moog Inc. v. Skyryse, Inc.*, 2023 WL 3432213, at *20 (C.D. Cal. Apr. 14, 2023) (quoting *ConsumerDirect, Inc. v. Pentius, LLC*, 2022 WL 16949657, at *3 (C.D. Cal. Aug. 25, 2022)).

### 3. Plaintiffs do not sufficiently plead a prospective economic relationship

Plaintiffs' claim for interference with prospective economic relations (Count Two) independently fails due to the absence of any alleged prospective economic relationship that Defendants supposedly disrupted.

In the realm of intentional-interference claims, the California Supreme Court has emphasized the need to "firmly distinguish" between existing contractual relationships and prospective economic relations. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995). The Ninth Circuit has reiterated this distinction—prospective economic relations lie in a "zone where the rewards and risks of competition are dominant," warranting less judicial solicitude than interference with existing contracts. *CRST*, 479 F.3d at 1108. The pleading requirements are more exacting for prospective-economic-relationship claims, since the economic relationship or advantage is by definition "only prospective," and thus can easily veer into the realm of speculation. *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1151 (N.D. Cal. 2019). This is why "California law precludes recovery for overly speculative claims by 'requir[ing] proof that it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference.'" *Infectolab*, 2021 WL 292182, at *4 (citation omitted).

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:25-CV-01892-AMO

To adequately plead a prospective economic relationship, Plaintiffs must allege facts showing that it was reasonably probable that an identifiable relationship would have materialized but for Defendants' interference. *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2014 WL 524076, at *14 (N.D. Cal. Feb. 14, 2014). This requires Plaintiffs to identify a specific "economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff," not just a "hope of future transactions." *Song v. Drenberg*, 2019 WL 1998944, at *7 (N.D. Cal. May 6, 2019) (citation omitted); *Logistick Inc. v. AB Airbags, Inc.*, 543 F. Supp. 3d 881, 887 (S.D. Cal. 2021) (dismissing claim where plaintiff failed to identify prospective customers, negotiations, or terms of anticipated sales).

Plaintiffs allege that due to Defendants' alleged actions toward WPE, they "must seriously consider not renewing contracts with WPE, allowing the contracts to lapse, terminating the contracts, or not expanding contracts with WPE." FAC ¶ 82. But these allegations confirm that Plaintiffs' relationship with WPE is *ongoing*—not *prospective*. Claims based on alleged interference with an existing, ongoing contract necessarily fail, even if the plaintiff is *considering* not renewing that contract. *Finato v. Keith Fink & Assocs.*, 2017 WL 7202104, at *7 (C.D. Cal. Jan. 19, 2017).

Further (and fatally), there are no allegations that Plaintiffs have any economic interest in *other* customers' relationships with WPE, much less any interest that would give them "the *probability* of future economic benefit." *Song*, 2019 WL 1998944, at *7 (emphasis added). Unlike cases where a plaintiff alleges that specific future business was lost due to a defendant's interference—e.g., cancelled events or terminated negotiations with identified third parties—Plaintiffs allege no actual loss of any anticipated business or economic advantage. There is no suggestion that Plaintiffs sought or secured business opportunities beyond the WPE relationship, or that Defendants disrupted such opportunities.

Because Plaintiffs do not allege a disrupted *prospective* relationship that they were likely to benefit from economically, their prospective-economic-relations claim fails as a matter of law. *See Della Penna*, 11 Cal. 4th at 392; *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 824 (9th Cir. 2023).

**B. Plaintiffs lack standing to assert a UCL claim because they have not "lost money or property" as a result of Defendants' alleged conduct**

Plaintiffs lack standing under the UCL because they haven't plausibly pleaded economic injuries caused by Defendants' alleged conduct. *Simon v. Eastern Ky. Welfair Rights Org.*, 426 U.S. 26, 41-42 (1976). Most of Plaintiffs' alleged harm here is non-monetary (e.g., frustration or concern), and the few allegations of monetary injury have no connection to Defendants; these were additional costs that Plaintiffs *chose* to take on themselves.

