**SCHUBERT JONCKHEER & KOLBE LLP**
ROBERT C. SCHUBERT (S.B.N. 62684)
rschubert@sjk.law
AMBER L. SCHUBERT (S.B.N. 278696)
aschubert@sjk.law
DANIEL L.M. PULGRAM (S.B.N. 354569)
dpulgram@sjk.law
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220

**TYCKO & ZAVAREEI LLP**
SABITA J. SONEJI (S.B.N. 224262)
ssoneji@tzlegal.com
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

DAVID A. MCGEE (*pro hac vice*)
dmcgee@tzlegal.com
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN KELLER and SHARON SCHANZER, individually and on behalf of their businesses, KELLER HOLDINGS LLC (DBA SecureSight) and RLDGROUP, and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>AUTOMATTIC INC., a Delaware corporation, and MATTHEW CHARLES MULLENWEG, an individual,<br><br>*Defendants*. | No. 3:25-cv-01892-AMO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT.**<br><br>**Hearing:**<br>Date: August 7, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 10<br><br>Hon. Araceli Martínez-Olguín |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT ........................................................................................................................3

    A.    Plaintiffs properly allege intentional-interference claims. ..........................................3

        (1)    Plaintiffs properly alleged knowledge of contractual relations. ....................4

        (2)    Plaintiffs properly pled intent to disrupt contractual relations.......................5

        (3)    Plaintiffs properly pled their contractual relations were disrupted. ...............6

        (4)    Plaintiffs properly plead interference with prospective economic relations...8

    B.    Plaintiffs have standing to assert claims under the UCL. .......................................10

    C.    Plaintiffs can obtain restitution under the UCL. .....................................................11

    D.    Plaintiffs lack an adequate remedy at law................................................................12

CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
   424 F.3d 1079 (9th Cir. 2005) ............................................................................................. 5

*Bear Down Brands, LLC v. Bora Servs.*,
   No. SACV 22-01998-CJC (DFMx), 2023 U.S. Dist. LEXIS 142749 (C.D. Cal. May 25, 2023) 5

*Brooks v. Thomson Reuters Corp.*,
   2021 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ................................................................ 13

*Campidoglio LLC v. Wells Fargo & Co.*,
   870 F.3d 963 (9th Cir. 2017) ................................................................................................. 2

*Cappello v. Walmart Inc.*,
   394 F.Supp.3d 1015 (N.D.Cal. 2019) .................................................................................. 10

*Carroll v. Myriad Genetics, Inc.*,
   2022 WL 16860013 (N.D. Cal. Nov. 9, 2022) ..................................................................... 13

*Coleman v. Mondelez Int'l Inc.*,
   554 F. Supp. 3d 1055 (C.D. Cal. 2021) ............................................................................... 13

*Collyer v. Catalina Snacks Inc.*,
   712 F. Supp. 3d 1276 (N.D. Cal. 2024) ............................................................................... 13

*CRST Van Expedited, Inc. v. Werner Enters.*,
   479 F.3d 1099 (9th Cir. 2007) ......................................................................................... 9, 10

*Erickson v. Pardus*,
   551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) .......................................... 3

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022) .............................................................................................. 12

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) ......................................................................................... 3, 14

*Image Online Design, Inc. v. Internet Corp. for Assigned Names & Nos.*,
   No. CV 12-08968 DDP (JCx), 2013 U.S. Dist. LEXIS 16896 (C.D. Cal. Feb. 7, 2013) ............. 7

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ............................................................................................... 3

*In re Natera Prenatal Testing Litig.*,
   664 F. Supp. 3d 995 (N.D. Cal. Mar. 28, 2023) .................................................................. 13

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) .................................................................................................. 3

*Jenni Rivera Enterprises, LLC v. Latin World Ent. Holdings, Inc.*,
    36 Cal. App. 5th 766, 782, 249 Cal. Rptr. 3d 122 (2019) ............................................. 7

*Johnson v. Riverside Healthcare Sys.*,
    534 F.3d 1116 (9th Cir. 2008) ....................................................................................... 3

*Junhan Jeong v. Nexo Fin. LLC,*
    2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ............................................................... 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134, 1140, 131 Cal. Rptr. 2d 29, 35, 63 P.3d 937 (2003) ...................... 12

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ................................................................................................ 10

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ...................................................................................... 3

*Mintz v. Blue Cross of California*,
    172 Cal. App. 4th 1594 (2009) ..................................................................................... 7

*Moog Inc. v. Skyryse, Inc.*,
    No. 2:22-cv-09094-GW-MAR, 2023 U.S. Dist. LEXIS 66996 (C.D. Cal. Apr. 14, 2023).. 5, 7, 8

