ROSEMARIE T. RING, SBN 220769
  rring@gibsondunn.com
JOSEPH R. ROSE, SBN 27902
  jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
LEONORA COHEN, SBN 319463
  lcohen@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:   650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER (admitted pro hac vice)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:   212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendant*
*Automattic Inc. and Matthew Charles Mullenweg*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RYAN KELLER and SHARON SCHANZER, individually and on behalf of their businesses, KELLER HOLDINGS LLC (d/b/a SecureSight) and RLDGROUP, and on behalf of all others similarly situated, | CASE NO. 3:25-CV-01892-AMO |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **Hearing:** |
| AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual, | Date:      August 7, 2025<br>Time:      2:00 p.m.<br>Dept:      Courtroom 10<br>Judge:     Araceli Martinez-Olguin |
| Defendants. | |

Gibson, Dunn & Crutcher LLP

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................................ 1

II.     ARGUMENT ...................................................................................................................... 2

      A.      The preliminary injunction in the *WPE* case doesn't excuse pleading defects here.......................................................................................................................... 2

      B.      Plaintiffs fail to allege that Defendants knew about, intended to interfere with, or did interfere with their WPE contracts or prospective economic relations ............. 3

      C.      Plaintiffs do not meaningfully defend their prospective-economic-relations claim........................................................................................................................... 7

      D.      Plaintiffs lack standing under the UCL because they have not sufficiently pled that they "lost money or property"............................................................................ 8

      E.      Plaintiffs cannot obtain restitution under the UCL ................................................. 9

      F.      The UCL claim also fails because Plaintiffs have adequate remedies at law ........... 10

III.    CONCLUSION ................................................................................................................. 11

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:25-CV-01892-AMO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litigation*,
  713 F. Supp. 3d 623 (N.D. Cal. 2024) ..................................................................10, 11

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ...........................................................................11

*In re Apple Processor Litig.*,
  2023 WL 5950622 (9th Cir. Sept. 13, 2023) .................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................7

*Banga v. Experian Info. Solutions*,
  2010 WL 11531066 (N.D. Cal. Mar. 8, 2010) .............................................................9, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................................2

*Cappello v. Walmart Inc.*,
  394 F. Supp. 3d 1015 (N.D. Cal. 2019) ...........................................................................9

*ConsumerDirect, Inc. v. Pentius, LLC*,
  2022 WL 16949657 (C.D. Cal. Aug. 25, 2022) ................................................................6

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
  479 F.3d 1099 (9th Cir. 2007) ..........................................................................................7

*Finato v. Keith Fink & Assocs.*,
  2017 WL 7202104 (C.D. Cal. Jan. 19, 2017) ...................................................................8

*GoDaddy Operating Co. v. Ghaznavi*,
  2018 WL 1091257 (N.D. Cal. Feb. 28, 2018) ..................................................................3

*Guzman v. Polaris Industries Inc.*,
  49 F.4th 1308 (9th Cir. 2022) .........................................................................................10

*Infectolab Americas LLC v. ArminLabs GmbH*,
  2021 WL 292182 (N.D. Cal. Jan. 28, 2021) .....................................................................3

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..............................................................................................9, 10

*Moog Inc. v. Skyryse, Inc.*,
  2023 WL 3432213 (C.D. Cal. Apr. 14, 2023) ...................................................................6

*Moore v. Apple*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) ..............................................................................6

Gibson, Dunn & Crutcher LLP

ii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Palmer v. Stassinos*,
2004 WL 2937216 (N.D. Cal. Dec. 14, 2004) ...................................................................10

*Quelimane Co. v. Stewart Title Guaranty Co.*,
19 Cal. 4th 26 (1998) .............................................................................................................5

*Sebastian International Inc. v. Russolillo*,
162 F. Supp. 2d 1198 (C.D. Cal. 2001) .................................................................................4

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ..........................................................................................10, 11

*SriCom, Inc. v. EbisLogic, Inc.*,
2012 WL 4051222 (N.D. Cal. Sept. 13, 2012) .....................................................................8

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011).................................................................................................2

*Swipe & Bite*,
147 F. Supp. 3d 924 (N.D. Cal. 2015) ...................................................................................4

*Trindade v. Reach Media Group, LLC*,
2013 WL 3977034 (N.D. Cal. July 31, 2013).................................................................3, 4, 5

