JOSEPH R. ROSE, SBN 27902
  jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

ANDREW M. KASABIAN, SBN 313210
  akasabian@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800

JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:   650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER (admitted pro hac vice)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:   212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendant*
*Automattic Inc. and Matthew Charles Mullenweg*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RYAN KELLER and SHARON SCHANZER, individually and on behalf of their businesses, KELLER HOLDINGS LLC (d/b/a SecureSight) and RLDGROUP, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>AUTOMATIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>        Defendants. | CASE NO. 3:25-CV-01892-AMO<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Hearing:**<br>Date:     June 4, 2026<br>Time:    2:00 p.m.<br>Dept:    Courtroom 10<br>Judge:   Araceli Martinez-Olguin |

Gibson, Dunn &
Crutcher LLP

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 4, 2026, at 2:00 p.m., or as soon after that as it may be heard, in Courtroom 10 of this Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Automattic Inc. and Matthew Charles Mullenweg will and do move this Court for an order under Federal Rule of Civil Procedure 12(b)(1) and (b)(6) dismissing all claims in Plaintiffs' Second Amended Class Action Complaint with prejudice. Defendants base this Motion on the following grounds:

First, Plaintiffs lack Article III standing. They allege they incurred a handful of "harms" because of Defendants' conduct, but they have failed to identify any concrete and particularized injuries-in-fact. Instead, all of Plaintiff's alleged harms are self-inflicted business decisions, speculative fears of harm that may or may not happen in the future, and things that resulted from Plaintiffs' own doing.

Second, Plaintiffs' claims for intentional interference with contractual relations (Claim 1) and intentional interference with prospective economic relations (Claim 2) fail because they do not allege facts showing that Defendants knew about any of their agreements or prospective economic relationships at issue, or that Defendants acted with intent to interfere with either.

Third, Plaintiffs' claim for intentional interference with contractual relations fails for the additional reason that Plaintiffs fail to adequately allege the contract at issue or how it was supposedly disrupted.

Fourth, Plaintiffs' claim for intentional interference with prospective economic relations (Claim 2) also fails because Plaintiffs' existing contractual relationship with WP Engine cannot support a separate prospective-interference claim. And Plaintiffs' only allegations related to interference with their current and prospective customers relate to their own conduct and business choices, not Defendants' alleged conduct or interference.

Finally, Plaintiffs' claim for violation of California's Unfair Competition Law ("UCL") (Claim 3) fails for several independent reasons. Plaintiffs lack standing under the UCL because they do not allege that they "lost money or property as a result of" anything Defendants did. Their references to services disruptions, time spent on mitigation, and speculative expenses do not qualify as economic injury under the UCL. Plaintiffs are also not entitled to restitution under the UCL because they do not

allege that Defendants obtained any money or property from them. Moreover, Plaintiffs' UCL claim is barred because they have not alleged the unavailability of an adequate legal remedy.

This Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities in support; the record in this Action; and any other documentary and oral evidence and argument that may be presented to the Court on this Motion.

DATED: February 17, 2026                        GIBSON, DUNN & CRUTCHER LLP

                                                By: */s/ Kahn A. Scolnick*
                                                    Kahn A. Scolnick

                                                *Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF ISSUES TO BE DECIDED ................................................... 2

III.    BACKGROUND .................................................................................................. 2

        A.      Allegations in the Second Amended Complaint ..................................... 2

        B.      Procedural History ................................................................................... 3

IV.     LEGAL STANDARD ......................................................................................... 3

V.      ARGUMENT ...................................................................................................... 4

        A.      Plaintiffs lack Article III standing to bring suit ..................................... 4

        B.      Plaintiffs fail to sufficiently plead a claim for intentional interference of
                contract. .................................................................................................. 5

        C.      Plaintiffs do not sufficiently plead their claim for prospective economic
                relations. .................................................................................................. 9

        D.      The Court should dismiss Plaintiffs' derivative UCL claim. .................. 11

                1.      Plaintiffs lack statutory standing under the UCL. ...................... 11

                2.      Restitution is not available to Plaintiffs under the UCL. ............ 13

                3.      The UCL claim also fails because Plaintiffs alleged adequate remedies
                        at law. ........................................................................................ 14

VI.     CONCLUSION ................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ........................................................................................15

5
*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ........................................................................................................4

6

7
*Anderson v. Apple Inc.*,
500 F. Supp. 3d 993 (N.D. Cal. 2020) ........................................................................................15

8
*In re Apple Processor Litig.*,
2023 WL 5950622 (9th Cir. Sept. 13, 2023) ..............................................................................15

9

10
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................................4

11
*Banga v. Experian Info. Sols.*,
2010 WL 11531066 (N.D. Cal. Mar. 8, 2010) ............................................................................14

12

13
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................................4

14
*Bullwinkle v. U.S. Bank, N.A.*,
2013 WL 5718451 (N.D. Cal. Oct. 21, 2013) .............................................................................13

15

16
*Cal. Expanded Metal Prods. Co. v. ClarkWestern Dietrich Bldg. Sys. LLC*,
2014 WL 5475214 (C.D. Cal. Oct. 29, 2014) .............................................................................11

17
*Cepelak v. HP Inc.*,
2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) ............................................................................15

18

19
*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ..........................................................................................................................5

20
*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ........................................................................................................................5

