**SCHUBERT JONCKHEER & KOLBE LLP**
ROBERT C. SCHUBERT (S.B.N. 62684)
rschubert@sjk.law
AMBER L. SCHUBERT (S.B.N. 278696)
aschubert@sjk.law
DANIEL L.M. PULGRAM (S.B.N. 354569)
dpulgram@sjk.law
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220

**TYCKO & ZAVAREEI LLP**
SABITA J. SONEJI (S.B.N. 224262)
ssoneji@tzlegal.com
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN KELLER and SHARON SCHANZER, individually and on behalf of their businesses, KELLER HOLDINGS LLC (DBA SecureSight) and RLDGROUP, and on behalf of all others similarly situated,<br><br>　　　*Plaintiffs*,<br><br>v.<br><br>AUTOMATTIC INC., a Delaware corporation, and MATTHEW CHARLES MULLENWEG, an individual,<br><br>　　　*Defendants*. | No. 3:25-cv-01892-AMO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT.**<br><br>**Hearing:**<br>Date:　　June 4, 2026<br>Time:　　2:00 p.m.<br>Place:　　Courtroom 10<br><br>Hon. Araceli Martínez-Olguín |

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

---

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 5

   I.    Plaintiffs have Article III standing. ......................................................................... 6

       A.   Plaintiffs suffered benefit-of-the-bargain economic injuries. ....................... 6

       B.   Plaintiffs incurred mitigation costs because of Defendants' interference. ..... 7

   II.   Plaintiffs state a claim for intentional interference with contractual relations. ..... 7

       A.   Defendants knew Plaintiffs had contracts with WPE. ................................... 8

       B.   Defendants intentionally interfered with Plaintiffs' contracts. ................... 11

       C.   Defendants' conduct disrupted Plaintiffs' contracts. .................................. 12

   III.  Plaintiffs state a claim for interference with prospective economic advantage. ... 14

   IV.  Plaintiffs state a claim for violation of the UCL. ................................................ 15

       A.   Plaintiffs have statutory standing. .............................................................. 16

       B.   Plaintiffs' UCL claim survives regardless of restitution. ........................... 17

       C.   Sonner does not bar Plaintiffs' UCL claim. ............................................... 19

CONCLUSION .................................................................................................................. 21

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

# TABLE OF AUTHORITIES

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005).............................................................................................. 9

*Brooks v. Thomson Reuters Corp.*,
  No. 21-cv-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .............................. 17, 20

*Bowen v. Energizer Holdings, Inc.*
  118 F.4th 1134 (9th Cir. 2024) .......................................................................................... 6

*Bullwinkle v. U.S. Bank, National Association*,
  No. C13–03281 HRL, 2013 WL 5718451 (N.D. Cal. Oct. 21, 2013) ................................. 17

*Campidoglio LLC v. Wells Fargo & Co.*,
  870 F.3d 963 (9th Cir. 2017)............................................................................................... 5

*Carroll v. Myriad Genetics, Inc.*,
  No. 4:22-CV-00739-YGR, 2022 WL 16860013 (N.D. Cal. Nov. 9, 2022)........................ 20

*Coleman v. Mondelez Int'l Inc.*,
  554 F. Supp.8 3d 1055 (C.D. Cal. 2021) ............................................................................ 20

*Collyer v. Catalina Snacks Inc.*,
  712 F. Supp. 3d 1276 (N.D. Cal. 2024) .............................................................................. 20

*Consumerdirect, Inc. v. Pentius, LLC*,
  No. 8:21-cv-01968-JVS (ADSx), 2022 WL 16949657 (C.D. Cal. Aug. 25, 2022)............ 10

*CRST Van Expedited, Inc. v. Werner Enters.*,
  479 F.3d 1099 (9th Cir. 2007)............................................................................................. 14

*Dare v. Aegis Wholesale Corporation*,
  No. 3:15-cv-2833-JAH (BLM) 2019 WL 1455799 (S.D. Cal. April 2, 2019) .................... 17

*Erickson v. Pardus*,
  551 U.S. 89, (2007)............................................................................................................... 5

*Fed'n of African Am. Contractors v. City of Oakland*,
  96 F.3d 1204 (9th Cir. 1996) .............................................................................................. 5

*Guzman v. Polaris Indus. Inc.*,
  49 F.4th 1308 (9th Cir. 2022) ............................................................................................. 19

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098, 1107 (9th Cir. 2013) .................................................................................. 16

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ................................................................................. 8

*Huynh v. Quora*,
    No. 5:18-cv-07597-BLF 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ................................. 17

*Huynh v. Quora.*,
    508 F. Supp. 3d 633 (N.D. Cal. Dec. 21, 2020) ........................................................ 17

*In re Adobe Sys., Inc. Privacy Litigation*,
    66 F. Supp. 3d at 1197 (N.D. Cal. 2014) .............................................................

*In re Anthem, Inc. Data Breach Litigation*,
    No. 5:15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ............................... 16

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013) ........................................................................... 5

*Heritage Provider Network, Inc. v. Super. Court*,
    158 Cal. App. 4th 1146 (2008) .......................................................................... 12

*In re Hydroxycut Mktg. & Sales Pracs. Litig. v. Iovate Health Sciences Grp., Inc.*,
    801 F.Supp.2d 993 (S.D. Cal. 2011) ..................................................................... 6

*In re LinkedIn User Privacy Litigation*,
    No. 5:12–CV–03088–EJD, 2014 WL 1323713, (N.D. Cal. Mar. 28, 2014) .............................. 7

*In re Natera Prenatal Testing Litig.*,
    664 F. Supp. 3d 995 (N.D. Cal. Mar. 28, 2023) ........................................................ 20

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
    No. 5:16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........................... 7, 16

*Jeong v. Nexo Fin. LLC*,
    No. 5:21-cv-02392-BLF, 2022 WL 174236  (N.D. Cal. Jan. 19, 2022) ................................... 20

*Johnson v. Riverside Healthcare Sys.*,
    534 F.3d 1116 (9th Cir. 2008) ............................................................................ 5

*Juarez v. Arcadia Financial, Ltd.*,
    152 Cal. App. 4th 889 (2007) ............................................................................ 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .............................................................................. 18-19

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ............................................................................... 16-19

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ............................................................................ 5

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................ 6

*Moog Inc. v. Skyryse, Inc.*,
  No. 2:22-cv-09094-GW-MAR, 2023 WL 3432213 (C.D. Cal. Apr. 14, 2023) .......................... 10

*Moore v. Apple, Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) ................................................................... 10, 11

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990) .......................................................................... 10, 12, 14

*Parker v. U.S. Bancorp*,
  No. ED CV 16–70–DMG (SPx), 2016 WL 7495824 (C.D. Cal. Sept. 13, 2016) ................. 17n.5