Article III and the UCL require a plaintiff to plead that the defendant caused some tangible harm. Article III demands that the plaintiff show, among other things, a "causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Statutory standing under the UCL is even more stringent: a plaintiff must show that they suffered *economic* injury in the form of lost money or property "as a result of," "i.e., caused by," the unfair business practice. Cal. Bus. & Prof. Code § 17204; *see Kwisket Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011).

Here, Plaintiffs primarily claim to have suffered speculative, non-monetary harms. Plaintiff Keller alleges he "*explore[d]* moving his website and all those operated by his business to another managed webhost," "*prepar[ed to]* mov[e] his and his clients' websites to a new host," "*investigat[ed]* a new host environment," had intermittent access "to the Wordpress backend" and "received emails related to this downtime," and "*maintained significant concerns* that the inability to update Plugins and the intermittent disruptions to the website backend *could* create a security vulnerability." FAC ¶¶ 48, 51, 52, 54 (emphasis added). Plaintiff Schanzer's allegations are even more speculative. She claims she "*start[ed] exploring* other options for web hosting services," "*potentially prepar[ed]* to move her client's websites to a new host," and "*investigat[ed]* comparable web hosting services." *Id.* ¶¶ 57, 60 (emphasis added). Both Plaintiffs concede, however, that they ultimately did not change to a different managed webhost and remain customers of WPE to this day. *Id.* ¶¶ 55, 62.

The only purported *economic* harms identified in the First Amended Complaint are (i) the "$1,640.00" that Keller claims to have spent for "alternate services" due to the *possibility* that "he would have to move his clients from the WPEngine platform," FAC ¶ 48; and (2) the "50% discount"

that Schanzer says she "had to provide . . . to one of her clients because she could not fulfill her obligations to her client," *id.* ¶ 58. But there's no allegation that Defendants forced, required, or even indirectly caused Keller to pay for alternate services or for Schanzer to give a discount. Those were their own business decisions, not a loss of money or property "caused by [] the unfair business practice . . . that is the gravamen of the claim." *Kwisket Corp.*, 51 Cal. 4th at 322.

Keller's business strategy was akin to a traveler being concerned about likely flight delays during the summer season and then buying a train ticket as a backup plan—if the traveler's flight leaves on time, they don't get a refund of the train ticket because it ended up being unnecessary. And as for Schanzer's purported discount, the First Amended Complaint is silent on what contractual obligations to her client she could not "fulfill," or whether the client demanded a discount or even noticed any disruption. There is no detail to indicate that the discount was anything other than a goodwill gesture— as opposed to a necessary economic expense because the client threatened to terminate the contract or withhold payment due to something that Defendants caused.

Courts often hold that voluntary expenses—such as pre-litigation costs and attorneys' fees incurred in bringing a UCL claim—do not amount to economic injury because they are not "caused by" the alleged misconduct. *Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1287 (S.D. Cal. 2017); *see also Bullwinkle v. U.S. Bank, N.A.*, 2013 WL 5718451, at *2 (N.D. Cal. Oct. 21, 2013) (same). In *Dare v. Aegis Wholesale Corp.*, the court dismissed with prejudice a UCL claim alleging that the defendant (a mortgage lending company) engaged in fraud in connection with a $400,000 loan the plaintiff obtained to refinance his property. 2019 WL 1455799, at *1 (S.D. Cal. Apr. 2, 2012). The defendant asserted that any money plaintiff paid "resulted from his voluntary [l]oan obligations," and not by its alleged acts. *Id.* at *3. The court agreed—plaintiff's obligations under the loan not only "fail[ed] to demonstrate economic injury," but also failed to demonstrate how such injury "*was the result of* Defendant's unfair business practice." *Id.* at *4 (emphasis added). In other words, the fact that the plaintiff took out the loan wasn't *caused by* the defendant's conduct—the plaintiff did so voluntarily.