*Moore v. Apple, Inc.,*
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ............................................................ 6, 7, 8, 10

*Moore v. Centrelake Med. Grp., Inc.*,
    83 Cal. App. 5th 515 (2022) ....................................................................................... 10

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) ................................................................................................. 7

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) .................................................................................................... 6

*Sebastian Int'l, Inc. v. Russolillo*,
    162 F. Supp. 2d 1198 (C.D. Cal. 2001) ........................................................................ 5

*Shersher v. Superior Court*,
    154 Cal. App. 4th 1491, 1497, 65 Cal. Rptr. 3d 634 (2007) ...................................... 12

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) ...................................................................................... 12

*Spotlight Ticket Mgmt. v. Concierge Live,*
    LLC, No. 2:24-cv-00859-WLH-SSC, 2025 U.S. Dist. LEXIS 406 (C.D. Cal. Jan. 2, 2025) ...... 7

*Steiner v. Vi-Jon Inc.*,
    723 F. Supp. 3d 784 (N.D. Cal. 2024) ...................................................................................... 13

*Swipe & Bite, Inc. v. Chow*,
    147 F. Supp. 3d 924 (N.D. Cal. 2015) ........................................................................................ 5

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...................................................................................... 7

*Valiente v. Simpson Imps., Ltd.*,
    717 F. Supp. 3d 888 (N.D. Cal. 2024) ...................................................................................... 13

*Warren v. Whole Foods Mkt. California, Inc.*,
    2022 WL 2644103 (N.D. Cal. July 8, 2022) ............................................................................ 14

# INTRODUCTION

When Defendants declared "nuclear war" on WPEngine Inc. ("WPE"), they knew WPE's customers would be caught in the blast. That was the point. This case arises from Defendants' deliberate and well-publicized attempts to harm WPE by disrupting its relationship with its customers, including Plaintiffs. This Court is already familiar with much of the underlying factual background. On December 10, 2024, the Court found it likely that Defendants tortiously interfered with WPE's customer relationships and, on that basis, issued a preliminary injunction. *See WPEngine, Inc. v. Automattic Inc.*, No. 24-cv-06917-AMO, 2024 U.S. Dist. LEXIS 223543 (N.D. Cal. Dec. 10, 2024). That evidence is already before the Court and was incorporated by reference into the First Amended Complaint. Dkt. 30 ("FAC") ¶¶ 9, 10, 45.

Seeking to sidestep the weight of that record, Defendants' Motion (Dkt. 36, "Mot.") misrepresents Plaintiffs' allegations and recycles arguments this Court has already rejected in the related case. Their Motion fails for three reasons. First, California law protects the existence of a contractual relationship—not any specific term—from outside interference. Courts routinely reject the kind of hyper-specificity Defendants demand. Second, the FAC alleges far more detail than Defendants admit, including specific contract terms that easily meet the Rule 8 pleading standard.[1] Third, to the extent Defendants dispute the facts, their arguments are premature and must be reserved for summary judgment or trial, not a motion to dismiss.

Defendants' motion finds no support in either law or fact. It should be denied in its entirety.

# FACTUAL BACKGROUND

Plaintiffs' allegations are straightforward. Plaintiffs purchased WPE web hosting services on behalf of themselves and their businesses, forming contractual relationships with WPE. FAC

---

[1] Defendants' misrepresentations of the FAC are particularly egregious in their so-called "Factual Background" section, which they claim is drawn from the FAC and assert should be "taken as true." Mot. at 8:19. For example, they contend it should be "taken as true" that Defendants acted "in response to WPE's misuse and subsequent refusal to address trademark concerns." *Id.* at 9:8–9. But the FAC alleges precisely the opposite. *See* FAC ¶ 41 ("While Defendants claim their decision to block access by Plaintiffs and Class Members was a typical cessation of business relationships during ongoing litigation, it was anything but. ***WPE has produced voluminous evidence that the so-called trademark dispute is a mere pretext to sabotage WPE's services and relationship with its customers.***") (emphasis added).

¶¶ 13-14, 33, 43-44, 48-54, 57-61, 75. WPE's web hosting services are built on, and do not properly function without, the open-source WordPress.org software and repository, which has long been promised to be free for everyone forever. *Id.* ¶¶ 2, 3, 7, 24-27, 32-33, 36, 37. Defendants Mullenweg and Automattic own and operate for-profit web hosting businesses that directly compete with WPE. *Id.* ¶¶ 5, 8, 15, 32. 64.