*Upper Deck Co. v. Panini Am., Inc.*,
469 F. Supp. 3d 963 (S.D. Cal. 2020) ....................................................................................8

*Williamson v. Genentech, Inc.*,
2020 WL 1281532 (N.D. Cal. Mar. 18, 2020) .....................................................................10

*WPEngine, Inc. v. Automattic Inc., et al.*,
Case No. 3:24-cv-06917-AMO ..........................................................................................1, 2

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:25-CV-01892-AMO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.     INTRODUCTION

Plaintiffs insist their claims should survive the pleading stage simply because a different plaintiff (WPE) in a different case with different claims got a preliminary injunction against the same Defendants. But the fact that WPE secured a preliminary injunction to prevent possible harm to *its* business and unidentified customer relationships in *WPEngine, Inc. v. Automattic Inc., et al.*, Case No. 3:24-cv-06917-AMO, doesn't cure the various defects that Defendants have identified here. Ultimately, the resolution of this motion will come down to just how little a plaintiff can get away with in terms of pleading *specific facts* to support the labels and legal conclusions in a complaint.

In their FAC, Plaintiffs appear to be relying on alleged Service Level Agreements ("SLAs") with WPE as the basis for their claims for tortious interference with contract. *See* FAC ¶ 37; Mot. at 8. But Plaintiffs barely mention those agreements in their opposition briefing; they instead lump in unspecified other "plans," "fees, and services" with the SLAs when describing the contracts that Defendants supposedly interfered with. Opp. at 8. This confusion aside, Plaintiffs still have not plausibly alleged facts to explain (1) what specifically WPE promised to give them in a contract; (2) Defendants' knowledge of these terms; and (3) Defendants' intent to interfere and the actual resulting interference with WPE's performance of these terms.

Similarly, the FAC alleges interference with prospective economic relationships "between current and former WPE customers (class members) *and WPE*." FAC ¶ 82 (emphasis added). But Plaintiffs abandon that theory in their opposition briefing; they now try to recast their prospective-economic-relationship claim as based on relationships between themselves *and their customers*. Opp. at 9. Plaintiffs offer no defense of the claim they pleaded, and they cannot survive dismissal by now proposing a different claim (particularly one that fails in any event).

Finally, the UCL claim fails for multiple reasons. Most notably, Plaintiffs again rely on something they haven't pleaded. They insist they can seek restitution from Defendants because they "allege that Class Members *paid money to Defendants* for hosting services." Opp. at 12 (emphasis added). Yet there are no such allegations in the FAC; Plaintiffs allege they paid money *to WPE*.

## II.    ARGUMENT

Plaintiffs repeatedly argue they just need to give Defendants and this Court "fair notice" of their claims. *See, e.g.,* Opp. at 3. In reality, both the Supreme Court and the Ninth Circuit have explained that plaintiffs are "required" to give "more than just notice of the claim." *Starr v. Baca*, 652 F.3d 1202, 1213 (9th Cir. 2011) (discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Plaintiffs "must" allege *facts* that "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation," and those factual allegations must be sufficient "to enable the opposing party to defend itself effectively." *Id.* at 1216. Plaintiffs do not meet this basic pleading threshold for any of their claims.

A.    **The preliminary injunction in the *WPE* case doesn't excuse pleading defects here**

Plaintiffs suggest their claims necessarily survive dismissal because this Court preliminarily enjoined Defendants after finding a likelihood of success in *WPEngine, Inc. v. Automattic Inc.* (the "WPE Injunction"). But WPE's allegations in that case are meaningfully different from those of Plaintiffs here.

Most importantly, WPE's tortious-interference claims are premised on alleged harm to WPE itself and (as Plaintiffs acknowledge) the *loss* of WPE's potential and actual customers, *see* FAC ¶¶ 9-10 (also cited at Opp. at 1); *WPEngine, Inc. v. Automattic, Inc.*, No. 3:24-cv-06917, Dkt. 1 ¶ 117. That's why, in analyzing the irreparable injury prong for a preliminary injunction, this Court focused mainly on WPE's actual and potential loss of customers and secondarily on its alleged loss of goodwill and harm to its reputation. *See* WPE Preliminary Injunction, 3:24-cv-06917, Dkt. 64 at 31-32.