21

22
*ConsumerDirect, Inc. v. Pentius, LLC*,
2022 WL 16949657 (C.D. Cal. Aug. 25, 2022) ............................................................................8

23
*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
479 F.3d 1099 (9th Cir. 2007) ..................................................................................................6, 10

24

25
*Dalidio Family Tr. v. San Luis Obispo Downtown Ass'n*,
2008 WL 11335134 (C.D. Cal. March 25, 2008) ........................................................................11

26
*Dare v. Aegis Wholesale Corp.*,
2019 WL 1455799 (S.D. Cal. Apr. 2, 2019) ...............................................................................13

27

28
*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ..........................................................................................................4

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Fed'n of African Am. Contractors v. City of Oakland*,
    96 F.3d 1204 (9th Cir. 1996).................................................................................4

*In re Ford Tailgate Litig.*,
    2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ....................................................15

*Greenstein v. Noblr Reciprocal Exch.*,
    585 F. Supp. 3d 1220 (N.D. Cal. 2022) ...............................................................5

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022)..............................................................................14

*Huynh v. Quora, Inc.*,
    2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ..................................................12

*Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    2013 WL 489899 (C.D. Cal. Feb. 7, 2013)........................................................8, 9

*Infectolab Ams. LLC v. ArminLabs GmbH*,
    2021 WL 292182 (N.D. Cal. Jan. 28, 2021) .......................................................10

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .......................................................................................14

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) .........................................................................................12

*Loiseau v. VISA USA Inc.*,
    2010 WL 4542896 (S.D. Cal. Feb. 10, 2010) .....................................................13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................4

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011)................................................................................4

*Moog Inc. v. Skyryse, Inc.*,
    2023 WL 3432213 (C.D. Cal. Apr. 14, 2023) ....................................7, 8, 9, 10

*Mort v. United States*,
    86 F.3d 890 (9th Cir. 1996)..................................................................................15

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001)..................................................................................4

*Parker v. U.S. Bancorp*,
    2016 WL 7495824 (C.D. Cal. Sept. 13, 2016)....................................................13

*Patterson v. Med. Rev. Inst. of Am., LLC*,
    2022 WL 3702102 (N.D. Cal. Aug. 26, 2022)......................................................5

Gibson, Dunn &
Crutcher LLP

iii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Reichman v. Poshmark, Inc.*,
   267 F. Supp. 3d 1278 (S.D. Cal. 2017) ..................................................................13

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
   2014 WL 524076 (N.D. Cal. Feb. 6, 2014) .............................................................10

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ...................................................................15

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) .....................................................................................................5

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021) ....................................................................11

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .....................................................................................4

*Song v. Drenberg*,
   2019 WL 1998944 (N.D. Cal. May 6, 2019) .....................................................10, 11

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...............................................................................14, 15

*Spacone v. Sanford, L.P.*,
   2018 WL 4139057 (C.D. Cal. Aug. 9, 2018) ..........................................................12

*Swipe & Bite, Inc. v. Chow*,
   147 F. Supp. 3d 924 (N.D. Cal. 2015) ......................................................................7

*Teresa Adams v. Cole Haan, LLC*,
   2020 WL 5648605 (C.D. Cal. Sept. 30, 2020) ........................................................15

*TransUnion v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................4, 5

*Trindade v. Reach Media Group, LLC*,
   2013 WL 3977034 (N.D. Cal. July 31, 2013) .........................................................7, 8

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ....................................................................8

**Statutes**

Cal. Bus. & Prof. Code § 17204 ...................................................................................12

**Rules**

Federal Rule of Civil Procedure 12(b) .......................................................................3, 4

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:25-CV-01892-AMO

## I.    INTRODUCTION

Plaintiffs' third bite at the apple still comes up empty. The Second Amended Complaint ("SAC") repackages the same theories this Court already rejected and adds conclusory or immaterial allegations that do not cure the prior defects.

Most significantly, Plaintiffs' latest allegations confirm that they remain WP Engine customers to this day, and that their websites—and those of their customers—continued to function during the disputed period. At most, Plaintiffs describe temporary inconveniences, speculative worries about what might happen, and self-inflicted business expenditures undertaken as contingencies that they never actually used. Those allegations do not rise to the level of an Article III injury-in-fact that is fairly traceable to Defendant's conduct.

To state a claim for intentional interference with contract, the Court instructed Plaintiffs that they must allege facts that plausibly show Defendants were aware of their contracts with WP Engine. Dkt. 51 at 4. Plaintiffs have declined to follow that instruction. Instead, they allege that Defendants maintained a website that listed domains hosted by WP Engine, engaged in outreach to some WP Engine customers, and they included pages of technical assertions about WordPress.org. But those allegations do not plausibly establish that Defendants knew about *these Plaintiffs*, let alone knew that *these Plaintiffs* had contracts with WP Engine or the obligations of those contracts. And while the Court did not need to reach Defendants' other arguments, Plaintiffs did nothing to remedy those deficiencies either—there are no plausible allegations of intent, disruption or breach of their supposed WP Engine contracts, or damages.

Plaintiffs' claim for intentional interference with prospective economic relations has been narrowed but likewise fails to address the Court's prior order. The Court directed Plaintiffs to allege additional factual content that a prospective economic advantage would have been realized but for Defendants' conduct. Dkt. 51 at 4. Beyond a cursory, speculative allegation about a customer that was thinking about giving Keller more business but for *Keller*'s conduct, they provide no new substance. And, as with the intentional interference with contract claim, there remain several deficiencies that the Court did not need to address last time, including no allegations about Defendants' knowledge of this purported newly identified customer of Keller.