*Quelimane Co. v. Stewart Title Guar. Co.*,
  19 Cal. 4th 26 (1998) ................................................................................... 11

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
  177 Cal. App. 3d 1120 (1986) ............................................................................ 9

*Reichman v. Poshmark, Inc.*,
  267 F. Supp. 3d 1278 (C.D. Cal. 2017) ............................................................... 17n.5

*Sebastian Int'l, Inc. v. Russolillo*,
  162 F. Supp. 2d 1198 (C.D. Cal. 2001) ............................................................... 9, 10

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ........................................................................... 19

*Steiner v. Vi-Jon Inc.*,
  723 F. Supp. 3d 784 (N.D. Cal. 2024) ................................................................... 20

*Swipe & Bite, Inc. v. Chow*,
  147 F. Supp. 3d 924 (N.D. Cal. 2015) ................................................................... 11

*Trew v. Volvo Cars of N. Am.*,
  No. CIV-S-05-1379 DFL PAN, 2006 WL 306904 (E.D. Cal. Feb. 8, 2006) ............................ 19

*Trindade v. Reach Media Group*, LLC,
  No. 12–CV–4759–PSG, 2013 WL 3977034, at *15–17 (N.D. Cal. July 31, 2013) ..................... 10

*Troyk v. Farmers Grp., Inc.*,
  171 Cal. App. 4th 1305 (2009). ..................................................................... 18-19

*Valiente v. Simpson Imps., Ltd.*,
  717 F. Supp. 3d 888 (N.D. Cal. 2024) ................................................................... 19

*Warren v. Whole Foods Mkt. California, Inc.*,
  No. 21-cv-04577-EMC, 2022 WL 2644103 (N.D. Cal. July 8, 2022) ........................................ 20

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

*Williams v. Apple, Inc.,*
    499 F. Supp. 3d 892 (N.D. Cal. 2020) ........................................................................ 6

*WPEngine, Inc. v. Automattic Inc.,*
    No. 3:24-cv-06917-AMO 2024 WL 5077610 (N.D. Cal. Dec. 10, 2024) ................................ 21

*WPEngine, Inc. v. Automattic Inc.,*
    No. 3:24-cv-06917-AMO 2025 WL 2637505 (N.D. Cal. Sep. 12, 2025) ................................. 15

*Youst v. Longo,*
    43 Cal. 3d 64 (1987) .......................................................................................... 14, 15

**Other Authorities**

*Restatement (Second) of Torts* § 766 cmt. p (Am. Law Inst. 1979) .................................... 9

Cal. Bus. & Prof. Code § 17200 *et. Seq.* ............................................................... 15, 16

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1

**INTRODUCTION**

2     This case is not about competition between web hosting providers. Defendants Automattic

3 and Matthew Mullenweg did not merely compete with WP Engine—they sabotaged the

4 infrastructure on which its customers rely to operate their websites.

5     Plaintiffs Ryan Keller and Sharon Schanzer run businesses that build and maintain websites

6 for clients using WPE's managed hosting services. Those services depend on continued access to

7 WordPress.org infrastructure—repositories and code that distribute critical updates, plugins, and

8 security patches. Defendants deliberately cut WPE off from that infrastructure.

9     They did so knowing exactly whose websites would break. Using the technical visibility

10 built into the WordPress ecosystem, Defendants compiled and publicly released a dataset

11 identifying hundreds of thousands of WPE-hosted domains, including Plaintiffs' websites.

12 Defendants then disabled the very systems those websites relied on while simultaneously

13 encouraging WPE customers to migrate to Defendants' competing platforms.

14     The consequences were immediate and predictable. WPE-hosted websites—including

15 Plaintiffs'—lost access to essential functions such as plugin updates, security patching, and backend

16 management tools. Plaintiffs were forced to perform those functions themselves to keep their

17 websites operational, incurring significant time and expense. In short, Plaintiffs paid thousands of

18 dollars for hosting services that Defendants deliberately degraded.

19     The Court previously dismissed the complaint with leave to amend because Plaintiffs had

20 not plausibly alleged that Defendants knew of Plaintiffs' specific contracts with WPE. The Second

21 Amended Complaint squarely addresses that issue. Plaintiffs now allege detailed facts

22 demonstrating that Defendants identified WPE-hosted websites—including Plaintiffs' websites—

23 compiled and published a list of those domains, monitored the resulting disruptions, and targeted

24 those customers for migration to Defendants' competing services. These allegations plausibly

25 establish that Defendants knew which WPE customers they were targeting and deliberately acted

26 in ways that would disrupt those customers' hosting relationships.

27     Defendants' motion largely ignores these new allegations. Instead, it asks the Court to

28 resolve factual disputes, draw inferences against Plaintiffs, and disregard the detailed factual

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

---

Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' SAC          1

allegations added in the Second Amended Complaint. That is not the law. Accepting Plaintiffs' well-pleaded allegations as true, the complaint plausibly alleges Article III standing and viable claims for intentional interference with contractual relations, intentional interference with prospective economic relations, and violations of the Unfair Competition Law. This Court should therefore deny the motion to dismiss.

## FACTUAL BACKGROUND

Plaintiffs Ryan Keller and Sharon Schanzer purchased web hosting services from WordPress Engine ("WPE") for themselves and their businesses, forming contractual relationships with WPE. ¶¶ 9, 16-17.[1] WPE's managed hosting services depend on access to the WordPress.org repository, which distributes WordPress core software, plugins, themes, and security updates. ¶¶ 29-32. WPE customers—including Plaintiffs—paid WPE to manage these services and ensure that their websites remained functional, secure, and updated.

Defendants operate businesses that compete directly with WPE within the WordPress ecosystem. ¶ 43. Beginning in September 2024, Defendants initiated a highly public dispute with WPE that Automattic CEO Matt Mullenweg himself described as a campaign of "scorched earth nuclear war." ¶¶ 45-46, 100. As part of that campaign, Defendants deliberately blocked WPE's access to critical WordPress.org infrastructure beginning on September 24, 2024, cutting WPE off from the repository and related API endpoints needed for plugin updates, theme updates, and core WordPress security functions. ¶¶ 47-48, 53-59.

Defendants knew that blocking WPE's access would degrade WPE's hosting services and interfere with WPE's ability to perform its contractual obligations to its customers. Indeed, Defendants openly acknowledged that WPE customers depended on the services Defendants were disabling. ¶¶ 48, 100. As planned and intended, Defendants' actions immediately disrupted the operation of WPE-hosted websites, including those owned and operated by Plaintiffs. ¶¶ 47-48.

At the time Defendants initiated this campaign, they had specific knowledge of which websites were hosted by WPE and which website owners therefore had contracts with WPE. ¶ 101.