Similarly, in *Parker v. U.S. Bancorp*, the court dismissed a UCL claim despite the plaintiff's argument that he suffered an "injury in fact" when U.S. Bank's actions caused him to "hire an attorney and pay considerable attorneys' fees to save" his property from wrongful foreclosure. 2016 WL

7495824, at *6 (C.D. Cal. Sept. 13, 2016). The money the plaintiff spent "to prevent 'the pending loss of the Subject Property' does not constitute damages under the UCL.'" *Id.*

In short, voluntary expenditures like those Plaintiffs claim to have incurred are not economic losses recoverable under the UCL; they are the result of Plaintiffs' own business strategies. The gap between Plaintiffs' alleged economic injuries and Defendants' alleged conduct are too great to plausibly allege that Defendants caused them to lose "money or property" for UCL standing purposes.

### C. Plaintiffs cannot obtain restitution under the UCL

To obtain restitution under the UCL (or more generally), a plaintiff must show that the defendant is in possession of either money or property in which he has an ownership interest. *Banga v. Experian Info. Solutions*, 2010 WL 11531066, at *3 (N.D. Cal. Mar. 8, 2010). That is, restitution is available under the UCL only for "money or property that defendants took directly from plaintiff." *Korea Supply*, 29 Cal. 4th at 1149. But Plaintiffs do not allege that Defendants took any money or property from them. Rather, Plaintiffs allege that they paid *WPE* in exchange for services under their contracts. FAC ¶¶ 33, 36 (emphasis added). And Plaintiffs concede throughout the First Amended Complaint that Defendants' services are "free and open source." *E.g., id.* at ¶ 25. Since Plaintiffs do not allege that they ever paid Defendants *anything*—or that Defendants otherwise took money or property from them—there's nothing for Defendants to return to Plaintiffs in the form of restitution. *See Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009).

### D. The UCL claim separately fails because Plaintiffs have adequate remedies at law

Plaintiffs' UCL claim seeks "disgorgement and restitution of all earnings, profits, compensation, and benefits received." FAC ¶¶ 91-101. But the UCL claim is equitable in nature, and Plaintiffs cannot pursue equitable relief without establishing that their legal remedies—i.e., money damages—are inadequate. *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (where legal remedies are adequate, federal courts lack equitable jurisdiction to consider the merits of an equitable claim). Plaintiffs have not made any such showing here.

The Ninth Circuit held in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) that a plaintiff cannot pursue equitable relief while simultaneously claiming entitlement to legal remedies. The court reasoned that federal courts "must apply traditional equitable principles before

awarding restitution under the UCL." *Id.* at 841. One well-established equitable principle is that, to obtain equitable relief, a plaintiff must lack an "adequate remedy at law." *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992))). Thus, absent a showing by the plaintiffs that they "lack an adequate remedy at law," district courts should dismiss claims for equitable relief. *Sonner*, 971 F.3d at 844; *see Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009-10 (N.D. Cal. 2020) (dismissing request for restitution at the pleading stage because plaintiff did not allege that "under usual principles of equity, their remedies at law would be inadequate to what restitution could provide").

Plaintiffs' UCL claim seeks restitution and disgorgement, but they have adequate remedies at law and have not pleaded otherwise. The First Amended Complaint primarily seeks monetary damages and sound in contract. Plaintiffs' theory is that they paid WPE for services that Defendants allegedly disrupted, and Defendants should therefore pay as damages the "costs of remedy[ing]" that disruption. FAC ¶ 98. This is "exactly the type of injury for which legal remedies are appropriate." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021) (damages would be adequate to remedy a "loss of money and/or loss in value").

Plaintiffs have not articulated why their legal remedies would be inadequate. They base their request for damages on the same underlying factual predicates as their request for equitable remedies— i.e., the cost and burden of having their services disrupted. This Court has reasoned in a different context that "where an [equitable claim] relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014). And nowhere do Plaintiffs explain how restitution would go beyond, or be distinct from, the general and punitive damages they seek. *See Apple*, 500 F. Supp. 3d at 1009.

## VI.    CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' First Amended Complaint.

DATED: June 20, 2025                          Respectfully submitted,

                                              GIBSON, DUNN & CRUTCHER LLP


                                              By: *Kahn A. Scolnick*
                                                   Kahn A. Scolnick

                                              *Attorney for Defendants Automattic Inc. and*
                                              *Matthew Charles Mullenweg*