Beginning at least as early as September 24, 2024, in what Mullenweg described as "Nuclear War," Defendants used their influence with WordPress.org to block WPE's access to core WordPress.org systems and software to their competitor WPE. *Id.* ¶¶ 6, 34-36, 41, 42. Defendants initiated this "nuclear war" under the false pretext of a trademark dispute. In reality, they sought to cripple WPE's services and harm its customers to poach them and extort WPE for millions of dollars. *Id.* ¶¶ 6, 8-10, 38, 41-47, 64, 77.

Defendants were aware of the contracts between WPE and customers, including Plaintiffs. *Id.* ¶¶ 7-11, 32, 38, 41-46, 64, 75, 77, 80. When Defendants cut off access to WordPress.org, they did so knowing it was at minimum practically certain to disrupt WPE's contracts with its customers. ¶¶ *Id.* 1, 8, 9, 34-38, 41-46, 64, 77, 80. Defendants' disruption of WPE's contracts with Plaintiffs made the performance of the contracts more difficult and costly, caused Plaintiffs to receive services that were degraded compared with what they would have otherwise received, and caused additional harms including time and expense. *Id.* ¶¶ 6, 7, 8, 11, 33, 36-37, 40, 43-46, 48-64, 77-80, 82. Temporary workarounds were time-consuming, costly, and insufficient to restore the full value of the original services Plaintiffs contracted for. ¶¶ 7, 40, 50, 59, 63-64.

Plaintiffs have brought claims of tortious interference with contractual relations, tortious interference with prospective economic relations, and violation of the California Unfair Competition Law ("UCL").

## LEGAL STANDARD

Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 970 (9th Cir. 2017). To overcome a

Rule 12(b)(6) motion to dismiss, the factual allegations in the plaintiff's complaint "must … suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)) (alterations in original). This is not a high bar. "Specific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what … the claim is and the grounds upon which it rests." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing *Erickson v. Pardus,* 551 U.S. 89 (2007)) (internal quotation marks omitted).

## ARGUMENT

Defendants' arguments suffer from two fundamental defects: (1) their demands for specificity impose a burden contrary to law and (2) they fundamentally misunderstand the factual allegations set forth in the complaint. It is well-established that, for a complaint to survive at the pleadings stage, "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what … the claim is and the grounds upon which it rests." *Id.* The FAC contains detailed factual allegations supporting Plaintiffs' claims and the grounds on which they rest. As discussed below, Defendants need not have intended to disrupt any particular WPE customer's relationship where their conduct was aimed at disrupting WPE's customer relationships generally.

### A. Plaintiffs properly allege intentional-interference claims.

Tortious interference with contractual relations has five elements: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (cleaned up); *see also hiQ Labs, Inc. v. LinkedIn Corp.,* 31 F.4th 1180, 1191 (9th Cir. 2022). Of these five elements, Defendants dispute only three: knowledge, intentional acts, and actual breach or disruption. Notably, Defendants do not dispute the existence of valid contracts between WPE and Plaintiffs, nor do they contest that Plaintiffs suffered damages.

**(1)   Plaintiffs properly alleged knowledge of contractual relations.**

There is no genuine dispute that Defendants knew WPEngine formed contracts with its customers. As this Court already held in its December 10, 2024 preliminary injunction order: "Defendants were aware of these contractual relationships long before Defendants commenced their campaign against it. In a 2017 post, Mullenweg described WPEngine as 'the largest dedicated managed WP host[.]'" *Wpengine, Inc. v. Automattic Inc.*, No. 24-cv-06917-AMO, 2024 U.S. Dist. LEXIS 223543, at *32 (N.D. Cal. Dec. 10, 2024).

Contrary to Defendants' claim that "Plaintiffs allege nothing to indicate whether or how Defendants knew about their contracts with WPE or the terms at issue" (Mot. at 5-6:28-1), Plaintiffs repeatedly and unambiguously allege Defendants' knowledge of the contracts. *See*, *e.g.*, FAC ¶ 8 (describing Defendants' advertising campaigns targeting WPE customers); ¶ 9 (discussing a list of disrupted websites published by Defendants, which includes Plaintiffs' websites); ¶ 38 (describing a campaign to induce WPE customers to breach, evidencing knowledge of the contracts); ¶ 41 (noting voluminous evidence of knowledge in the related case); ¶¶ 43–44 (citing public statements by Mullenweg about WPE customers); ¶ 64 (discussing Defendants' statements about customer loss); ¶¶ 76–77, 80 (detailing Defendants' public comments and intent to cause harm).

Mullenweg's own public comments, cited at FAC ¶¶ 43–44 and linked in footnote 18,[2] further reveal the extent of Defendants' knowledge of the contracts between Plaintiffs and the Class and WPE. Asked about the millions of websites running on WPE, he responded: "People are paying 400 million dollars to WPEngine that promises them security, updates, hosting, et cetera. So they were selling the free stuff on WordPress.org to their customers. And then when we turned them off, they got mad." FAC ¶ 43.