Here, of course, Plaintiffs are not *potential* WPE customers or *former* customers who terminated their WPE contracts; they are WPE's current customers who maintained their contracts notwithstanding the dispute between WPE and Defendants. This makes all the difference. Under this Court's reasoning, unlike potential customers or former customers, it's not self-evident that WPE's current customers suffered any disruption of their WPE contracts at all. And regardless, the finding of a likelihood of harm to WPE or its potential or former (or even current) customers doesn't mean that *these* specific Plaintiffs have any plausible claim that Defendants interfered with any specific provisions in *their* unique WPE contracts. Each case needs to be evaluated on its own merits based on

Gibson, Dunn &
Crutcher LLP

the specific allegations and legal theories asserted; and in that light, Plaintiffs fail to state a claim.

**B.    Plaintiffs fail to allege that Defendants knew about, intended to interfere with, or did interfere with their WPE contracts or prospective economic relations**

Plaintiffs do not plausibly allege *facts* demonstrating knowledge, intent, or disruption—the absence of any one of which is sufficient to dismiss their intentional interference claims. The through-line dooming all three elements is the lack of specificity required under the federal pleading standards and California law.

***Knowledge.*** Plaintiffs allege nothing to indicate whether or how Defendants knew or could have known about their contracts with WPE or the specific terms of those contracts. Mot. at 5-6. Although Plaintiffs insist they "repeatedly and unambiguously allege Defendants' knowledge" (Opp. at 4), they point only to their generic allegation that Defendants knew WPE had customers—from that, they contend, the Court can infer knowledge of Plaintiffs and their specific contracts. *Id.* Obviously, WPE has customers, but that's not enough to plausibly allege the element of knowledge here.  Mot at 5-7.

Plaintiffs try to distinguish Defendants' cited cases on the ground that they involve plaintiffs who failed to allege "any facts showing knowledge" whatsoever. Opp. at 10. But numerous courts have held that to state a claim for intentional interference with contract, the plaintiff must plead a defendant's knowledge of the specific contract or contractual relationship with which it is alleged to have interfered. *See Trindade v. Reach Media Group, LLC*, 2013 WL 3977034, at *15-16 (N.D. Cal. July 31, 2013) (dismissing claim because the plaintiff "failed to allege" that the defendant "had knowledge of any specific contracts or details about the contracts"); *Infectolab Americas LLC v. ArminLabs GmbH*, 2021 WL 292182, at *4-6 (N.D. Cal. Jan. 28, 2021) (knowledge of a contract cannot be inferred from general knowledge of a company's business dealings). This requirement reflects the core principle that *intentional* interference demands purposeful conduct—if a defendant is unaware of a contract's existence or substance, that defendant cannot intend to disrupt it. As explained in *GoDaddy Operating Co. v. Ghaznavi*, liability arises only when the defendant's actions are directed at a known, specific contractual subject matter, even if the precise identity of the contracting party is unknown. 2018 WL 1091257, at *10 (N.D. Cal. Feb. 28, 2018). This ensures the tort remains grounded in intent, rather than foreseeability or mere negligence, and avoids transforming it into a vehicle for strict liability.

For instance, in *Swipe & Bite*, which Defendants cited in their Motion, the plaintiff *had* alleged that, as a general matter, the defendant knew the plaintiff had agreements with "contractors, vendors, employees, and customers"—just like Plaintiffs allege here. 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015). Yet the court found those generalized facts insufficient. The plaintiff needed to allege "facts showing … *knowledge of the agreements with the[] specific customers* [in the complaint] or of the *valid contract* with [the plaintiff's engineer]." *Id.* (emphasis added).

Plaintiffs' own authority illustrates Defendants' point here. In *Sebastian International Inc. v. Russolillo*, the court found adequate knowledge because the plaintiff had informed the defendants of *specific* information about their contracts, including their exclusive distribution scheme, and provided the defendants with a list of third parties with whom the plaintiff had contractual relations. 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001). Here, by contrast, Plaintiffs don't allege that Defendants knew anything about, or even were put "on notice" of, them or any specific promise that WPE made to them.

Plaintiffs also cite a number of their own allegations in response, but none of them move the needle. *See* Opp. at 4. For instance, Plaintiffs allege:

- Defendants' platforms have been running advertising campaigns offering to buy out WPE customers "in an attempt to convince customers to break their contracts with WPE" (FAC ¶¶ 8, 9, 38, 64);

- Defendant Mullenweg has threatened "nuclear war" if WPE refused to pay 8% of its revenue to Defendant Automattic (FAC ¶ 41);

- Defendant Mullenweg has stated that WPE was selling free stuff on WordPress.org to their customers, while promising their customers "security, updates, hosting, et cetera" (FAC ¶¶ 43, 76);

- Defendant Mullenweg turned off the services to inhibit the services and contracts between WPE and Plaintiffs (FAC ¶¶ 44, 64).