Plaintiffs' derivative UCL claim still fails for multiple, independent reasons. Plaintiffs lack statutory standing because they do not plausibly allege "lost money or property" as a result of Defendants' conduct. All alleged "injuries" that they point to are voluntary business decisions, not UCL injuries. Restitution also is unavailable as a matter of law because Plaintiffs do not allege they paid anything to Defendants. And even if the UCL claim were otherwise viable, equitable relief is barred because Plaintiffs' own theory seeks ordinary money damages for alleged past economic harm, which is an adequate remedy at law.

In short, after multiple opportunities to amend, Plaintiffs still have not alleged a concrete injury or any plausible claim tethered to Defendants' knowledge of, intent toward, and disruption of Plaintiffs' specific contracts or probable prospective relationships. The SAC should be dismissed with prejudice.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs have Article III standing to pursue all three Counts in their SAC.

2. Whether Plaintiffs sufficiently pleaded their claims for intentional interference with contractual relations (Count 1) or intentional interference with prospective economic relations (Count 2).

3. Whether Plaintiffs have statutory standing to pursue their UCL claim (Count 3).

4. Whether Plaintiffs may obtain restitution from Defendants.

5. Whether Plaintiffs sufficiently pleaded that they do not have adequate remedies at law.

## III.    BACKGROUND

### A.    Allegations in the Second Amended Complaint

As set forth in the SAC, Defendant Automattic Inc. and its CEO, Defendant Matthew Mullenweg, are central figures in the WordPress ecosystem, which provides free, open-source software powering millions of websites and a centralized repository at WordPress.org for core software, themes, and plugins. SAC ¶¶ 2, 29, 31. WordPress.org access is free. *Id.* ¶¶ 2, 56. Even though it is free, hosts like WP Engine build commercial offerings on top of this open-source infrastructure. *Id.* ¶¶ 2, 56. Plaintiffs allege that they use WP Engine to build and maintain their own client websites. *Id.* ¶¶ 20, 21.

According to the SAC, a highly public dispute between Defendants and WP Engine escalated in late September 2024. Plaintiffs allege that, over the course of a week, Defendants blocked WP Engine's access to WordPress.org, briefly restored access so WP Engine could mirror certain data, and

then reimposed the block. SAC ¶¶ 8, 51. On December 10, 2024, this Court issued an injunction in another action that restored WP Engine's access. *Id.* ¶ 12. Plaintiffs also allege that, during the dispute, Defendants published a list of more than 800,000 WP Engine-hosted domains and Automattic sales agents offered contract buyouts to some WP Engine customers to induce migration to Automattic-owned platforms. *Id.* ¶¶ 64–66.

Plaintiffs include conclusory allegations that this dispute impacted their businesses. Most of the websites they maintain were allegedly on the public list of WP Engine-hosted domains, and they suggest that they temporarily experienced degraded services and had difficulty accessing plugin updates, security patches, and backend website functions during the blocking period. *Id.* ¶¶ 7, 13, 20–21, 33–36, 68–93. But Plaintiffs acknowledge that they and WP Engine found workarounds to avoid disruptions; they do not allege there were any security problems that actually arose during the dispute; and they made voluntary business decisions in reaction to the WP Engine-Automattic dispute based on a "likelihood" and "potential" that they might have to move their clients away from WP Engine, which they didn't end up doing. *See id.* ¶¶ 68, 77, 86, 93. Plaintiffs do not allege any Defendant representative contacted either of them. Both Plaintiffs still use WP Engine. *Id.* ¶¶ 78, 91.

**B.    Procedural History**

Plaintiff Keller initiated this putative class action on February 21, 2025, asserting three claims against Defendants: (1) intentional interference with contractual relations; (2) intentional interference with prospective economic relations; and (3) violation of the UCL. After Defendants moved to dismiss, Plaintiffs amended their complaint and added a new named plaintiff (Schanzer). Dkts. 20, 30.

This Court granted Defendants' motion to dismiss the First Amended Complaint. It held that Plaintiffs didn't meet the knowledge requirement for intentional interference with contractual relations. Dkt. 51 at 4. As for prospective economic relations, the Court ruled that Plaintiffs had not established an economic relationship between themselves and some third party, with the probability of future economic benefit. *Id.* at 7. Finally, the UCL claim was derivative of the dismissed interference claims. *Id.* at 8. The Court did not address any of Defendants' remaining arguments.

<h3 style="text-align:center">IV.    LEGAL STANDARD</h3>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency

1    of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted when a

2    plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

3    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal under Rule 12(b)(6) is proper when the

4    complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a

5    cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). While allegations

6    of material fact are assumed true and viewed in the light most favorable to the plaintiff, "conclusory

7    allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v.*

8    *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9        Courts evaluates motions to dismiss for lack of Article III standing under Rule 12(b)(1). *Maya*

10   *v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Where, as here, the defendant makes a facial

11   attack on jurisdiction, the factual allegations are taken as true. *Fed'n of African Am. Contractors v. City*

12   *of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

## V.    ARGUMENT

14       The Court should grant Defendants' motion for three independent reasons. First, Plaintiffs lack

15   Article III standing because they allege no concrete, non-speculative injury fairly traceable to

16   Defendants; their alleged harms are self-inflicted business choices and generalized concerns about

17   potential harms that did not materialize. Second, the SAC still fails to state intentional-interference

18   claims: it does not plausibly allege Defendants' knowledge of Plaintiffs' contracts or prospective

19   relationships, intent to disrupt them, or a breach or disruption caused by Defendants. Third, the UCL

20   claim fails because Plaintiffs lack statutory standing, restitution is unavailable, and Plaintiffs have

21   adequate remedies at law. The dismissal should be with prejudice at this point. *See Destfino v. Reiswig*,

22   630 F.3d 952, 959 (9th Cir. 2011) ("It is well-established that a court may dismiss an entire complaint

23   with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities.'").