[1] All ¶ citations refer to paragraphs of Second Amended Class Action Complaint. ECF 57.

WordPress's technical architecture provided Defendants with visibility into which websites were hosted on WPE servers, including detailed information about the websites' IP addresses, server signatures, hosting environments, active plugins, and other identifying characteristics. ¶ 102.

Defendants then compiled and publicly released a dataset identifying WPE customer websites through a website called wordpressenginetracker.com. ¶ 101. The site directed users to download a file titled domains.csv, which contained approximately 842,514 domain names that Defendants represented were websites hosted by WPE. ¶ 101.

Defendants did not present this dataset as a speculative estimate. Rather, they described the domains in the dataset as websites that were "ready for a new home." ¶ 107. Defendants represented that the tracker identified WPE-hosted websites on an individual basis and used the dataset to monitor which WPE customers migrated away from WPE each day. ¶¶ 105-107. The tracking site published a daily activity log identifying the specific WPE-hosted domains that changed hosting providers, and Defendants represented that this log was accurate down to the minute. ¶ 107.

Plaintiffs' websites appeared on this list. Plaintiff Schanzer operated at least 49 websites through her business RLDGROUP, and every one of those domains appeared on Defendants' WPE customer list. ¶ 103. Plaintiff Keller operated 19 websites, 18 of which appeared on the same list. ¶ 103. In total, every website owned or operated by Plaintiffs except one appeared on Defendants' published list of WPE customers that were being targeted. ¶ 104.

Defendants' own statements confirm that they understood the significance of the list they published. Defendants publicly identified the domains in the tracker as WPE customer websites and acknowledged that the developers operating those sites had contracted with WPE for hosting services. ¶ 109. Defendants would not have published Plaintiffs' websites on their own WPE customer list if they did not believe that Plaintiffs were WPE customers. ¶ 108.

Defendants' actions did not stop with publishing the customer list. After disrupting WPE's services, Defendants conducted targeted outreach to WPE customers in an effort to persuade them to migrate their websites to Defendants' competing hosting platforms. ¶¶ 110-112. Defendants' strategy was explicit: by degrading WPE's services and publicly tracking which customers left

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

WPE, Defendants sought to pressure WPE customers to abandon WPE and move their websites to Automattic-owned hosting platforms.

Defendants' publication of the WPE customer list drew widespread criticism because it exposed sensitive operational information about WPE-hosted websites, including sites that had been configured to avoid public indexing. ¶ 111. The list was eventually removed after this Court issued an injunction ordering Defendants to take it down. ¶ 12.

Defendants' actions caused substantial disruption to Plaintiffs' websites and denied Plaintiffs the benefit of the hosting services they purchased from WPE. Plaintiffs' contracts with WPE included service-level guarantees for uptime and managed hosting features designed to maintain the security and functionality of their websites. ¶ 49. Because Defendants blocked WPE's access to WordPress.org infrastructure, Plaintiffs' websites experienced degraded performance and lost access to critical services such as plugin updates, vulnerability scans, security patching, and automated backups. ¶¶ 94-96.

During the disruption period, Plaintiffs Keller and Schanzer were forced to perform many of the managed hosting functions themselves in order to keep their websites operational, requiring substantial time and expense. ¶¶ 76, 90. As a result, Plaintiffs did not receive the full value of the hosting services for which they paid WPE, because Defendants deliberately disabled the WordPress.org infrastructure on which those services depended. ¶¶ 48, 58, 76, 87.

Defendants' actions also disrupted Plaintiffs' relationships with their own clients. Plaintiffs use WPE-hosted websites to build and manage websites for numerous customers. ¶¶ 69, 83. When Defendants degraded WPE's services, the websites Plaintiffs managed on behalf of their clients experienced outages and other functionality problems. ¶¶ 70-72, 84-86. For example, Plaintiff Schanzer was forced to provide a 50% discount to a client—a small local newspaper whose website depends on the ability to quickly update stories—because the disruption prevented the site from functioning properly. ¶ 84. Plaintiff Keller likewise lost business when a client who had been considering launching a new website declined to proceed after Keller warned the client about the instability caused by the dispute and service disruption. ¶ 81. These disruptions also created a

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

serious risk of losing existing clients if outages continued or if Plaintiffs were forced to migrate their clients' websites to new hosting providers. ¶ 79.

Defendants took these actions even though they knew that the websites they targeted—including Plaintiffs' websites—were operated by WPE customers whose hosting contracts depended on continued access to WordPress.org.

## **LEGAL STANDARD**

Defendants move to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In deciding a 12(b)(6) a motion, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 970 (9th Cir. 2017). To survive dismissal, the complaint's factual allegations need only "suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)). This is not an onerous burden. "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

Under Rule 12(b)(1), where, as here, Defendants bring a facial challenge to Article III standing, the Court accepts the complaint's allegations as true and draws all reasonable inferences in Plaintiffs' favor. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

## **ARGUMENT**

Defendants' motion to dismiss ignores the detailed factual allegations Plaintiffs added to their Second Amended Complaint and instead asks the Court to resolve factual disputes and draw inferences against Plaintiffs. At the pleading stage, this Court must do the opposite. Accepting the complaint's well-pleaded allegations as true, Plaintiffs easily establish Article III standing and plausibly allege claims for intentional interference with contractual relations, intentional interference with prospective economic relations, and violations of the UCL. The Court should deny the motion.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

## I.     Plaintiffs have Article III standing.

Plaintiffs easily satisfy Article III standing. Plaintiffs allege concrete economic injuries caused by Defendants' conduct, including (1) paying for hosting services they did not receive and (2) incurring mitigation expenses to address the disruptions Defendants caused. Those injuries are fairly traceable to Defendants' conduct and redressable by a favorable decision.

To establish Article III standing, a plaintiff must show (1) an injury in fact that is concrete and particularized and actual or imminent, (2) that the injury is fairly traceable to the defendant's conduct, and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs plausibly allege each element.[2]

### A.     Plaintiffs suffered benefit-of-the-bargain economic injuries.

Defendants' standing argument ignores Plaintiffs' primary economic injury. Plaintiffs allege that they paid WPE for web hosting services but did not receive the full benefit of those services because Defendants deliberately disrupted WPE's access to the WordPress.org infrastructure those services required. ¶¶ 76, 90, 127. Plaintiff Keller paid WPE $3,300 per year for hosting services. ¶ 73. Plaintiff Schanzer paid approximately $9,145 per year. ¶ 87. Because Defendants interfered with WPE's access to WordPress.org, Plaintiffs did not receive the services their contracts promised. ¶¶ 76, 90, 127.