That admission cuts to the heart of this case. Mullenweg—along with Automatic, which he owns and controls—knew WPE was promising services like "security, updates, hosting, et cetera" to its customers, and he admitted, "we turned them off." *Id.* That alone suffices to allege knowledge of the nature of WPE's contractual relationships with Plaintiffs and the Class.

---

[2] The interview is linked in the FAC and can be viewed at: https://www.youtube.com/watch?v=f15Xn23Mytg&t=3447s.

Defendants argue that Plaintiffs must plead exact knowledge of every detail of their contracts to survive dismissal. This is not the law. The Ninth Circuit has already considered—and rejected—such demands for specificity. In *Altera*, it held that "[w]hen the defendant performs the act that causes the interference, the defendant need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship." *Altera Corp. v. Clear Logic, Inc*., 424 F.3d 1079, 1091-92 (9th Cir. 2005).

Courts applying California law routinely hold that it is sufficient to allege that the defendant knew the plaintiff had contracts with a group or category of counterparties. *See, e.g.*, *Bear Down Brands, LLC v. Bora Servs*., No. SACV 22-01998-CJC (DFMx), 2023 U.S. Dist. LEXIS 142749, at *5 (C.D. Cal. May 25, 2023) ("[T]he plaintiff need not allege that the defendant knew about the particular contract in question. Rather, it is sufficient to allege that the defendant knew the plaintiff had contracts with a certain group or type of party."); *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001). Plaintiffs allege just that: Defendants knew WPE contracted with a broad group—its web-hosting customers—including Plaintiffs.

The cases cited by Defendants are inapposite. The decisions in *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015), and *Moog Inc. v. Skyryse, Inc.*, No. 2:22-cv-09094-GW-MAR, 2023 U.S. Dist. LEXIS 66996, at *58 (C.D. Cal. Apr. 14, 2023), involved plaintiffs who failed to allege "*any* facts showing knowledge." *Id.* (emphasis added). That is a far cry from this case.

Here, Plaintiffs identify a public list of disrupted websites that includes their own (FAC ¶ 9), public statements by Mullenweg admitting disruption (¶ 43), marketing campaigns seeking to induce contract breaches (¶ 8, 38), and direct references by this Court to Defendants' knowledge and intent (¶ 45). These well-pled allegations easily satisfy the Rule 12(b)(6) standard.

**(2)     Plaintiffs properly pled intent to disrupt contractual relations.**

Defendants' arguments regarding intent largely rehash their "lack of knowledge" argument, rather than raise any genuine dispute as to Defendants' intentions. Defendants claim that "Plaintiffs allege only that Defendants acted to harm WPE generally, not that they intended to disrupt any specific WPE customer's contract or prospective relationship." This is both a significant

omission—Plaintiffs expressly allege that Defendants acted to harm WPE by disrupting its customer contracts and prospective relationships—and a misstatement of the legal standard.

California takes a broad view of what constitutes "intent" for the purposes of intentional interference with contractual relations. The California Supreme Court has held:

> [T]he tort of **intentional interference with performance of a contract does not require that the actor's primary purpose be disruption of the contract**. … [I]t applies also to intentional interference … in which the actor does not act for the purpose of interfering with the contract or desire it, but knows that the interference is certain or substantially certain to result.

*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998) (emphasis added); *see also Moore v. Apple, Inc.,* 73 F. Supp. 3d 1191, 1203 (N.D. Cal. 2014).

Thus, when evaluating the "intent" prong, courts assess whether the defendant acted with knowledge that interference was certain or substantially certain to result. Defendants themselves acknowledge that Plaintiffs alleged Defendants acted to harm WPE. Mot. at 7. At the time they did so, they knew such actions would inevitably disrupt WPE's contracts with its customers.

As this Court recognized in its preliminary injunction order, and as cited in FAC ¶ 45, Mullenweg's explicit call for "nuclear war" against WPEngine reflects clear intent. The fallout from his self-described "scorched earth nuclear approach" would certainly harm WPE customers. Indeed, Defendants' own advertising campaigns sought to capitalize on that harm by poaching WPE's customers for themselves. FAC ¶¶ 8, 38.

Plaintiffs have properly alleged that Defendants intended to disrupt the relationship between WPE and its customers, including Plaintiffs. Whether their malice was directed at WPE or at WPE's customers is irrelevant. Either way, the interference was intentional.