At best, these allegations (if true) demonstrate that Defendants knew WPE has customers and knew the general nature of what WPE did for those customers. But courts consistently reject allegations about general knowledge or industry reputation as sufficient to support an intentional interference claim. *See Trindade*, 2013 WL 3977034, at *15-17. And there is no allegation here—indeed, there isn't even any

1  argument—that Defendants knew of these Plaintiffs' specific contracts or their terms. As explained

2  below, *infra* 5-7, the FAC isn't clear what contracts and what terms were supposedly disrupted.

3      In sum, because Plaintiffs fail to allege that Defendants knew of the unidentified contracts at

4  issue in their FAC (or the existence or terms of any concrete contractual promise), they fail to plead

5  the essential "knowledge" element of intentional interference.

6      **Intent.** Plaintiffs' intent allegations fail for the same fundamental reason as their knowledge

7  allegations: A party cannot intend to interfere with a contract when it does not know about that

8  agreement. *See Trindade*, 2013 WL 3977034, at *16. Plaintiffs respond that interference can be

9  sufficiently alleged when it is certain or substantially certain to result, but that's an entirely different

10  point from *intent* to interfere. Opp. at 11.

11      None of Plaintiffs' cited cases refutes the argument that there must be specific knowledge of a

12  plaintiff's contracts for there to be intent to interfere with those contracts. Plaintiffs' own authorities

13  require the consequences of the act to be "known to [the actor] to be a necessary consequence of his

14  action." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 56 (1998). Without that

15  knowledge, the requisite intent is lacking.

16      Plaintiffs fail to allege—and again, they do not even argue—that Defendants knew of any

17  particular contractual promise that their purported actions toward WPE would frustrate. They argue

18  "Defendants themselves acknowledge that Plaintiffs alleged Defendants acted to harm WPE," Opp. at

19  6, but intent to harm WPE generally is not the same thing as intent to harm WPE's customers, let alone

20  these specific customers. Mot. at 13. Plaintiffs illustrate this very point in their opposition. Even as

21  they argue "Mullenweg's explicit call for 'nuclear war' against WPEngine reflects clear intent," they

22  do not specify intent to do *what* to *whom*. At most, they vaguely argue that Defendants tried to "poach[]

23  WPE's customers," Opp. at 6, but their claims aren't based on Defendants poaching them—to the

24  contrary, Plaintiffs remain WPE customers to this day. Without plausible allegations that Defendants

25  knew their supposed conduct toward WPE would necessarily interfere with Plaintiffs' contracts, they

26  cannot establish the intent element of their claim. *See Quelimane*, 19 Cal. 4th at 56.

27      **Disruption.** Perhaps the biggest problem with the FAC is its failure to plausibly allege

28  disruption of Plaintiffs' contracts with WPE. Plaintiffs emphasize that a tortious-interference claim can

be based on mere disruption or interference with contractual benefits, even if not technically a breach of the contract. Opp. at 6-7. There's no dispute about that. Yet Plaintiffs still do not plausibly plead that Defendants somehow disrupted the benefits of their WPE contracts—that's because the FAC never identifies those purported benefits in the first place.

Plaintiffs rely on *Moore v. Apple*, where the plaintiff had specifically identified "the contractual duty at issue: sending and receiving text messages." 73 F. Supp. 3d 1191, 1203 (N.D. Cal. 2014). Plaintiffs, by contrast, have still not specifically identified what contractual duty is supposedly at issue. They allege that they contracted with WPE for various "services" like "the Scale Plan" that provides "site management," "security patching and plugin risks scans," and "fully managed WP, PHP & MySQL updates." (FAC, ¶ 53.) The reader is left to guess what any of this means—let alone whether Defendants' alleged actions toward WPE had any effect whatsoever on WPE's provision of these specific contractual benefits to these specific Plaintiffs (and if so, how).