### A.    Plaintiffs lack Article III standing to bring suit

25       To invoke federal-court jurisdiction, there must be (1) a concrete and particularized injury-in-

26   fact that is actual or imminent (2) that is fairly traceable to the challenged conduct (3) that is redressable

27   by a favorable ruling. *TransUnion v. Ramirez*, 594 U.S. 413, 423–26 (2021); *Lujan v. Defs. of Wildlife*,

28   504 U.S. 555, 560–61 (1992). The SAC does not identify any harm that satisfies Article III.

Gibson, Dunn &
Crutcher LLP

**Voluntary business decisions.** Schanzer alleges that she chose to offer a client a discount, Keller bought alternative hosting in fear he would need it, and both Plaintiffs invested time preparing to move to a new host. SAC ¶¶ 68, 71, 84, 86. These are self-inflicted mitigation costs that do not create standing. In *Clapper v. Amnesty International USA*, 568 U.S. 398, 417 (2013), the Supreme Court reasoned that a plaintiff did not "face a threat of certainly impending interception" in violation of FISA, and therefore any costs incurred to avoid such surveillance was insufficient to create standing. Plaintiffs are no different than those in *Clapper*—they cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm" because there was no "certainly impending" injury. *Id.* at 416; *see Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229–30 (N.D. Cal. 2022) ("mitigation expenses do not qualify as injury"); *Patterson v. Med. Rev. Inst. of Am., LLC*, 2022 WL 3702102, at *3 (N.D. Cal. Aug. 26, 2022) (same)). Plaintiffs allege no concrete harm (no breach, no outage loss, no client loss) and they remain WP Engine customers today.

**Fear of harm if the injunction is lifted.** Plaintiffs also cannot rely on speculative fear of harms that *could* happen if the injunction in the separate WP Engine-Automattic litigation is lifted. These are classic "allegations of possible future injur[ies]" that are insufficient under Article III. *TransUnion*, 594 U.S. at 435–36 (risk of future harm, without concrete harm, does not support standing for damages); *see Clapper*, 568 U.S. at 416–17. And given the existing injunction in the related WP Engine case, Plaintiffs lack standing for injunctive relief because they do not plausibly allege a "real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

**Keller's discouragement of a client.** Keller alleges that one client *considered* adding a new website (which presumably would have benefitted Keller), but then "declined to do so" after Keller informed that client about "the risk of problems caused by the WP Engine dispute and service disruption." SAC ¶ 81. The fact that a client considered adding, but declined to add, a new website is speculative. And this was a self-inflicted injury that defeats traceability. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42–43 (1976) ("It is purely speculative whether the denials of services . . . can be traced to petitioners[] . . . or instead result from decisions made by [third parties].").

**B.    Plaintiffs fail to sufficiently plead a claim for intentional interference of contract.**

A claim for intentional interference with contract requires: "(1) a valid contract between

plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007). The Court already dismissed this claim because Plaintiffs failed to allege Defendants were aware of Plaintiffs' contracts with WP Engine. Dkt. 51 at 4. The SAC's added technical allegations and allegations about marketing outreach to WP Engine customers does not fix this defect. Nor does the SAC resolve the other deficiencies previously identified by Defendants, and set forth again below, that the Court did not need to address last time.

**No alleged knowledge of Plaintiffs' contracts.** The Court reasoned that "Plaintiffs must allege facts that plausibly show Defendants were aware of Plaintiffs' contracts with WP Engine, not just that Defendants were aware WP Engine had contracts with its customers, which happened to include Plaintiffs." Dkt. 51 at 4. Plaintiffs' new theory is that Defendants maintained "wordpressenginetracker.com"—which allegedly listed WP Engine-run websites, including Plaintiffs'—and therefore Defendants knew Plaintiffs had contracts with WP Engine. SAC ¶ 101. This list allegedly contained "at least 842,515 websites … that used WP Engine for website hosting services," and Plaintiffs say "all but one" of the Plaintiff-managed websites appeared on that list. SAC ¶ 13. Defendants' published website allegedly described these domains as "sites ready for a new home," tracked alleged daily departures from WP Engine, and purported to identify "every domain hosted by WPEngine." *Id.* ¶ 107. These allegations fall short.