It is black-letter law that economic harm constitutes an injury-in-fact sufficient to satisfy Article III standing. *See Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1147 (9th Cir. 2024) (holding plaintiff satisfied standing by purchasing a product she otherwise would not have purchased or would have paid less for); *Williams v. Apple, Inc.*, 499 F. Supp. 3d 892, 905 (N.D. Cal. 2020) ("Generally, where plaintiffs plead that they were economically harmed because they did not receive the 'benefit of their bargain,' plaintiffs have adequately alleged Article III standing.").

Courts in this District also routinely hold that plaintiffs satisfy Article III standing when they allege they did not receive the full benefits of services they purchased. *See In re Hydroxycut Mktg. & Sales Pracs. Litig. v. Iovate Health Sciences Grp., Inc.*, 801 F. Supp. 2d 993, 1004 (S.D. Cal.

---

[2] Defendants do not challenge traceability or redressability.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

2011) (benefit-of-the-bargain allegations sufficient to establish injury in fact); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, 2017 WL 3727318, at \*17 (N.D. Cal. Aug. 30, 2017) (same); *In re LinkedIn User Privacy Litigation*, 2014 WL 1323713, at \*6 (N.D. Cal. Mar. 28, 2014) (same). Because Plaintiffs paid for hosting services but did not receive the full benefit of those services, they suffered concrete economic injuries sufficient for Article III standing.

### B. Plaintiffs incurred mitigation costs because of Defendants' interference.

Plaintiffs also incurred expenses responding to the disruptions Defendants caused. Defendants characterize these expenses as "voluntary business decisions," Mot. at 3, 5, but Plaintiffs incurred them to mitigate the ongoing harm caused by Defendants' interference with WPE's services. ¶¶ 70, 79, 84, 86. For example, Plaintiff Keller spent $1,640 preparing to migrate his website to another hosting provider after Defendants' conduct disrupted the services he received from WPE. ¶ 68. Likewise, Plaintiff Schanzer provided a 50% discount to a client after Defendants' actions prevented her from receiving the services she paid for and fulfilling her obligations to that client. ¶ 84. These were not gestures of goodwill; they were necessary steps to address the continuing consequences of Defendants' disruption of Plaintiffs' businesses.

Courts repeatedly recognize that mitigation expenses constitute injury-in-fact, even when plaintiffs incur those expenses to address future risks. *See In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1197, 1216 (N.D. Cal. 2014) (holding expenses incurred mitigating the effects of a data breach constituted a cognizable injury-in-fact even where identity theft had not yet occurred); *Yahoo*, 2017 WL 3727318, at \*17 (same). Plaintiffs' mitigation costs were necessary here because they addressed present, ongoing disruptions to the hosting services Plaintiffs purchased.

Because Plaintiffs paid for services they did not receive and incurred costs responding to Defendants' conduct, they allege concrete injuries fairly traceable to Defendants and redressable by damages and injunctive relief. Plaintiffs satisfy Article III standing.

## II.    Plaintiffs state a claim for intentional interference with contractual relations.

Tortious interference with contractual relations requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

---

disruption of the contractual relationship; and (5) resulting damage." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1191 (9th Cir. 2022).

Defendants challenge only three of these elements: knowledge, intent, and disruption. The complaint addresses the concerns identified in the Court's prior order and alleges detailed facts showing that Defendants identified WPE-hosted websites—including Plaintiffs' websites—targeted those sites, and knowingly disrupted the hosting services Plaintiffs had contracted to receive. These allegations plausibly establish knowledge, intent, and disruption.

**A. Defendants knew Plaintiffs had contracts with WPE.**

The Court previously dismissed the complaint with leave to amend because Plaintiffs had not plausibly alleged that Defendants knew of Plaintiffs' specific contracts with WPE, as opposed to merely knowing that WPE generally contracted with website owners. ECF 51 at 4. The complaint now directly addresses that concern.

The complaint alleges that Defendants compiled and published a list identifying websites hosted by WPE and used that list to target WPE customers. ¶¶ 101-116. Defendants publicly represented that the list identified websites hosted by WPE. *Id.* Plaintiffs' websites—securesight.co and rldgroup.com—appear on that list. ¶¶ 101, 109. The complaint further alleges that Defendants relied on the list to monitor WPE-hosted websites, track outages affecting those sites, and conduct targeted outreach to WPE customers, including offering contract buyouts to induce customers to move their websites away from WPE. ¶¶ 50, 63, 66, 114. The complaint also alleges that nearly all of the websites that Plaintiffs hosted for their own clients appeared on Defendants' list of WPE-hosted sites. ¶ 13. These allegations plausibly establish that Defendants knew the websites they targeted—including Plaintiffs' websites—were subject to hosting contracts with WPE.

Indeed, Defendants themselves acknowledged that WPE customers were paying for hosting services that depended on continued access to WordPress.org infrastructure. ¶ 6. As Mullenweg explained, "*people are paying 400 million dollars to WPEngine that promises them security, updates, hosting, et cetera.* So they were selling the free stuff on WordPress.org to their customers. And then when we turned them off, they got mad." *Id.* (emphasis modified). Defendants therefore understood that disrupting WPE-hosted websites would necessarily interfere with the hosting

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

agreements associated with those sites. Consistent with that understanding, Defendants maintained a list identifying the "people" they believed had contracted with WPE. ¶ 101.

Defendants raise two arguments in an effort to avoid these allegations. Neither has merit. First, they argue that they cannot be liable unless they knew the precise identity of each website owner and the exact terms of each hosting contract. But California law imposes no such requirement. Courts have long held that a defendant need not know the specific identity of the contracting party so long as the defendant knows it is interfering with a contractual relationship. In *Ramona*, the California Court of Appeal rejected the argument that knowledge of the injured party's identity is required, explaining that "knowledge of the injured party's specific identity or name is [not] a prerequisite to recovery." *Ramona Manor Convalescent Hospital v. Care Enterprises*, 177 Cal. App. 3d 1120, 1133 (1986). Instead, liability may arise where the defendant acts with knowledge that its conduct will interfere with the contractual expectations of a specific, though unnamed, party. *Id.*

The Ninth Circuit adopted the same rule in *Altera*, holding that a defendant "need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005). This rule reflects the Restatement principle that "the person who loses the performance of the contract [need] not] be specifically mentioned by name. It is sufficient that he is *identified in some manner*." *Restatement (Second) of Torts* § 766 cmt. p (Am. Law Inst. 1979) (emphasis added); *see also Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001) (holding that intent to interfere may be inferred where the defendant "knows that contractual relations with a third party exist, but does not know the specific identity of the contractual party").[3]

The complaint easily satisfies that standard. Defendants identified specific websites hosted by WPE, monitored those sites for outages, and targeted their owners in an effort to poach them

---

[3] For example, the Restatement explains that inducing a breach of a contract to purchase an identified brand of cigarettes may subject the inducer to liability to the commercial source identified by that trade symbol, even if the defendant does not know the identity of the particular distributor harmed. *Restatement (Second) of Torts* § 766 cmt. p. The same principle applies here: Defendants targeted specific WPE-hosted websites, which necessarily corresponded to the customers who contracted with WPE for hosting services.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1    from WPE. ¶¶ 101-116. Plaintiffs' websites were among those sites. *Id.* These allegations plausibly

2    show that Defendants knew their conduct would interfere with Plaintiffs' hosting contracts.