**(3)   Plaintiffs properly pled their contractual relations were disrupted.**

Defendants' scattershot assertion that Plaintiffs failed to allege disruption misunderstands Plaintiffs' well-pled allegations and mischaracterizes California law. The remainder of their argument rests on factual disputes that are not suitable for resolution at the pleadings stage.

Defendants suggest that because Plaintiffs still have a relationship with WPE, their contracts could not have been disrupted. Mot. at 15. This misstates California law. "Disruption does not require that there be a breach of contract … it only requires that Defendant's acts disrupt 'the

benefits due [plaintiff] under the contract.'" *Spotlight Ticket Mgmt. v. Concierge Live,* LLC, No. 2:24-cv-00859-WLH-SSC, 2025 U.S. Dist. LEXIS 406, at *17 (C.D. Cal. Jan. 2, 2025) (quoting *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1603 (2009)). The California Supreme Court has held that a "[p]laintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations." *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990); *see also Jenni Rivera Enterprises, LLC v. Latin World Ent. Holdings, Inc.*, 36 Cal. App. 5th 766, 782 (2019) (holding "the tort of interference with contractual relations requires only proof of interference [not breach]."). To interfere with Plaintiffs' contractual relationships, Defendants need only have disrupted the benefits Plaintiffs were due under the contract or made performance more costly or burdensome. Plaintiffs clearly meet that standard.

Defendants also argue that Plaintiffs must identify specific contractual terms before they can bring a claim for tortious interference. Not so. Under California law, that "it is the contractual relationship, not any term of the contract, which is protected against outside interference." *See Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 791 P.2d 587, 590-91 (Cal. 1990). The cases Defendants cite—*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092 (C.D. Cal. 2015), and *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Nos.*, No. CV 12-08968 DDP (JCx), 2013 U.S. Dist. LEXIS 16896 (C.D. Cal. Feb. 7, 2013)—have been repeatedly rejected for that proposition.

For example, in *Moore v. Apple,* a court in this District expressly rejected a defendant's argument that "Plaintiff must identify a specific contract term or language" based on *Image Online*. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1203 (N.D. Cal. 2014). The fact that the plaintiff had alleged the existence of a valid agreement, that she had paid monthly fees and charges, and generally described a right that was breached, was sufficient to state a claim even without identifying a specific contract term or language. *Id.*

Defendants cherry-pick a quote out of context from *Moog Inc. v. Skyryse, Inc.*, claiming the FAC "does not answer "[t]he central inquiry" about "contractual rights that are at issue." Mot. at 15 (quoting *Moog*, 2023 U.S. Dist. LEXIS 66996, at *54). But *Moog* actually supports Plaintiffs' argument. That case reaffirmed that the question is whether the complaint "*sufficiently* indicates the

contractual rights that are at issue" and expressly "reject[ed] [the] argument that failure to identify specific contracts and customers is fatal to the claim. *Id.* at *54 (emphasis added).

Defendants' omission of the word "sufficiently" is critical. Plaintiffs need not identify specific contractual provisions if the complaint "sufficiently" indicates the contractual rights that are at issue. Plaintiffs have done just that here. In fact, the Court in *Moog* also expressly rejected both *UGM Recordings* and *Image Online Design* where, as here, the claimants "identified the third party, the contracts at issue, and the nature of the relationship." *Id.* at 55. Plaintiffs easily clear that bar. They identify that: (i) third party to the contract (WPE); (ii) the plans, SLAs, fees, and services involved; (iii) the specific services disrupted (e.g., daily backups, security patching, plugin scans); and (iv) the degradation of services and increased burdens resulting from Defendants' interference. FAC ¶¶ 33, 36, 37, 38, 40, 43, 44, 45, 49, 52, 53, 57, 61, 63, and 64. Indeed, these contractual disruptions are the direct result of Defendant Mullenweg's unilateral decision to "turn off" services for Plaintiffs and the Class. *Id.* at ¶ 43.

Defendants' remaining arguments are run-of-the-mill factual disputes. For example, they admit that Plaintiffs identified an SLA that was part of their contract and alleged the degraded services "substantially exceed[ed] the permissible' amount of downtime under the contract." Mot. at 14. But they dispute how downtime was calculated and what maintenances exclusions may apply. *Id.* at 18-20. These are fact questions, not pleading deficiencies. As in *Moore*, "Defendant's argument goes to the truth of Plaintiff's allegations rather than their sufficiency." *Moore*, 73 F. Supp. 3d at 1204. If Defendants wish to test how downtime is calculated or what exclusions apply—or explore the technical meanings of "daily backups," "security patching, and "plugin scans"—they can do so through discovery. But it is improper to cast doubt on Plaintiffs' well-pled allegations or ask this Court to construe them in Defendants' favor. Defendants' feigned confusion does not justify dismissal. Plaintiffs' allegations are more than sufficient to satisfy Rule 12(b)(6).