Similarly, Plaintiffs attempt to distinguish *Moog Inc. v. Skyryse, Inc.*, 2023 WL 3432213 (C.D. Cal. Apr. 14, 2023), but they overlook the principle that case affirms. Contrary to Plaintiffs' articulation, *Moog* did not "reject[] the argument that failure to identify specific contracts and customers is fatal to the claim." Opp. at 8. The quote Plaintiffs rely on is drawn from a parenthetical summarizing a *different* case—one that reiterates Defendants' position: "[T]he central inquiry is not whether the pleading specifically identifies the third parties, but whether it sufficiently indicates the contractual rights that are at issue." *ConsumerDirect, Inc. v. Pentius, LLC*, 2022 WL 16949657, at *3 (C.D. Cal. Aug. 25, 2022); *see also Moog*, 2023 WL 3432213, at *20 ("To understand whether [a plaintiff's] performance was disrupted require[s] the district court to determine what contractual rights [it] possessed.").

At the end of the day, this is a question of plausibility, and Plaintiffs fall short. Courts do not require magic words or formulas, but they do require enough factual content to make the alleged contractual rights and disruption intelligible. For example, if a plaintiff alleges that its contract required delivery of 500 widgets per day, and the defendant's actions reduced that amount to 300 by making delivery more burdensome, the disruption is straightforward and easy to grasp.

Here, however, Plaintiffs never identify what specific benefits they were entitled to under their

Gibson, Dunn &
Crutcher LLP

contracts with WPE; nor do they explain how Defendants' conduct interfered with WPE's delivery of those benefits. Instead, Plaintiffs rely on vague references to "degraded" service and broken customer expectations, without tethering those labels to concrete contractual terms. Notably, Plaintiffs cannot even clearly identify the contract at issue. Instead of confirming whether their SLAs are, in fact, the contracts on which they base their claims, Plaintiffs add to the ambiguity by describing the "contracts at issue" as "the plan, SLAs, fees, and services involved." Opp. at 8. In other words, Plaintiffs have made it even *less* clear what contracts and duties are at issue or how they were disrupted. The FAC and Plaintiffs' briefing leave the reader guessing as to what Defendants supposedly disrupted and how that disruption mattered, if it did at all.

Plaintiffs cannot overcome this defect by suggesting that discovery will illuminate the meaning of terms like "daily backups" or "plugin scans." *See* Opp. at 8. That is not how Rule 8 works. This is their complaint and these are their contracts, after all. A plaintiff cannot get by on reciting technical terms divorced from any specific contract, followed by a conclusory statement that some contract was disrupted. Plaintiffs surely would know what was in their own contracts with WPE, what those contracts specifically required WPE to provide, what Plaintiffs got from WPE instead, and how Defendants' conduct caused them to receive something less than what they bargained for. Without those basic factual allegations, the FAC offers only jargon and speculation—not the "factual content" needed to "nudge [their] claim[s] … across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).

## C.    Plaintiffs do not meaningfully defend their prospective-economic-relations claim

The prospective-economic-relations claim (Claim 2) is even weaker than the contractual-interference claim (Claim 1). Plaintiffs abandon their own allegations in the FAC in favor of describing economic relationships that are not asserted in the pleading to respond to arguments Defendants don't make. To state a claim for intentional interference with prospective economic relations, Plaintiffs must assert, among other elements, "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit," "actual disruption of [that] relationship," and "economic harm." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).

Gibson, Dunn &
Crutcher LLP

The FAC alleges that "Defendants have intentionally interfered with prospective economic relationships between current and former WPE customers (class members) *and WPE*." FAC ¶ 82 (emphasis added). But Plaintiffs do not defend that prospective economic relationship in their briefing. Instead, they pivot to argue that Defendants somehow hindered their ability to fulfill obligations to "*their own clients*," "threaten[ing] the economic relationships Plaintiffs had with third parties." Opp. at 9 (emphasis added). They continue that if the preliminary injunction hadn't been issued in the *WPE* case, they "would have severed ties with WPE," and if they had done that, it would have disrupted their business. *Id*. While far from clear, Plaintiffs' theory is apparently that their business relationships with their own customers could have somehow been impacted if events had transpired differently. But again, Plaintiffs' relationships with their own customers are not the basis of their prospective-economic relationship claims, *see* FAC ¶¶ 81-90. Plaintiffs cannot rewrite their claims through briefing. *See SriCom, Inc. v. EbisLogic, Inc.*, 2012 WL 4051222, at *6 (N.D. Cal. Sept. 13, 2012). Nor would such a change in relationships save this claim in any event; the unidentified customer relationships are far too vague and speculative for the reasons discussed in Defendants' Motion. Mot. at 9-10.