The alleged tracker is a list of *domain names*—not customer accounts, contracting parties, or contract documents. *See* Dkt. 57-4 (alleged tracker). The list includes domains like "0a6fed2514299a5fba.observe.com" and "silly-goose-comedy.com." Nothing indicates who owns those websites. Put another way, a domain's appearance on a public list does not identify who (if anyone) holds the WP Engine account for that site, whether the site owner contracted with WP Engine directly (as opposed to through an agency or third-party administrator), or what terms, duration, or obligations govern that relationship. This allegation therefore does not plausibly establish that Defendants knew (1) Plaintiffs owned a handful of the 800,000 listed websites, (2) Plaintiffs had contracts with WP Engine, or (3) the terms of those contracts. *See* Dkt. 51 at 4. In addition, the SAC

concedes that one of their sites did not appear on the list, SAC ¶ 13, while asserting that "thousands of domains that no longer use WordPress" did, *id.* ¶ 111—making the dataset both underinclusive and overinclusive and unreliable for the proposition that presence on the domain equates to a contractual relationship between WP Engine and the domain owner. As *Trindade v. Reach Media Group, LLC* makes clear, dismissal is appropriate where there are no allegations about "knowledge of any specific contract[,] details about the contracts," or "specific relationships." 2013 WL 3977034, at *15–17 (N.D. Cal. July 31, 2013); *see Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (dismissing claim where there were no allegations that defendant "had knowledge of the agreements with these specific customers"); *Moog Inc. v. Skyryse, Inc.*, 2023 WL 3432213, at *21 (C.D. Cal. Apr. 14, 2023) (alleging that a defendant was "aware of these contracts" was insufficient).

Plaintiffs try to backfill the lack of knowledge by asserting that WordPress.org's API endpoint transmissions "necessarily provided Defendants with visibility" into WP Engine-hosted sites and installations, and that Defendants "had to identify WPE traffic to block it." SAC ¶ 102. These technical inferences fail for the same reason as the other new allegations: they do nothing to plausibly establish that Defendants knew who Plaintiffs were or what contractual commitments WP Engine owed them.

Finally, Plaintiffs allege that Defendants attempted to "poach" some WP Engine customers (SAC ¶ 110), but that does not adequately plead Defendants' knowledge of *Plaintiffs'* identities or contracts. Plaintiffs do not allege that Defendants attempted to "poach" *them*; allegations of general marketing don't equate to knowledge of Plaintiffs' identities or the existence or terms of their contracts with WP Engine. Just as presence of a domain name on a list of nearly a million websites doesn't establish knowledge of a contract with these Plaintiffs, marketing outreaches to some WP Engine customers does not mean Defendants knew about Plaintiffs (let alone their contracts with WP Engine).

The Court has already made clear that it's not enough to plead Defendants' general awareness that WP Engine has customers. The SAC still includes only conclusory facts showing that Defendants knew that WP Engine had customers, and that Plaintiffs happened to be among those customers. Missing is any allegation that Defendants knew of *Plaintiffs'* contracts or what those contracts required.

**No alleged intent.** Because Plaintiffs do not adequately allege knowledge of their specific contracts, they also fail to allege the requisite intent to disrupt those contracts. *See Trindade*, 2013 WL

3977034, at *15–17. The only allegations that begin to address intent are that Defendants: (a) blocked WP Engine's access to WordPress.org resources during a high-profile dispute; (b) created the "wordpressenginetracker.com" site; (c) solicited some WP Engine customers; and (d) made public statements that "people" "got mad" after the shut-off of WP Engine. SAC ¶¶ 6, 55, 63, 66, 112–14.

These allegations confirm, at most, an intent to compete for business, not to interfere with third-party contracts. As Defendants argued previously, Plaintiffs' allegations show only that Defendants intended to harm WP Engine generally, not that they intended to disrupt any specific contract (let alone WP Engine's contracts with Plaintiffs). General marketing and solicitation of WP Engine's customers does not plausibly allege acts designed to induce breach or disruption of Plaintiffs' specific contracts. After-the-fact public statements that some WP Engine customers "got mad" likewise does not show a specific purpose to disrupt Plaintiffs' contracts or any knowledge of their terms or obligations.

**No disruption or breach.** Plaintiffs still fail to allege how Defendants prevented performance of any "Service Level Agreement" with WP Engine or Plaintiffs' vague "Scale" or "Premium 1" plans. The "central inquiry" to determine disruption is whether the allegations "sufficiently indicate[] the contractual rights that are at issue" and how WP Engine's performance was made more difficult. *Moog*, 2023 WL 3432213, at *20 (quoting *ConsumerDirect, Inc. v. Pentius, LLC*, 2022 WL 16949657, at *3 (C.D. Cal. Aug. 25, 2022)); *see also UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015). Plaintiffs have not come close.

Instead of alleging specific contract terms or attaching their contracts, Plaintiffs rely on generalizations. They refer broadly to the SLA—which allegedly assures "generally 99.95%" uptime "with certain exclusions"—and how there were "multiple days of severely degraded services" that exceeded the SLA. SAC ¶ 49. But they do not allege what their specific agreement promised, what these "exclusions" were, how uptime is calculated, or the measurement period, all of which are necessary to understand whether Plaintiffs plausibly alleged a breach or disruption of the terms of their agreements. This leaves the Court with vague allegations, not "actual interference with actual contracts, such that a result is a specific breach." *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013).

Similarly, Plaintiffs make passing references to their plans offering "daily backups," "security

1    patching," and "plugin risk scans," which they supposedly did not have access to when Defendants

2    blocked WP Engine. *Id.* ¶¶ 76, 87, 94–96. Absent from these allegations is any contractual language

3    that obligated WP Engine to deliver these functionalities to Plaintiffs in a defined manner or metric;

4    nor do Plaintiffs quantify shortfalls tied to those terms. That these "automated services could not

5    function as promised" during the blocked period is not enough, *id.* ¶ 73. Plaintiffs must (but have not)

6    connect these "automated services" to identifiable, enforceable contract provisions in their agreements.