3        Second, Defendants argue that Plaintiffs failed to identify the "specific contracts" or

4    "contract terms" allegedly disrupted. Mot. at 8. Courts, however, recognize that a defendant's

5    knowledge of a specific contract may be inferred where a defendant is aware of a class of third-

6    party contracts that its conduct may disrupt. For example, in *Sebastian*, the court held that providing

7    defendants with a representative list of the affected contracting parties was sufficient to put them

8    "on notice" of the specific contractual relationships their conduct would disrupt. *Sebastian*, 162 F.

9    Supp. 2d at 1204; *see also Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1203 (N.D. Cal. 2014)

10   (inferring Apple's knowledge of plaintiff's contract with Verizon because "wireless providers

11   update subscribers' wireless accounts when users switch from Apple to non-Apple devices").

12       The complaint alleges the same type of notice here. Defendants compiled and published a

13   list identifying WPE-hosted websites and targeted those sites for disruption and outreach. ¶¶ 12,

14   15, 59, 64, 101, 108, 114. Plaintiffs' websites were included on that list. These allegations plausibly

15   show that Defendants knew their conduct would interfere with the hosting contracts associated with

16   those sites.

17       Nor does California law require plaintiffs to plead the precise terms of a contract to state a

18   claim for intentional interference. The California Supreme Court has emphasized that "it is the

19   contractual relationship, not any term of the contract, which is protected against outside

20   interference." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

21   Courts routinely reject arguments that plaintiffs must identify specific contracts or attach them at

22   the pleading stage. *See*, *e.g.*, *Moore*, 73 F. Supp. 3d at 1203; *Consumerdirect, Inc. v. Pentius, LLC*,

23   No. 8:21-cv-01968-JVS (ADSx), 2022 WL 16949657, at *3 (C.D. Cal. Aug. 25, 2022) (rejecting

24   argument that failure to identify specific contracts and customers is fatal to the claim).

25       Defendants' reliance on *Moog Inc. v. Skyryse, Inc.*, No. 2:22-cv-09094-GW-MAR, 2023

26   WL 3432213, at *21 (C.D. Cal. Apr. 14, 2023), is misplaced. In *Moog*, the counterclaimant's only

27   allegation as to knowledge was that, "[o]n information and belief, Moog was aware of these

28   contracts." *Id.* The allegations in *Trindade v. Reach Media Group*, LLC, No. 12-CV-4759-PSG,

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

2013 WL 3977034, at *15–17 (N.D. Cal. July 31, 2013), and *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015), were similarly threadbare. Here, by contrast, the complaint alleges concrete facts showing Defendants knew they were intentionally targeting WPE customers and disrupting the hosting relationships associated with those sites. ¶¶ 15, 59, 64, 101, 108, 114. Defendants compiled and published a list identifying WPE-hosted websites, monitored those sites for outages, and conducted targeted outreach to WPE customers. ¶¶ 65, 97, 110-113.[4] At the pleading stage, these allegations readily establish that Defendants knew their conduct would interfere with Plaintiffs' contracts.

### B. Defendants intentionally interfered with Plaintiffs' contracts.

The complaint plausibly alleges that Defendants deliberately targeted WPE customers and sought to induce them to leave WPE. ¶¶ 14, 55, 100. Defendants nevertheless argue that Plaintiffs failed to allege intent because the complaint supposedly shows only an intent to compete with WPE, not an intent to interfere with contracts. Mot. at 8. That argument largely repeats Defendants' knowledge argument. Because the complaint plausibly alleges that Defendants knew the websites they targeted had hosting contracts with WPE, it likewise plausibly alleges that Defendants acted with the requisite intent for tortious interference.

California law does not require that disruption of a contract be the defendant's primary purpose. The California Supreme Court has explained that the tort applies not only where a defendant acts for the purpose of interfering with a contract, but also where the defendant "knows that the interference is certain or substantially certain to result" from its conduct. *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998). Courts routinely apply this rule to reject arguments that defendants lacked intent where the alleged conduct foreseeably disrupted contractual relationships. *See*, *e.g.*, *Moore*, 73 F. Supp. 3d at 1203 (finding intent sufficiently alleged where Apple knew its system would cause undelivered messages if users switched to non-Apple devices).

---

[4] Defendants do not dispute that Plaintiffs have sufficiently identified the contracts at issue. The complaint identifies the hosting contracts, describes the services those contracts promised, and alleges how Defendants' conduct disrupted those services. ¶¶ 76, 87, 101-116.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

The complaint easily satisfies that standard. Plaintiffs allege that Defendants compiled and published a list identifying websites hosted by WPE and used that list to target WPE customers. ¶¶ 101-116. Defendants monitored those websites, tracked outages affecting them, and conducted targeted outreach to WPE customers—including offering contract buyouts designed to induce customers to abandon WPE. ¶¶ 50, 63, 66. At the same time, Defendants disabled WPE's access to the WordPress.org infrastructure on which those websites depended. ¶¶ 1, 55, 59, 76, 90. These allegations plausibly show that Defendants deliberately interfered with WPE-hosted websites.

The complaint also alleges direct evidence of Defendants' intent. Defendants publicly acknowledged that degrading WPE's services would cause WPE customers to leave. ¶ 55. When asked about WPE customers whose websites depended on WordPress's infrastructure, Mullenweg explained that customers were paying WPE hundreds of millions of dollars for hosting services and that "when we turned them off, they got mad." *Id.* The complaint further alleges that Defendants internally discussed pursuing a "scorched earth nuclear approach" toward WPE and predicted that "millions of sites" would move away from WPE as a result. ¶ 57. These statements reinforce what the surrounding conduct already shows: Defendants acted with the intent to disrupt the contractual relationships between WPE and its customers, including Plaintiffs.

### C.  Defendants' conduct disrupted Plaintiffs' contracts.

California law does not require a breach of contract to establish interference with contractual relations. Defendants' argument that Plaintiffs failed to allege disruption because they did not identify specific contractual terms or show that WPE breached a service level agreement therefore misunderstands both Plaintiffs' allegations and the governing law. Mot. at 8.