**(4)   Plaintiffs properly plead interference with prospective economic relations.**

The tort of interference with prospective economic relations shares nearly identical elements with tortious interference with a contract—but also requires an independently wrongful act and an

economic relationship with the probability of future benefit to the plaintiff. Defendants do not dispute that Plaintiffs have alleged an independently wrongful act—and for good reason.

The Ninth Circuit has made clear that a contemporaneous UCL violation may satisfy the wrongful-act requirement. "[T]he requirement of an independently wrongful act under the California law of intentional interference with prospective economic relations may be satisfied even by an alleged violation of a borrowing statute like the UCL." *CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1110-11 (9th Cir. 2007). As the Ninth Circuit explained, "our reasoning works [as] a practical merger of the two common law torts of intentional interference with existing contract and intentional interference with prospective economic relations, where the two are alleged to coexist along with a contemporaneous and derivative UCL violation." *Id.* That merger—between the common law torts of interference with contract and with prospective economic relations, alongside a contemporaneous and derivative UCL violation—is precisely the situation here.

Plaintiffs have adequately alleged interference with prospective economic relations. Defendants' "Nuclear War" campaign was explicitly designed to make WPE a "diseased asset" and to disincentivize anyone from doing business with entities, like Plaintiffs, that contracted with WPE. FAC ¶¶ 45, 46. As alleged, the service outages caused by Defendants' interference severely disrupted Plaintiffs' websites and hindered their ability to fulfill obligations to their own clients. *Id.* ¶¶ 49-52, 57-60. Defendants' own statements forecasting mass customer attrition as a result of their interference underscore the reasonable probability of lost business. Plaintiffs operate businesses that rely on WPE's infrastructure to serve their own clients. When Defendants intentionally interfered with WPE's ability to deliver those services, they necessarily threatened the economic relationships Plaintiffs had with third parties. That is textbook interference.

Moreover, Plaintiffs allege that, but for this Court's preliminary injunction issued on December 10, 2024, they would have severed ties with WPE entirely. FAC ¶¶ 55, 62. Plaintiff Keller had already contacted an alternative provider and was on the cusp of switching when the injunction was entered. *Id.* ¶ 48. Had that switch occurred, Plaintiffs would have faced further disruption to their businesses and to their own economic relationships. These allegations easily support a plausible claim for interference with prospective economic advantage.

### B. Plaintiffs have standing to assert claims under the UCL.

Defendants' argument that Plaintiffs lack standing under the UCL due to a supposed absence of economic injury fails for at least two reasons. First, it ignores settled law from both the California Supreme Court and the Ninth Circuit holding that properly pled tortious interference claims qualify as economic harm under the UCL. Second, Defendants argue—incorrectly—that Plaintiffs' consequential damages were merely voluntary expenses, akin to legal fees, but that mischaracterizes both the allegations and the law.

Plaintiffs allege they paid WPE for services but received degraded services worth less than what they bargained for. FAC ¶¶ 11, 36, 51-53, 60-61, 63, 77-80. That constitutes economic injury under the UCL. In *Kwikset Corp. v. Superior Court*, the California Supreme Court explained:

> There are innumerable ways in which economic injury from unfair competition may be shown. ***A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have***; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (emphasis added)

That first category—acquiring less than one otherwise would have—is exactly what Plaintiffs allege. California courts have repeatedly held that this "benefit of the bargain" theory suffices to establish economic injury under the UCL. *See, e.g.*, *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515 (2022); *Cappello v. Walmart Inc.,* 394 F.Supp.3d 1015, 1019-1020 (N.D.Cal. 2019). It is undisputed that Plaintiffs formed valid contracts with WPE in exchange for services. But due to Defendants' interference, Plaintiffs did not receive the full value of the services they paid for. This constitutes economic injury sufficient for standing under the UCL. *Id.*

Even Defendants acknowledge that Plaintiffs allege they "received degraded services that fell short of their uptime commitments in their Service Level Agreement (SLA) with WPE." Mot. at 12. That is precisely the kind of benefit-of-the-bargain harm the UCL recognizes as economic injury. It is sufficient under California law.[3]

---

[3] As previously discussed, the Ninth Circuit also expressly permits tortious interference with contract claims to serve as a predicate for an "unlawful" business practice under the UCL. *See CRST* 479 F.3d at 1107; *Moore*, 73 F. Supp. 3d at 1205.