As for the theory pleaded in the FAC—that Plaintiffs "*would have*" severed ties with WPE if things had happened differently—that's not a viable claim either. Plaintiffs do not dispute that prospective-interference claims based on an existing, ongoing contract necessarily fail, even if the plaintiff is considering not renewing that contract. *See* Mot. at 10 (citing *Finato v. Keith Fink & Assocs.*, 2017 WL 7202104, at *7 (C.D. Cal. Jan. 19, 2017)). Nor do Plaintiffs address the requirement to establish *actual*—not speculative—disruption and economic harm. *See Upper Deck Co. v. Panini Am., Inc.,* 469 F. Supp. 3d 963, 981-83 (S.D. Cal. 2020).

## D.    Plaintiffs lack standing under the UCL because they have not sufficiently pled that they "lost money or property"

Speculative, non-monetary harms and voluntary expenditures do not constitute "lost money or property" sufficient to support a UCL claim. Mot. at 11. Plaintiffs do not dispute this. Nor do they contest that UCL claims require plausible allegations of economic injury "caused by" the alleged misconduct. Instead, Plaintiffs try to save their UCL claim by hinging it on "tortious interference claims" based on a "benefit of the bargain" theory. Opp. at 10. However, for the reasons discussed in

Defendants' Motion and above, Plaintiffs have not properly pleaded either tortious interference claim.

Plaintiffs also fail to adequately allege they received the "benefit of the bargain," for the same reason they have not adequately alleged any disruption of any contract. Plaintiffs do not identify the contract(s) at issue, what they were entitled to receive, what they received instead, how that harmed them, and why any of that was Defendants' fault. *See supra* at 5-7. That Defendants called out the alleged SLAs in their Motion doesn't change this. *See* Opp. at 10. Plaintiffs are not even clear in their Opposition or the FAC whether the SLAs are the contracts at issue. Even if they were, the FAC does not identify what Plaintiffs were entitled to get or what they received instead. *See* Mot. at 5-6, 8. Plaintiffs therefore have not adequately alleged a "benefit of the bargain" theory.

Plaintiffs' efforts to recharacterize their allegations of voluntary expenditures likewise fail. They insist Plaintiff Keller's decision to purchase an alternative web host was a necessary consequence of Defendants' actions, but they ignore their own allegation that he spent this money based on the mere *possibility* that he might need to move his clients from the WPE platform, which never happened. *See* Mot. at 11 (quoting FAC ¶ 48). Similarly, all the factual allegations related to Plaintiff Schanzer reflect that she "explor[ed]" and "investigat[ed]" alternate web hosting services due to Defendants' alleged actions. FAC ¶¶ 57, 60. But Schanzer fails to identify anything Defendants supposedly did to actually "force[]" her to offer "a 50% discount" for unidentified services to an unidentified customer.

Plaintiffs' rhetoric aside, there are no facts plausibly suggesting that either Plaintiff suffered an injury in fact and lost money or property "*as a result of*" Defendants' allegedly unlawful conduct toward WPE. *See Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1019 (N.D. Cal. 2019).

**E.     Plaintiffs cannot obtain restitution under the UCL**

Plaintiffs do not dispute that to obtain restitution under the UCL, they must show that Defendants are in possession of either money or property in which Plaintiffs have an ownership interest. *Banga v. Experian Info. Solutions*, 2010 WL 11531066, at *3 (N.D. Cal. Mar. 8, 2010). That is, restitution is available only for "money or property that defendants took directly from plaintiff." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). The FAC does not allege that Defendants took *any* money or property from them. Rather, Plaintiffs allege that they paid *WPE*—who is not a party to this lawsuit—in exchange for contractual services. FAC ¶¶ 33, 36.

Gibson, Dunn &
Crutcher LLP

Plaintiffs tacitly concede their allegations are deficient by advancing a new theory not alleged in their FAC. They now claim they can seek restitution because they "allege that Class Members *paid money to Defendants* for hosting services they sought only because Defendants interfered with their prior WPE contracts." Opp. at 12 (citing FAC ¶¶ 8, 38, 64) (emphasis added). But the cited paragraphs do not allege that *anyone* paid money to Defendants. At best, the cited paragraphs describe Automattic's alleged advertising campaign to attract WPE customers. *See* FAC ¶ 8 ("Both WordPress.com and Pressable . . . have been running major advertising campaigns offering to buy out WPE customers"); *id.* ¶ 38 (Defendants "began an advertising campaign aimed at stoking customer backlash"); *id.* ¶ 64 (alleging Defendants "anticipate many more people will be compelled to leave WPEngine"). There is no allegation that such advertising was effective, much less that any putative Class Member paid money to Defendants. And critically, even in Plaintiffs' reimagined allegations, they still do not contend that *they* paid any money to Defendants.