7    And even if any of this did amount to a breach or disruption, there was no resulting damage.

8    Plaintiffs hang their hat on the 77-day window when they could not monitor, download, or install

9    security patches. SAC ¶ 95. But instead of alleging that any of this led to an *actual* security

10   vulnerability, affected their websites, or caused *any* harm, Keller again uses only speculative language:

11   He maintained "significant concerns that the [disruptions] *could* create a security vulnerability that

12   *would* damage his website, in addition to *potentially* harming those of his customers and his

13   professional reputation." *Id.* ¶ 77 (emphasis added). And both Plaintiffs allege that they had to "perform

14   all of the promised benefits" of their plans themselves, which took significant "time and expense." *Id.*

15   ¶¶ 76, 86. These conclusory allegations are a far from any allegation of actual harm to them, their

16   websites, their customers, or their professional reputations. *See Image Online Design*, 2013 WL

17   489899, at *9 (rejecting plaintiff's allegation that defendant "interfered with its business model"

18   because actual interference is required for this tort, "not merely general damage to the business").

19   At bottom, the SAC does not allege "actual interference with actual contracts" by identifying

20   the relevant terms and showing how Defendants prevented performance or made performance more

21   expensive or difficult. *See Image Online*, 2013 WL 489899, at *9. Generalized assertions of degraded

22   services, API failures, and sales outreach do not substitute for pleading what contractual rights are at

23   issue, and how Defendants' conduct disrupted performance of those identified obligations. *See Moog*,

24   2023 WL 3432213, at *20. The SAC still fails to answer these questions with the requisite specificity.

25   **C.    Plaintiffs do not sufficiently plead their claim for prospective economic relations.**

26   Intentional interference with prospective economic relations is similar to intentional

27   interference with contract; a plaintiff must allege "(1) an economic relationship between the plaintiff

28   and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's

knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited*, 479 F.3d at 1108. The defendant's conduct must be independently wrongful; that is, it was "wrongful by some [legal] measure beyond the fact of the interference itself." *Id.* (cleaned up). And a prospective-economic-relations claim requires allegations showing "it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference." *Infectolab Ams. LLC v. ArminLabs GmbH*, 2021 WL 292182, at *4 (N.D. Cal. Jan. 28, 2021); *see CRST Van Expedited*, 479 F.3d at 1108.

Plaintiffs have revised their theory in the SAC—they now allege that the prospective economic relationship at issue is between Plaintiffs, "their current clients, and with potential future clients." SAC ¶ 130. But beyond this vague allegation, Plaintiffs do not plausibly allege that it was reasonably probable that an identifiable relationship would have materialized but for Defendants' interference. *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2014 WL 524076, at *14 (N.D. Cal. Feb. 6, 2014). A "hope of future transactions" is not enough; Plaintiffs must identify a specific "economic relationship" where there is a "probability of future economic benefit." *Song v. Drenberg*, 2019 WL 1998944, at *7 (N.D. Cal. May 6, 2019) (citation omitted).

Plaintiffs identify nothing more than generalized hopes of future work. The Court asked for additional "factual content" from Schanzer that would suggest a reasonable probability that a "prospective economic advantage would have been realized but for defendant's interference." Dkt. 51 at 7. Schanzer failed to provide that content.

Keller offers a passing allegation that one of his clients was *considering* adding a new website, but then "declined to do so" after Keller informed that client about "the risk of problems caused by the WPE dispute and service disruption." SAC ¶ 81. This is too speculative. *See Moog*, 2023 WL 3432213, at *9 (alleging that future contracts with current customer "*could* be impaired or delayed" was insufficient). Keller omits the client's identity, any terms, timing, or scope of the contemplated new business beyond a "new website," and any non-conjectural facts showing a probability of consummation. *See Song*, 2019 WL 1998944, at *7 ("[E]ven in a situation where companies were actively engaging in business negotiations, that is not enough to show that it was 'reasonably probable

10

Gibson, Dunn &
Crutcher LLP

the prospective economic advantage would have been realized but for defendant's interference.'" (quoting *Cal. Expanded Metal Prods. Co. v. ClarkWestern Dietrich Bldg. Sys. LLC*, 2014 WL 5475214, at *4 (C.D. Cal. Oct. 29, 2014)).

Even more importantly, Keller admits that he lost this vague prospective opportunity because *he*—not Defendants—advised the client "about the risk of problems caused by the WPE dispute and service disruption," after which the client "elected not to" proceed. SAC ¶ 81. Simply alleging that an unspecified client was "considering" adding a website until Keller—not Defendants—dissuaded that customer does not establish a "probability of future economic benefit" but for Defendants' conduct; it shows that Keller scared away potential business. *Song*, 2019 WL 1998844, at *7; *Dalidio Family Tr. v. San Luis Obispo Downtown Ass'n*, 2008 WL 11335134, at *8 (C.D. Cal. March 25, 2008) (finding that claimed injury was "afflicted by a serious proximate caus[e] problem" because the injury was directly caused not by defendant's conduct, but unfavorable votes on ballot measures).