The tort of intentional interference with contractual relations is satisfied where a defendant's conduct disrupts the benefits due under the contract or makes performance more costly or difficult. *Pac. Gas & Elec.*, 50 Cal. 3d at 1129. Courts recognize that interference may occur even where the contractual relationship continues. *Id.*; *see also Heritage Provider Network, Inc. v. Super. Court*, 158 Cal. App. 4th 1146, 1154 (2008) (observing plaintiff may be able to prevail on tortious interference claim "without showing an actual breach of contract").

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

The complaint plausibly alleges that type of disruption here. Defendants' conduct disrupted the core services Plaintiffs paid WPE to provide: managed updates, security patching, and administrative control over their WordPress websites. ¶¶ 55, 73, 87. The complaint identifies the hosting services Plaintiffs purchased and the contractual obligations those services included. ¶¶ 55, 73, 87. Plaintiff Keller purchased WPE's Scale Plan, which promised automated WordPress and PHP updates, security patching, plugin risk scans, and fully managed updates. ¶ 76. Plaintiff Schanzer purchased WPE's Premium 1 Plan, which likewise promised automated updates, security monitoring, and managed WordPress services requiring continuous access to WordPress.org. ¶ 87.

Defendants' conduct disrupted those services. When Defendants blocked WPE's access to WordPress.org resources, WPE customers—including Plaintiffs—were unable to install or update plugins or themes, access certain administrative tools, or receive security updates through the WordPress repository. ¶¶ 48, 95. By blocking WPE's access to the endpoint used to check for updates, Defendants prevented Plaintiffs' websites from even learning that security patches existed, let alone downloading and installing them. ¶ 95. As a result, core services promised under Plaintiffs' hosting plans—including automated updates, plugin management, and security patching—could not be provided through WPE's managed hosting infrastructure for approximately seventy-seven days. ¶¶ 76, 87, 94-96.

Plaintiffs were therefore forced to perform many of those services themselves. Instead of receiving the benefits of his Scale Plan from WPE, Plaintiff Keller had to perform the promised services himself, requiring substantial time and expense. ¶ 76. Likewise, instead of receiving the benefits of her Premium 1 Plan, Plaintiff Schanzer had to perform those services herself. ¶ 90. In both cases, Plaintiffs did not receive the benefit of the bargain they paid WPE to provide.

The disruption extended beyond Plaintiffs' own use of those services. Because Plaintiffs use WPE's managed hosting services to build and maintain websites for their own clients, disruptions to WPE's services directly affected those client websites and Plaintiffs' ability to service them. ¶¶ 10, 70, 84. Plaintiff Schanzer was forced to provide a 50% discount to a client whose website depended on rapid updates after the disruption significantly impacted that client's site. ¶ 84. Plaintiff Keller likewise lost business when a prospective client declined to proceed with a new website after Keller

warned the client about the instability created by Defendants' disruption. ¶ 81. These allegations plausibly establish that Defendants' conduct disrupted the benefits Plaintiffs were entitled to receive under their hosting contracts.

Defendants' insistence that Plaintiffs must plead the precise contractual terms or attach their contracts lacks support in California law. The California Supreme Court has emphasized that "it is the contractual relationship, not any particular term of the contract, which is protected against outside interference." *Pac. Gas & Elec.*, 50 Cal. 3d at 1126. At the pleading stage, Plaintiffs' allegations—that Defendants disabled critical hosting functionality, forced Plaintiffs to perform the managed services themselves, and deprived them of the benefits of their hosting plans—readily establish disruption to Plaintiffs' contracts with WPE.

**III.    Plaintiffs state a claim for interference with prospective economic advantage.**

Plaintiffs' complaint plausibly alleges that Defendants' campaign to disrupt WPE-hosted websites interfered with Plaintiffs' ongoing and prospective relationships with their own clients who rely on those services. Plaintiffs operate businesses that build and maintain websites for clients using WPE's managed hosting services—relationships that generate continuing revenue through website development, maintenance, and new business opportunities. ¶¶ 10, 20, 21, 44, 69, 83, 92.

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege an economic relationship with a probable future benefit, the defendant's knowledge of that relationship, intentional disruption of the relationship, independently wrongful conduct, and resulting harm. *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). A plaintiff need only allege a relationship with a probability of future economic benefit, not a finalized transaction. *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987).

The complaint plausibly alleges those relationships here. Plaintiffs rely on WPE-hosted infrastructure to build and maintain websites for their clients and to obtain additional work for those clients over time. ¶¶ 10, 81, 83, 92, 130. When Defendants disrupted those services, Plaintiffs' business relationships suffered. ¶¶ 10, 81, 83, 92, 130. For example, Plaintiff Keller alleges that an existing client was considering purchasing additional website services before declining to proceed after he warned the client about the instability created by Defendants' disruption. ¶ 81. That

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

allegation describes a concrete prospective transaction that was lost as a result of Defendants' conduct. At the pleading stage, Plaintiffs are not required to identify the client or the precise terms of the future engagement to allege a reasonably probable economic relationship. *See Youst*, 43 Cal. 3d at 71.

Defendants' argument that Keller "scared away" the client also fails. Mot. at 11. Plaintiff Keller warned the client about the risks created by Defendants' disruption of WPE services—the very disruption Defendants intentionally caused. Plaintiffs' disclosure of those risks does not break the causal chain; it reflects the foreseeable consequences of Defendants' own interference.

Defendants' knowledge argument likewise fails. As alleged above, Defendants compiled a list of WPE-hosted websites and deliberately targeted WPE customers in an effort to disrupt those relationships and induce those customers to abandon WPE. ¶¶ 101-116. Because Plaintiffs' businesses rely on WPE hosting to build and maintain websites for their own clients, it was entirely foreseeable—and indeed intended—that disrupting WPE's services would interfere with Plaintiffs' ongoing and prospective relationships with those clients.

Finally, the complaint plausibly alleges independently wrongful conduct. Defendants intentionally blocked WPE's access to core WordPress.org infrastructure and targeted WPE customers in an effort to destabilize WPE-hosted websites and capture those customers for themselves. ¶¶ 48, 50, 63, 66, 101-116. This conduct also violated the UCL's "unfair" prong, which constitutes an independently wrongful act. ¶ 144; *see also WPEngine, Inc. v. Automattic Inc.*, No. 24-cv-06917-AMO, 2025 WL 2637505, at *16 (N.D. Cal. Sep. 12, 2025) (denying motion to dismiss prospective economic relations claims because WPE alleged other viable claims). These allegations are more than sufficient to state a claim.