Defendants attempt to minimize Plaintiffs' consequential damages by wrongly asserting that they were purely voluntary. For example, they analogize Plaintiff Keller's purchase of an alternative web host—made in response to their interference—to a traveler choosing to buy a train ticket instead of a plane ticket out of fear of summer flight delays. But that analogy ignores Plaintiffs' allegations that Defendants' conduct directly caused those costs. If WPE were a plane, Defendants grounded it.

Their argument is even weaker as to Plaintiff Schanzer, who alleges she was forced to offer a 50% discount to a client because she could not fulfill her obligations due to the service disruption. FAC ¶ 58. Defendants speculate this may have been "a goodwill gesture." Mot. at 18. But the FAC explicitly alleges otherwise. *Id.* At this stage, the Court must accept those allegations as true.

Finally, Defendants rely on inapposite cases involving litigation costs or attorney's fees—not business expenses incurred to mitigate ongoing disruption caused by wrongful interference—to argue Plaintiffs' economic injuries were "voluntary." Mot. at 18. But pre-litigation costs and attorneys' fees bear no relation to the concrete injuries that Plaintiffs experienced. *See, e.g.*, FAC ¶ 51 (discussing how "Plaintiff Keller had to spend significant time and expense responding to the service disruptions and degradations," including by preparing to move his business to a new web host); ¶ 47, 52-56. These costs are not "voluntary" in any meaningful legal sense. They are direct economic consequences of Defendants' conduct.

Plaintiffs have plausibly alleged economic injury sufficient to establish statutory standing.

### C. Plaintiffs can obtain restitution under the UCL.

Defendants' assertion that Plaintiffs are not entitled to restitution misses the mark. Plaintiffs allege that Defendants ran aggressive advertising campaigns aimed at poaching WPE customers and expanding their own client base—capitalizing on the disruption they themselves caused. *See* FAC ¶¶ 8, 38. For example, Defendants' "WPEngine tracker" website listed Pressable (owned by Automattic) as the "top destination" for sites migrating away from WPE. FAC ¶ 1 n.1.

While Plaintiff and Class Members do not directly pay for access to WordPress.org—despite Defendants' efforts to change that—businesses do pay for Defendants' for-profit hosting platforms—such as Pressable and WordPress.com—that directly compete with WPE. Defendants

profited from their interference by luring class members away from WPE and into their own services. That requires restitution.

Defendants argue that restitution is barred under *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140 (2003), but they misstate its narrow holding. *Korea Supply* held only that non-restitutionary disgorgement of profits—i.e., profits obtained from a third party, not from a plaintiff—is not available under the UCL. It did not foreclose restitution where, as here, Defendants obtained money that can be traced directly to their wrongful conduct and to Plaintiffs' and Class Members' economic losses.

The California Court of Appeal in *Shersher v. Super. Court*, 154 Cal. App. 4th 1491, 1497 (2007), made that distinction clear. It rejected the argument that UCL plaintiffs must show direct payment to the defendant in order to obtain restitution. *Id.* Rather, the UCL "requires only that the plaintiff must once have had an ownership interest in the money or property acquired by the defendant through unlawful means." *Id.* at 1500.

Here, Plaintiffs allege that Class Members paid money to Defendants for hosting services they sought only because Defendants interfered with their prior WPE contracts. FAC ¶¶ 8, 38, 64. Defendants even published a list of customers who switched from WPE to their own platforms— strong evidence that the money flowed directly from the interference. *Id.* ¶ 9. Indeed, as a direct competitor to WPE, Defendants' Pressable and WordPress.com businesses directly profited from interference with WPE and its customers. That is precisely the kind of ownership interest that supports the equitable remedy of restitution.

Plaintiffs' claim for restitution is properly pled and should proceed.

**D.  Plaintiffs lack an adequate remedy at law.**

Finally, Defendants argue that Plaintiffs cannot pursue a UCL claim because they have not alleged an inadequate remedy at law. That is incorrect.

Defendants claim that the Ninth Circuit's decisions in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022), bar the claim. But *Sonner* addressed a claim for restitution on the eve of trial—not at the pleading stage. *See Sonner* 971 F.3d 834 (holding plaintiff could not voluntarily choose to abandon adequate

legal damages after more than four years of litigation to seek restitution instead). As this Court has repeatedly held, "*Sonner* and *Guzman* do not mandate dismissal of [Plaintiffs'] claims because the decisions 'require far less at the pleading stage.'" *Valiente v. Simpson Imps., Ltd.*, 717 F. Supp. 3d 888, 907 (N.D. Cal. 2024) (quoting *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1012 (N.D. Cal. Mar. 28, 2023)); *see also Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022) (acknowledging *Sonner* has split courts at the pleading stage but declining to apply it because "*Sonner* does not address what a plaintiff must allege at the pleading stage in order to proceed on her equitable claims").