*Korea Supply* is also of no help to Plaintiffs. The court there observed that the "object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." 29 Cal. 4th at 1149. The court then found the plaintiff was not entitled to restitution because "[plaintiff] KSC ha[d] not given any money to [defendant] Lockheed Martin." *Id.* Similarly, here, there are no allegations that Plaintiffs have ever given Defendants a penny. For that fundamental reason, there's nothing for Defendants to return to Plaintiffs in the form of money or property. *See e.g., Palmer v. Stassinos*, 2004 WL 2937216, at *1088 (N.D. Cal. Dec. 14, 2004); *Banga*, 2010 WL 11531066, at *2; *Williamson v. Genentech, Inc.*, 2020 WL 1281532, at *6 (N.D. Cal. Mar. 18, 2020).

**F.    The UCL claim also fails because Plaintiffs have adequate remedies at law**

Plaintiffs mischaracterize courts' application of *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) and *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022).

Plaintiffs fail to address a central question: How would restitution go beyond, or be distinct from, the general and punitive damages they seek? Instead of answering that question head on, Plaintiffs respond that they "expressly plead their UCL claim in the alternative." Mot. at 13. But courts in the Northern District have often rejected this response. For example, in *In re Accellion, Inc. Data Breach Litigation*, this Court dismissed the plaintiff's claim for unjust enrichment because "simply

Gibson, Dunn &
Crutcher LLP

1    asserting their equitable claim in the alternative [to legal remedies] does not satisfy Plaintiffs' burden

2    to allege that they lack an adequate remedy at law." 713 F. Supp. 3d 623, 648 (N.D. Cal. 2024). The

3    Court described the plaintiff's response as "miss[ing] the mark" because the question "is not whether

4    or when Plaintiffs are required to choose between two available inconsistent remedies," but whether

5    equitable remedies are available to plaintiff "*specifically* because of inadequate legal remedies." *Id.*

6    (emphasis added).

7         Moreover, Plaintiffs devote half a page to arguing that *Sonner* is inapplicable at the pleading

8    stage. But this runs contrary to courts' frequent dismissal of UCL claims on this ground in the Northern

9    District at the pleading stage—a point Plaintiffs ignore. *See e.g., Anderson v. Apple Inc.*, 500 F. Supp.

10   3d 993, 1009-10 (N.D. Cal. 2020) (dismissing request for restitution at the pleading stage because

11   plaintiff did not allege how their legal remedies "would be inadequate to what restitution could

12   provide"); *In re Accellion, Inc.*, 713 F. Supp. 3d at 648 (dismissing equitable claim at the pleading

13   stage because pleading an equitable claim in the alternative "does not satisfy Plaintiffs' burden to allege

14   that they lack an adequate remedy at law"); *In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th

15   Cir. Sept. 13, 2023) (affirming dismissal at the pleading stage under *Sonner* where plaintiffs "'fail[ed]

16   to explain' how the money they seek through restitution is any different than the money they seek as

17   damages").

18        Thus, absent plausible allegations demonstrating that Plaintiffs "lack[] an adequate remedy at

19   law," they are not entitled to restitution. *Sonner*, 971 F.3d at 844.

20                          **III.    CONCLUSION**

21        For the reasons above and in Defendants' Motion, the Court should dismiss the FAC in its

22   entirety. Plaintiffs have already had one chance to replead in response to the prior motion to dismiss,

23   which raised these same defects. This time around, they fare no better, and they do not explain how

24   another amendment could cure any of the deficiencies in their FAC. Thus, dismissal should be with

25   prejudice.

26

27

28

Gibson, Dunn &
Crutcher LLP

1    DATED: July 25, 2025                          Respectfully submitted,

2                                                  GIBSON, DUNN & CRUTCHER LLP

3
                                                   By: */s/ Kahn Scolnick*
4                                                       Kahn A. Scolnick

5                                                  *Attorneys for Defendants Automattic Inc. and*
6                                                  *Matthew Charles Mullenweg*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28