Even if there were any "reasonably probable" prospective economic relationship, Plaintiffs nonetheless failed to allege other elements of this claim. They do not, for example, allege that Defendants had any *knowledge* of any of Plaintiffs' prospective relationships—which isn't surprising, because Plaintiffs cannot even plausibly allege that Defendants knew about Plaintiffs themselves, let alone their current and future business dealings. *See Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021) (finding lack of knowledge where plaintiff asserted only conclusory allegations that defendant "knew or should have known of the economic relationship existing between [plaintiff] and its partners, including licensees"). Nor do they allege any "independently wrongful" act beyond the UCL claim, which fails as a matter of law. *See infra* 12–15.

## D.    The Court should dismiss Plaintiffs' derivative UCL claim.

Plaintiffs' UCL claim is predicated on the same facts as their interference claims. In the last round, the Court dismissed those interference claims, so it did not need to reach the merits of the UCL claim. Dkt. 51 at 8. But even on its own, the UCL claim fails because Plaintiffs lack statutory standing, have no viable claim for equitable restitution, and have adequate remedies at law.

### 1.    Plaintiffs lack statutory standing under the UCL.

The UCL requires a plaintiff to plead that they suffered economic injury in the form of lost

money or property "as a result of," the unfair business practice. Cal. Bus. & Prof. Code § 17204; *see Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). Plaintiffs still haven't done so. The majority of their alleged harm is non-monetary and the handful alleged monetary harms are self-inflicted costs.

The SAC does not fix the deficiencies in the prior complaints—Plaintiffs focus on speculative, non-monetary harms. Keller alleges he "*explore[d]* moving his website and all those operated by his business to another managed web host, "*prepar[ed]* for moving his and his clients' websites to a new host," "*investigat[ed]* a new host environment," "received emails related to" WordPress "downtime," and "*maintained significant concerns*" that "intermittent disruptions to the website backend *could* create a security vulnerability." SAC ¶¶ 68, 71–72, 77 (emphases added). These harms are not monetary in nature. Schanzer's allegations suffer from the same pitfalls as Keller's—she "*start[ed] exploring* other options," "*potentially prepar[ed]* to move her client's websites" to a different host, "*investigat[ed]*" other hosts, and incurred "time and resources" to fix problems associated with a third-party theme she purchased. *Id.* ¶¶ 82, 84, 86 (emphasis added). Yet both Plaintiffs remain WP Engine customers to this day. *Id.* ¶¶ 21, 78, 92. Plaintiffs' injuries are therefore nothing more than mere inconvenience and "[w]asted time," which "does not equal lost money or property." *Spacone v. Sanford, L.P.*, 2018 WL 4139057, at * 4 (C.D. Cal. Aug. 9, 2018); *see also Huynh v. Quora, Inc.*, 2019 WL 11502875, at *6 (N.D. Cal. Dec. 19, 2019) (dismissing UCL claim because plaintiffs failed to allege a cognizable loss of money or property, including rejecting the theory that "expending time and money to mitigate risks of identity theft does not constitute a loss of money or property").

The only purported economic injuries identified in the SAC are the same as those alleged in the FAC. Keller claims he paid "$1,640.00" for "alternate services due to the likelihood that he would have to move his clients from the WPEngine platform." SAC ¶ 68. Schanzer likewise alleges that she provided a "50% discount" to a client, but she does not explain how any conduct by Defendant caused this decision. *Id.* ¶ 84. But Defendants did not force, require, or even indirectly cause these decisions. These were business decisions by Plaintiffs, not a loss of money "caused by" any alleged "unfair business practice" by Defendants. *See Kwikset*, 51 Cal. 4th at 322.

Such voluntary expenses—like pre-litigation costs—do not constitute economic injury under the UCL because they are not "a legally cognizable harm caused by the defendants' alleged violation

1    of the UCL." *Bullwinkle v. U.S. Bank, N.A.*, 2013 WL 5718451, at *2 (N.D. Cal. Oct. 21, 2013); *see*

2    *also Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1287 (S.D. Cal. 2017) (same). In *Dare v.*

3    *Aegis Wholesale Corp.*, the court dismissed with prejudice a UCL claim alleging that the defendant (a

4    mortgage lender) engaged in fraud in connection with a loan the plaintiff obtained to refinance his

5    property. 2019 WL 1455799, at *1 (S.D. Cal. Apr. 2, 2019). The defendant asserted that any money

6    plaintiff paid was due to "his voluntary [l]oan obligations," and not by the defendant's alleged acts. *Id.*

7    at *3. The court agreed: the plaintiff's obligations under the loan not only "fail[ed] to demonstrate

8    economic injury," but also failed to demonstrate how such injury "was the result of" i.e., *caused by*

9    "Defendant's unfair business practice." *Id.* at *4. The plaintiff voluntarily took out the loan.

10    Similarly, in *Parker v. U.S. Bancorp*, the court dismissed a UCL claim and rejected plaintiff's

11    argument that he suffered an "injury in fact" because defendant's actions caused him to "hire an

12    attorney and pay considerable attorneys' fees to save" his property from wrongful foreclosure. 2016

13    WL 7495824, at *6 (C.D. Cal. Sept. 13, 2016). The money the plaintiff spent "to prevent 'the pending

14    loss of the [property]' does not constitute damages under the UCL." *Id.* And in *Loiseau v. VISA USA*

15    *Inc.*, the court dismissed plaintiff's UCL claim for lack of standing because it was plaintiff's own

16    decision that caused her to incur a monetary loss. 2010 WL 4542896, at *4 (S.D. Cal. Feb. 10, 2010)

17    (finding that "[p]laintiff's decision to purchase" a replacement gift card and incurring a fee "does not

18    confer standing . . . to bring a claim for violation of the UCL").