## IV.    Plaintiffs state a claim for violation of the UCL.

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiffs plausibly allege unlawful and unfair conduct based on Defendants' intentional campaign to disrupt WPE-hosted websites and destabilize the customer relationships that depend on those services. Defendants nonetheless argue

that the UCL claim fails for lack of standing, restitution, and equitable relief. None of those arguments warrants dismissal.

**A. Plaintiffs have statutory standing.**

To establish standing under the UCL, a plaintiff must allege that they "lost money or property as a result of" the challenged conduct. Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-23 (2011). The California Supreme Court has emphasized that this requirement encompasses a wide range of economic injuries and should not be applied restrictively. *Kwikset*, 51 Cal. 4th at 323. Plaintiffs easily satisfy that requirement.

The complaint alleges a classic benefit-of-the-bargain injury. Plaintiffs paid WPE for managed hosting services that included automated updates, security patching, and other backend website management designed to spare them the time and expense of performing those services manually. ¶¶ 76, 90, 93. Because Defendants intentionally disrupted WPE's access to WordPress.org infrastructure, those services degraded or became unavailable. ¶¶ 75-76, 84, 90. Plaintiffs were therefore forced to perform the contracted-for services themselves and did not receive the full value of the services they purchased. ¶¶ 76, 90, 127. That loss of the benefit of the bargain is a classic economic injury under the UCL.

The California Supreme Court has made clear that the UCL's economic injury requirement includes situations where a plaintiff "surrender[s] in a transaction more, or acquire[s] in a transaction less, than he or she otherwise would have." *Kwikset*, 51 Cal. 4th at 323. The Ninth Circuit likewise recognizes that such benefit-of-the-bargain losses constitute lost money or property sufficient to establish UCL standing. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (holding plaintiff had UCL standing where he alleged he would not have made a purchase or would have paid less but for defendant's conduct); *see also In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *30 (N.D. Cal. May 27, 2016) (same); *Yahoo*, 2017 WL 3727318, at *21 (same). Plaintiffs' allegations fall squarely within that rule.

Defendants largely ignore this central allegation and instead focus on Plaintiffs' mitigation efforts. But because Plaintiffs have alleged a direct economic injury—the loss of the benefit of the bargain, they have already satisfied the UCL's standing requirement.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

In any event, Defendants mischaracterize the law governing mitigation expenses. The primary decision on which they rely, *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *7 (N.D. Cal. Dec. 19, 2019), did not hold that mitigation costs cannot establish economic injury under the UCL. The court dismissed the claim on other grounds and did not reach that issue. *Id.* When the issue later arose on summary judgment, the same court held that unreimbursed expenses incurred in response to a data breach—including credit monitoring costs—"constitute economic injury sufficient to confer UCL standing." *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 661 (N.D. Cal. 2020). The remaining cases Defendants cite likewise involve plaintiffs who failed to allege any diminution in the value of property or loss of money caused by the defendant's conduct. Rather, they reject theories of standing based solely on litigation costs, stress, or other non-monetary harms not alleged here.[5]

In short, Plaintiffs allege a classic pocketbook injury: Defendants' intentional disruption reduced the value of the services Plaintiffs purchased. Accordingly, they lost money or property under the UCL. That injury alone satisfies the statute's standing requirement.

**B.  Plaintiffs' UCL claim survives regardless of restitution.**

Defendants' next argument—that Plaintiffs' UCL claim fails because restitution is unavailable—misstates the law. Defendants' argument addresses the scope of potential remedies, not whether Plaintiffs state a claim. The UCL authorizes two forms of relief for private plaintiffs: restitution and injunctive relief. *Kwikset*, 51 Cal. 4th at 337. Accordingly, "[i]neligibility for restitution is not a basis for denying standing" under the UCL. *Id.* Even if restitution ultimately proved unavailable, Plaintiffs' UCL claim would survive because Plaintiffs independently seek injunctive relief, prohibiting Defendants from continuing the unfair practices alleged in the complaint. Courts routinely decline to dismiss UCL claims on this basis where plaintiffs plausibly seek prospective relief. *See*, *e.g.*, *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *10-11 (N.D. Cal. Aug. 16, 2021) (allowing UCL claim to proceed because plaintiffs sought injunctive relief even where restitution was barred).

---

[5] *See Bullwinkle v. U.S. Bank, N.A.*, 2013 WL 5718451, at *7 (N.D. Cal. Oct. 21, 2013); *Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1287 (S.D. Cal. 2017); *Parker v. U.S. Bancorp*, 2016 WL 7495824, at *6 (C.D. Cal. Sep. 13, 2016); *Dare v. Aegis Wholesale Corp.*, 2019 WL 1455799 (S.D. Cal. Apr. 2, 2019).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

In any event, Plaintiffs are entitled to restitution. The UCL authorizes courts to restore money or property in which a plaintiff has a vested ownership interest. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). Restitution is therefore available where a plaintiff seeks to recover the portion of the money paid for goods or services whose value was diminished by a defendant's unfair conduct. *Kwikset*, 51 Cal. 4th at 329.

Plaintiffs seek precisely that relief. The complaint alleges that Plaintiffs paid WPE for managed hosting services that included automated updates, security patching, and other backend website management intended to spare them the time and expense of performing those services manually. ¶¶ 76, 90, 93. Because Defendants intentionally disrupted WPE's access to core WordPress.org infrastructure, those services degraded or became unavailable for an extended period. ¶¶ 75-76, 84, 90. Plaintiffs were therefore forced to perform the contracted-for services themselves and did not receive the full value of the services they purchased. That shortfall—the difference between what Plaintiffs paid and what they received—constitutes restitution under the UCL.[6]

At the pleading stage, Plaintiffs need only plausibly allege that Defendants' conduct caused them to lose money in which they have a vested interest—not prove the precise path those funds ultimately took. Defendants' only response is that restitution is unavailable because Plaintiffs paid WPE rather than Defendants. Mot. at 14. That argument fails. Restitution under the UCL is not limited to situations in which the plaintiff paid money directly to the defendant. Courts recognize that restitution may be available where a plaintiff loses the benefit of the bargain as a result of a defendant's conduct—even if the plaintiff paid the money to an intermediary. *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1340 (2009). As the California Court of Appeal explained in *Juarez*, restitution may include money "once in the possession of the person to whom it was to be restored," even where the defendant did not receive the payment directly from the plaintiff. *Juarez v. Arcadia Financial, Ltd.*, 152 Cal. App. 4th 889, 915 (2007).