Plaintiffs here expressly plead their UCL claim in the alternative. FAC ¶ 92. That alone is sufficient. *See Coleman v. Mondelez Int'l Inc.,* 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021) (declining to dismiss UCL claim under *Sonner* because plaintiff "may be entitled to restitution under the UCL, while not entitled to damages under other causes of action which may impose more stringent elements that plaintiff may ultimately not be able to prove.") (cleaned up); *Junhan Jeong v. Nexo Fin. LLC,* 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (collecting cases and holding that "in light of *Sonner's* limited applicability to the pleading stage, there is no binding precedent that holds that pleading equitable restitution in the alternative is improper").

As this Court has previously explained, "decisions in this district … allow the pursuit of alternative remedies at the pleadings stage." *Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1289 (N.D. Cal. 2024) (collecting cases). This Court should "follow[] their path and permit[] Plaintiffs to proceed with equitable claims at the pleading stage, particularly where there does not appear to be a material distinction between monetary damages and restitution." *Steiner v. Vi-Jon Inc.*, 723 F. Supp. 3d 784, 796 (N.D. Cal. 2024). That is especially true where, as here, Defendants' conduct continues to pose a threat to ongoing business relationships.

Even if this Court were to apply *Sonner* at the pleading stage, most courts hold that it does not bar forward-looking injunctive relief. *See* FAC ¶¶ 99-100. That is because money damages for past harm is an inadequate remedy for future harm. *See*, *e.g.*, *Brooks v. Thomson Reuters Corp.,* 2021 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (collecting cases declining "to apply *Sonner* to bar UCL claims for injunctive relief" because damages are "insufficient to deter a

Plaintiffs' Opposition to Defendants' Motion to Dismiss    13

defendant from engaging in an [unfair or unlawful] conduct"); *Warren v. Whole Foods Mkt. California, Inc.*, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022) (holding *Sonner* is no bar "because the injunctive relief that Plaintiffs request 'is prospective' and their 'remedy at law, damages, is retrospective.'").

Equitable relief is plainly appropriate here. This Court has already issued a preliminary injunction in the related case, finding that equitable relief served the public interest given the widespread effects of Defendants' conduct on WPE customers and the broader WordPress community. *WPEngine, Inc. v. Automattic Inc.*, No. 24-cv-06917-AMO, 2024 U.S. Dist. LEXIS 223543, a *46 n.17 (N.D. Cal. Dec. 10, 2024). As this Court explained, "[o]ver two million websites run the ACF plugin Mullenweg allegedly tampered with, and ***those users rely on the stability of the plugin, and WordPress more broadly, to operate their websites, run their businesses, and go about their day online.*** Maintaining that continuity and preventing arbitrary disruption stemming from a corporate dispute is in the public interest." *Id.* (emphasis added); *see also hiQ Labs, Inc.,* 31 F.4th at 1202 (finding the effects on non-parties relevant to analysis of the public interest element).

Absent a permanent injunction—or any form of equitable relief—Defendants will likely resume their interference, harming Plaintiffs, Class Members, and others across the WordPress ecosystem. As the two named Plaintiffs have already experienced (*see*, *e.g.*, FAC ¶ 54), these practices will undoubtedly cause a cascade of harms, including professional and reputational harm and severe disruptions to their websites and the businesses they run that are likely to be irreparable.

Because Plaintiffs have no adequate remedy at law to prevent future disruption to their websites and businesses, their UCL claim should proceed in the alternative to damages.

## **CONCLUSION**

Defendants chose to drop the "nuclear bomb" on WPE. They cannot now disclaim responsibility for the innocent WPE customers caught in the fallout. For the foregoing reasons, Defendants' motion to dismiss should be denied in full. Should the Court grant any portion of the motion, Plaintiffs respectfully request leave to amend.

| | |
|---|---|
| Dated: July 11, 2025 | */s/ Daniel L.M. Pulgram* |

**SCHUBERT JONCKHEER & KOLBE LLP**
ROBERT C. SCHUBERT (S.B.N. 62684)
rschubert@sjk.law
AMBER L. SCHUBERT (S.B.N. 278696)
aschubert@sjk.law
DANIEL L.M. PULGRAM (S.B.N. 354569)
dpulgram@sjk.law
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220

**TYCKO & ZAVAREEI LLP**
SABITA J. SONEJI (S.B.N. 224262)
ssoneji@tzlegal.com
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

DAVID A. MCGEE (*pro hac vice* to be sought)
dmcgee@tzlegal.com
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900