19    Put simply, the voluntary expenditures Plaintiffs allege to have incurred are not the result of

20    Defendants' alleged conduct; they are Plaintiffs' own business decisions. Keller decided to purchase a

21    backup hosting plan in case he needed it. Defendant did not make him do that. Schanzer fails to explain

22    how she could not "fulfill" her purported obligations to her client, whether there was any disruption,

23    whether the client requested the discount, or anything else that would suggest this discount was

24    anything more than an act of goodwill. Plaintiffs cannot use these voluntary expenditures and

25    speculative, non-monetary harms to manufacture UCL standing.

26        **2.    Restitution is not available to Plaintiffs under the UCL.**

27    To obtain restitution under the UCL, Plaintiffs must show that Defendants are in possession of

28    money or property in which Plaintiffs have an ownership interest. *Banga v. Experian Info. Sols.*, 2010

WL 11531066, at *3 (N.D. Cal. Mar. 8, 2010). Plaintiffs still fail to allege that Defendants took money or property directly or even indirectly from them. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). Plaintiffs allege only that they paid *WP Engine*—who is not a party to this lawsuit—in exchange for services under their contracts. SAC ¶ 44. Although the SAC devotes substantial attention to allegations that Defendants "poached" certain WP Engine customers, it does not allege that Defendants reached out to either Plaintiff, let alone that Plaintiffs ever paid Defendants any money. *See id.* ¶¶ 14, 16, 54, 64, 110, 112–13. These omissions—paired with Plaintiffs' concession that Defendants' services are "free and open source" and their plugins are "freely available," *id.* ¶ 32— are fatal to the UCL claim for restitution. There is nothing for Defendants to return to Plaintiffs.

*Korea Supply Co.* is instructive. There, the California Supreme Court noted that the "object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." 29 Cal. 4th at 1149. The court concluded the plaintiff was not entitled to restitution because "[plaintiff] ha[d] not given any money to [defendant]." *Id.* Because Plaintiffs—like those in *Korea Supply Co.*—do not allege that Defendants took money or property from them, the "status quo" remains intact, and Plaintiffs are not entitled to restitution. *Id.*

### 3.    The UCL claim also fails because Plaintiffs alleged adequate remedies at law.

Plaintiffs' UCL claim seeks "disgorgement and restitution of all earnings, profits, compensation, and benefits received." SAC ¶¶ 139–49. But the UCL claim is equitable in nature, and Plaintiffs cannot pursue equitable relief without establishing that their legal remedies—i.e., money damages—are inadequate. *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (where legal remedies are adequate, federal courts lack equitable jurisdiction to consider the merits of an equitable claim). Plaintiffs amended allegations make no such showing.

The Ninth Circuit held in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) that a plaintiff cannot pursue equitable relief while simultaneously claiming entitlement to legal remedies. The court reasoned that federal courts "must apply traditional equitable principles before awarding restitution under the UCL." *Id.* at 841. One such principle is that a plaintiff must lack an "adequate remedy at law" to obtain equitable relief, *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996). Thus, absent a showing that plaintiffs "lack an adequate remedy at law," courts dismiss claims

for equitable relief, even where the equitable claim is pleaded in the alternative. *See, e.g.*, *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 648 (N.D. Cal. 2024) ("[S]imply asserting their equitable claim in the alternative [to legal remedies] does not satisfy Plaintiffs' burden to allege that they lack an adequate remedy at law."); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009–10 (N.D. Cal. 2020) (dismissing restitution request because plaintiff did not allege how their legal remedies "would be inadequate to what restitution could provide"); *In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (affirming dismissal at the pleading stage under *Sonner* where plaintiffs "'fail[ed] to explain' how the money they seek through restitution is any different than the money they seek as damages").

Here, Plaintiffs' UCL claim seeks disgorgement and restitution but their legal remedies are adequate. The SAC primarily seeks monetary damages: Plaintiffs paid WP Engine for services and used those services to assist their own clients, Defendants allegedly disrupted those services, and Defendants should therefore pay for the "costs of remedying" that disruption. SAC ¶ 146. This is "exactly the type of injury for which legal remedies are appropriate." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021) (damages would be adequate to remedy a "loss of money and/or loss in value"); *see Teresa Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 30, 2020) (finding lost money is "a form of harm for which legal damages" is an adequate remedy).

Plaintiffs fail to articulate why their legal remedies would be inadequate. Their request for damages is rooted in the same theory and factual allegations as their request for equitable relief—i.e., the cost and burden of having their services disrupted. *See* SAC ¶ 142–43. In this district, where "the plaintiffs' claims for [equitable] relief are 'rooted in the same theory and factual allegations' as their claim for damages" they "have not alleged the inadequacy of a remedy at law." *Cepelak v. HP Inc.*, 2021 WL 5298022, at *3 (N.D. Cal. Nov. 15, 2021); *see In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) (same). Plaintiffs' Second Amended Complaint does not allege how restitution would go beyond what legal remedies could provide.

## VI.    CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Second Amended Complaint.

DATED: February 17, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Kahn A. Scolnick*
    Kahn A. Scolnick

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*