---

[6] Plaintiffs seek restoration of money they paid for services whose value was diminished by Defendants' conduct—not disgorgement of Defendants' profits. *See Korea Supply*, 29 Cal. 4th at 1149 (2003) (distinguishing restitution from non-restitutionary disgorgement).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

1
2
3
4
5
6

For example, in *Trew*, the defendant argued that restitution was unavailable because plaintiffs paid third-party mechanics rather than Volvo itself to repair their vehicles. *Trew v. Volvo Cars of North America*, 2006 WL 80495, at *7-8 (E.D. Cal. Feb. 7, 2006). The court rejected that argument, holding that plaintiffs could pursue restitution because the money they spent on replacement parts was traceable to the defendant's sale of those parts through third-party intermediaries (there, the mechanics and dealers who performed the repairs). *Id.*

7
8
9
10
11

Defendants rely heavily on *Korea Supply*, 29 Cal. 4th at 1149, but courts interpreting that decision have rejected the narrow reading Defendants advance. As the Court of Appeal observed in *Troyk*, *Korea Supply* "does not hold that a plaintiff who paid a third party money (i.e., money in which the plaintiff had a vested interest) may not seek UCL restitution from a defendant whose unlawful business practice caused the plaintiff to pay that money." *Troyk*, 171 Cal. App. 4th at 1338.

12
13
14
15
16
17
18

The same principle applies here. Plaintiffs paid money for WordPress hosting services whose value was diminished by Defendants' conduct. ¶¶ 11, 16, 58, 66, 100. That Plaintiffs paid those funds to WPE rather than directly to Defendants does not defeat restitution. Where a defendant's unfair conduct diminishes the value of goods or services for which a plaintiff paid money, courts permit recovery of the portion of those payments corresponding to the diminished value of what the plaintiff received. *See*, *e.g.*, *Kwikset*, 51 Cal. 4th at 329.  Accordingly, Defendants' restitution argument provides no basis for dismissal.

19

**C.  *Sonner* does not bar Plaintiffs' UCL claim.**

20
21
22
23
24
25

Finally, Defendants argue that the Ninth Circuit's decisions in *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020), and *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022), bar Plaintiffs' UCL claim because they have not alleged an inadequate remedy at law. Mot. at 14-15.  That argument misreads those decisions.  *Sonner* addressed a claim for restitution on the eve of trial—not at the pleading stage. *See Sonner*, 971 F.3d 834 (holding plaintiff could not voluntarily abandon legal damages after more than four years of litigation to instead seek restitution).

26
27
28

As this Court has repeatedly held, "*Sonner* and *Guzman* do not mandate dismissal of [Plaintiffs'] claims because the decisions 'require far less at the pleading stage.'" *Valiente v. Simpson Imps., Ltd.*, 717 F. Supp. 3d 888, 907 (N.D. Cal. 2024) (quoting *In re Natera Prenatal Testing Litig.*,

664 F. Supp. 3d 995, 1012 (N.D. Cal. Mar. 28, 2023)); *see also Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022) (acknowledging *Sonner* has split courts at the pleading stage but declining to apply it because "*Sonner* does not address what a plaintiff must allege at the pleading stage in order to proceed on her equitable claims").

Consistent with those decisions, Plaintiffs here expressly plead their UCL claim in the alternative. ¶ 140. That alone is sufficient. *See Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021) (declining to dismiss UCL claim under *Sonner* because plaintiff "may be entitled to restitution under the UCL, while not entitled to damages under other causes of action which may impose more stringent elements that plaintiff may ultimately not be able to prove") (cleaned up); *Jeong v. Nexo Fin. LLC,* 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) ("in light of *Sonner*'s limited applicability to the pleading stage, there is no binding precedent that holds that pleading equitable restitution in the alternative is improper").

As this Court has previously observed, "decisions in this district … allow the pursuit of alternative remedies at the pleadings stage." *Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1289 (N.D. Cal. 2024) (collecting cases). This Court should "follow[] their path and permit[] Plaintiffs to proceed with equitable claims at the pleading stage, particularly where there does not appear to be a material distinction between monetary damages and restitution." *Steiner v. Vi-Jon Inc.*, 723 F. Supp. 3d 784, 796 (N.D. Cal. 2024). That is especially true where, as here, Defendants' conduct continues to pose a threat to ongoing business relationships. ¶¶ 10, 81, 83, 84.

In any event, *Sonner* does not bar Plaintiffs' request for forward-looking injunctive relief. Courts consistently hold that the doctrine does not apply where plaintiffs seek prospective relief to prevent ongoing harm. *See*, *e.g.*, *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (collecting cases declining "to apply *Sonner* to bar UCL claims for injunctive relief" because damages are "insufficient to deter a defendant from engaging in an [unfair or unlawful] conduct"). That is because money damages for past harm is an inadequate remedy for future harm. *See Warren v. Whole Foods Mkt. California, Inc.*, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022) (holding *Sonner* is no bar "because the injunctive relief that Plaintiffs request 'is prospective' and their 'remedy at law, damages, is retrospective.'").

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union Street, Suite 200
San Francisco, CA 94123
(415) 788-4220

Plaintiffs here seek to prevent Defendants from continuing to disrupt WordPress.org infrastructure and the contractual relationships that depend on it. ¶¶ 147-48. In the absence of a permanent injunction, Defendants will resume their attempts to harm WPE customers, and Plaintiffs "will have no option but to terminate their relationships with WPE because of the danger Defendants' unlawful and unfair business practices pose." ¶ 147.

Equitable relief is particularly appropriate in light of this Court's findings in the companion case, *WPEngine, Inc. v. Automattic Inc.*, No. 24-cv-06917-AMO, 2024 WL 5077610, at *14 n.17 (N.D. Cal. Dec. 10, 2024). There, in issuing a preliminary injunction, the Court concluded that maintaining stability across the WordPress ecosystem served the public interest given the widespread impact of Defendants' conduct on millions of websites. *Id.*

Absent permanent equitable relief, Defendants remain free to resume the same disruptive conduct that prompted the injunction—conduct that threatens ongoing harm to Plaintiffs, class members, and the broader WordPress ecosystem. Because damages cannot prevent future disruption to Plaintiffs' websites and businesses, their UCL claim should proceed in the alternative to damages.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion to dismiss on all grounds. If the Court grants any portion of the motion, Plaintiffs respectfully request leave to amend.

Dated: March 10, 2026

*/s/ Amber L. Schubert*

**SCHUBERT JONCKHEER & KOLBE LLP**
ROBERT C. SCHUBERT (S.B.N. 62684)
rschubert@sjk.law
AMBER L. SCHUBERT (S.B.N. 278696)
aschubert@sjk.law
DANIEL L.M. PULGRAM (S.B.N. 354569)
dpulgram@sjk.law
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220

**TYCKO & ZAVAREEI LLP**
SABITA J. SONEJI (S.B.N. 224262)
ssoneji@tzlegal.com
1970 Broadway, Suite 1070

Oakland, California 94612
Telephone: (510) 254-6808

*Counsel for Plaintiffs*