JOSEPH R. ROSE, SBN 27902
    jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

KAHN A. SCOLNICK, SBN 228686
    kscolnick@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

ANDREW M. KASABIAN, SBN 313210
    akasabian@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800

JOSH A. KREVITT, SBN 208552
    jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:   650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER (admitted pro hac vice)
    osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:   212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendants*
*Automattic Inc. and Matthew Charles Mullenweg*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RYAN KELLER and SHARON SCHANZER, individually and on behalf of their businesses, KELLER HOLDINGS LLC (d/b/a SecureSight) and RLDGROUP, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>        Defendants. | CASE NO. 3:25-CV-01892-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Hearing:**<br>Date:        June 4, 2026<br>Time:        2:00 p.m.<br>Dept:        Courtroom 10<br>Judge:      Araceli Martinez-Olguin |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ...................................................................................................................... 2

     A.   Plaintiffs lack Article III standing to bring suit. ......................................................... 2

     B.   Plaintiffs fail to allege that Defendants knew about, intended to interfere with, or did interfere with their WP Engine contracts.............................................................. 6

     C.   Plaintiffs do not sufficiently plead their claim for prospective economic relations. ..................................................................................................................... 11

     D.   Plaintiffs lack statutory standing under the UCL because they do not allege they "lost money or property."........................................................................................ 12

     E.   Restitution is not available to Plaintiffs under the UCL. ........................................... 13

     F.   The UCL claim also fails because Plaintiffs alleged adequate remedies at law. ........ 14

III. CONCLUSION ................................................................................................................. 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Systems, Inc. Privacy Litigation*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................................4

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005).........................................................................................7, 8

*Antman v. Uber Techs., Inc.*,
2015 WL 6123054 (N.D. Cal. Oct. 19, 2015)....................................................................3

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011)..............................................................................................5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......................................................................................................3, 5

*Coleman v. Mondelez International Inc.*,
554 F. Supp. 3d 1055 (N.D. Cal. 2021) ...........................................................................14

*Collyer v. Catalina Snacks Inc.*,
712 F. Supp. 3d 1276 (N.D. Cal. 2024) ...........................................................................15

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
479 F.3d 1099 (9th Cir. 2007)..........................................................................................11

*Ervine v. Desert View Reg'l Med. Ctr. Holdings*,
LLC, 753 F.3d 862 (9th Cir. 2014) ....................................................................................5

*Greenstein v. Noblr Reciprocal Exchange*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) .............................................................................4

*Guaranty Tr. Co. v. York*,
326 U.S. 99 (1945) ............................................................................................................14

*IntegrityMessageBoards.com v. Facebook, Inc.*,
2020 WL 6544411 (N.D. Cal. Nov. 6, 2020)....................................................................14

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134 ................................................................................................................13

*Lanovaz v. Twinings N. Am., Inc.*,
726 F. App'x 590 (9th Cir. 2018) .......................................................................................5

*Lopez v. Mead Johnson Nutrition Co.*,
2025 WL 895213 (N.D. Cal. Mar. 24, 2025)....................................................................14

*In re MacBook Keyboard Litig.*,
2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)...................................................................14

*Margolis v. Apple Inc.*,
777 F. Supp. 3d 1060 (N.D. Cal. 2025) ...........................................................................14

Gibson, Dunn &
Crutcher LLP

ii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Mayfield v. United States*,
  599 F.3d 964 (9th Cir. 2010)................................................................................................5

*Mehr v. FIFA*,
  115 F. Supp. 3d 1035 (N.D. Cal. 2015) ...............................................................................5

*Moog Inc. v. Skyryse, Inc.*,
  2023 WL 3432213 (C.D. Cal. Apr. 14, 2023) ...............................................................9, 11

*Moore v. Apple, Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) .................................................................................8

*PG&E Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990) ..................................................................................................7, 10

*Pirozzi v. Apple, Inc.*,
  966 F. Supp. 2d 909 (N.D. Cal. 2013) ...............................................................................12

*Quelimane Co. v. Stewart Title Guar. Co.*,
  19 Cal. 4th 26 (1998) ...........................................................................................................9

*Ramona Manor Convalescent Hospital v. Care Enterprises*,
  177 Cal. App. 3d 1120 (1986).............................................................................................8

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
  769 F. Supp. 3d 1067 (N.D. Cal. 2025) ............................................................................11

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
  2014 WL 524076 (N.D. Cal. Feb. 6, 2014)........................................................................11

*Sebastian Int'l, Inc. v. Russolillo*,
  162 F. Supp. 2d 1198 (C.D. Cal. 2001)...............................................................................8

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
  521 F. Supp. 3d 929 (S.D. Cal. 2021) ...............................................................................12

*Song v. Drenberg*,
  2019 WL 1998944 (N.D. Cal. May 6, 2019) .....................................................................11

*Steiner v. Vi-Jon Inc.*,
  723 F. Supp. 3d 784 (N.D. Cal. 2024) ...............................................................................15

*Swipe & Bite, Inc. v. Chow*,
  147 F. Supp. 3d 924 (N.D. Cal. 2015) .......................................................................6, 7, 12

*Trew v. Volvo Cars of N. Am., LLC*,
  2006 WL 306904 (E.D. Cal. Feb. 8, 2006).........................................................................13

*Trindade v. Reach Media Grp., LLC*,
  2013 WL 3977034 (N.D. Cal. July 31, 2013).............................................................6, 9, 12

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Troyk v. Farmers Grp. Inc.*,
171 Cal. App. 4th 1305 (2009)..................................................................................................13

*Valiente v. Simpson Imports, Ltd.*,
717 F. Supp. 3d 888 (N.D. Cal. 2024) .....................................................................................14

*Vascular Imaging Prof'ls, Inc. v. Digirad Corp.*,
401 F. Supp. 3d 1005 (N.D. Cal. 2019) ...................................................................................12

*Wilson v. Loew's Inc.*,
142 Cal. App. 2d 183 (1956)....................................................................................................11

*Youst v. Longo*,
43 Cal. 3d 64 (1987) ................................................................................................................11

Gibson, Dunn &
Crutcher LLP

## I.     INTRODUCTION

Plaintiffs' Opposition confirms what Defendants' Motion demonstrates: despite multiple opportunities and clear guidance from this Court, Plaintiffs still cannot plead a cognizable claim. Rather than curing the defects identified in the Court's prior order and addressing the many issues raised by Defendants that the Court had no occasion to address, Plaintiffs attempt to repackage the same theories—unsupported standing, speculative harms, and conclusory interference allegations—while urging this Court to reconsider or dilute the very standards it has already applied.

At bottom, Plaintiffs' case depends on two alleged Article III injuries: a claimed "benefit-of-the-bargain" loss arising from contracts with a non-party (WP Engine), and self-imposed "mitigation costs" incurred in response to speculative fears of future harm. Neither establishes Article III standing. Plaintiffs still fail to plead what their contracts actually promised, how those promises were breached, or how any alleged shortfall was traceable to Defendants rather than WP Engine's own admitted failures. And voluntary expenditures undertaken to guard against a hypothetical scenario—particularly where no imminent harm exists—cannot manufacture standing. Plaintiffs also make no effort in their Opposition to identify an imminent risk of harm that warrants injunctive relief.

Plaintiffs' tortious interference claims fail for an additional, independent reason: they do not plausibly allege that Defendants knew about, intended to interfere with, or actually disrupted Plaintiffs' contracts or prospective business relationships. The Court has already drawn—and Plaintiffs again ignore—the critical distinction between generic knowledge that WP Engine has customers and specific knowledge that Plaintiffs were WP Engine's customers. An unadorned, publicly available list of domain names does not establish awareness of who owns those domains, whether contracts exist, or what any such contracts require. Nor can Plaintiffs plausibly allege disruption by making vague references to service-level concepts untethered from any pleaded contractual obligations.

The UCL claim also fails to address the deficiencies previously identified by Defendants. Speculative harms and voluntary expenses are not "lost money or property," restitution is unavailable where Defendants obtained no money from Plaintiffs, and Plaintiffs do not—and cannot—plead the absence of an adequate remedy at law.

This case has now reached the point where further amendment would be futile. The Court has

told Plaintiffs what is required. They have not and cannot plead it. The Court should grant Defendants' Motion and dismiss the Second Amended Complaint with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs lack Article III standing to bring suit.

Plaintiffs claim that they suffered a cognizable injury in fact because they didn't receive the benefit of the bargain with non-party WP Engine and because they voluntarily incurred mitigation costs. Neither satisfies Article III standing, and they certainly do not establish standing to seek prospective injunctive relief.

***Benefit of the Bargain.*** Plaintiffs' primary contention is that they paid for hosting services with WP Engine but did not receive "the full benefit of those services" and therefore suffered an Article III injury. Opp. 6–7. But this cursory statement is insufficient, and they don't sufficiently allege how they failed to receive the benefit of the bargain.

Plaintiffs' allegations demonstrate why such vague assertions are deficient. Fundamentally, Plaintiffs contend they had contracts for services with WP Engine and those unspecified services were not provided as promised. For example, they heavily rely on the allegation that they were "promise[d] a certain level of website uptime, generally 99.95% of the time with certain exclusions for maintenance." SAC ¶ 49. But Plaintiffs have fallen short of plausibly alleging they did not receive the benefit of the bargain, on several fronts:

- Website uptime is typically a reference to when a website is available to users in a given period. Nothing in Plaintiffs' allegations suggests, let alone plausibly alleges, that their website was ever "down" or inaccessible to users (or that their contract defines uptime differently).
- Plaintiffs do not allege how uptime is calculated or the measurement period.
- Plaintiffs do not allege what *their* specific agreement promised, only that WP Engine "generally" offers 99.95% uptime.
- Plaintiffs do not allege what the "exclusions for maintenance" includes.
- Plaintiffs do not allege how long (if at all) their websites were down such that they fell below whatever promised uptime metric.

Of course, Plaintiffs have long had an easy solution—attach their contracts to the complaint or actually

allege the specific contract terms and how they weren't met. But they've declined to do so, repeatedly. Absent this information, they cannot allege they were denied the benefit of the bargain.

In addition, Plaintiffs' benefit-of-the-bargain theory creates a traceability problem: any failure to obtain the benefit of the bargain was likely due to WP Engine's failure to create a suitable "mirror" of WordPress.org. As Plaintiffs concede, Defendants allowed WP Engine to mirror the WordPress.org repository in late September 2024 before re-establishing the block on October 1, 2024. SAC ¶¶ 8, 51. WP Engine was, in fact, "able to mirror many parts of the original WordPress.org system," but Plaintiffs concede that WP Engine's mirror was poorly created: "the mirrored servers could not provide service equivalent to the standard" that existed before. *Id.* ¶ 52. Therefore, even if the Court credits Plaintiffs' vague allegations regarding the alleged services they were expected to be provided by WP Engine, the fact remains that it was *WP Engine* that was given the opportunity to mirror the WordPress.org system, did so deficiently, and therefore was the cause of any alleged benefit-of-the-bargain harm.

***Mitigation Costs.*** Speculative, non-monetary harms and voluntary expenditures do not constitute a cognizable injury in fact. Mot. 4–5. Plaintiffs take no issue with the rule that *non-monetary* harms are not a cognizable injury in fact; they instead claim the mitigation costs they incurred constitute injury in fact.

Plaintiffs ignore the Supreme Court's directive that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Courts have thus concluded that generally "mitigation expenses do not qualify as injury." *Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015); *see* Mot. 5 (citing cases). That is exactly what Plaintiffs are claiming here. They engaged in supposed "mitigation efforts"—purchasing unused alternative web hosting and giving a 50% client discount—that were self-inflicted based on hypothetical future harm. Plaintiffs notably do not address *Clapper* or its progeny.

Even the cases that Plaintiffs rely on for the proposition that mitigation expenses constitute an injury-in-fact do not help them. In Plaintiffs' cited cases, there was an independent injury in fact—an imminent risk (or actual) misuse of sensitive, stolen personal information—and subsequent mitigation

efforts were therefore also injuries in fact. As the court in *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014), explained, mitigation costs in these circumstances constitute an *additional* injury-in-fact because the "future harm being mitigated"—a risk that plaintiffs' "personal data will be misused by the hackers who breached" defendants' network—was "itself [] imminent." *Id.* at 1215–17. Therefore, even in the unique circumstance of data-breach cases, mitigation expenses can constitute an injury in fact *only if* "the risk of identity theft" is "real and imminent, and not speculative" and the "mitigation costs were reasonable and necessary." *Greenstein v. Noblr Reciprocal Exchange*, 585 F. Supp. 3d 1220, 1230 (N.D. Cal. 2022); *see In re Adobe*, 66 F. Supp. 3d at 1217 ("[T]he future harm being mitigated must itself be imminent.").

Here, there neither is an independent "real and imminent" harm that needed to be mitigated nor were the voluntary mitigation costs reasonable and necessary. First, there is no "certainly impending" injury: Defendants are prohibited from blocking WP Engine's access to WordPress.org while the separate WP Engine litigation is ongoing and WP Engine was able to mirror WordPress.org, and therefore any mitigation efforts to address this speculative, non-imminent injury is also not a cognizable injury in fact. Second, the mitigation costs were not necessary. Keller admits he never used the alternative hosting services he preemptively purchased, even though more than two months passed between when Defendants first blocked WP Engine's access and when the Court enjoined Defendants from maintaining that block.[1] And Schanzer simply alleges that she "had to" provide a 50% discount to a client without explaining why she actually had to do so; for example, was she going to lose that client absent that discount and what did Defendants actually do to make her provide that discount? Or did she merely decide to provide that discount to accommodate a client? In the absence of an imminent risk of harm or any explanation as to why these costs were "reasonable and necessary," Plaintiffs "cannot manufacture standing through costs" they incurred. *Greenstein*, 585 F. Supp. 3d at 1230.

***Standing for Injunctive Relief.*** In response to Plaintiffs' broad requested injunctive relief—demanding that Defendants provide non-party WP Engine access to WordPress.org repository in perpetuity even though WP Engine and Defendants are in separate litigation about this very issue—

---

[1] Although not before the Court at the motion to dismiss stage, it appears Keller received a refund on the entire amount of the alternate hosting service within a few days of initial purchase.

Gibson, Dunn & Crutcher LLP

4

DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 3:25-CV-01892-AMO

Defendants' Motion argued that Plaintiffs "lack standing for injunctive relief because they do not plausibly allege a 'real and immediate threat of repeated injury'" given the pending injunction in the separate litigation. Mot. 5. In response, Plaintiffs say nothing. Instead of identifying an injury in fact warranting injunctive relief, Plaintiffs focus on just two alleged injuries in fact based on *past* conduct: prior deprivation of the benefit of their bargain with WP Engine and past mitigation costs. Opp. 6–7. But it is "not the presence . . . of a past injury that determines Article III standing to seek injunctive relief; it is the imminent 'prospect of future injury.'" *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) (citation omitted). Therefore, these past injuries do not demonstrate standing for injunctive relief.

Nor will Plaintiffs be able to allege any imminent prospect of future injury upon further amendment. Given the injunction in the *WP Engine v. Automattic* case, which has been in place since before this action was filed, there is no "ongoing" "policy" that establishes a real and immediate threat warranting injunctive relief. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 948 (9th Cir. 2011); *see Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) ("A 'some day' intention— without any description of concrete plans, or indeed even any specification of *when* the some day will be—does not support a finding of the 'actual or imminent' injury that Article III requires."). Any claim of future harm rests on, at best, "highly speculative fear" that "does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410. To leave the realm of speculative fear, (1) the court would have to resolve the separate litigation and injunction in a manner that allows Defendants to prevent WP Engine from accessing WordPress.org; (2) Defendants would have to decide that they want to, and are allowed to, prohibit WP Engine from accessing WordPress.org; and (3) all of this must happen "imminently." This is rank "speculation or subjective apprehension about future harm" that does not support standing. *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010); *see, e.g.*, *Mehr v. FIFA*, 115 F. Supp. 3d 1035, 1057–58 (N.D. Cal. 2015) (soccer players did not have standing to seek injunctive relief because the claimed risk of injury was "speculative and nebulous, rather than being 'certainly impending'").

Gibson, Dunn & Crutcher LLP

5

**B.      Plaintiffs fail to allege that Defendants knew about, intended to interfere with, or did interfere with their WP Engine contracts.**

Plaintiffs attempt to salvage their tortious interference with contract claim by pointing to the wordpressenginetracker.com website, alleging in broad terms what their unattached contracts with WP Engine supposedly require, and claiming they had to perform services that WP Engine was supposed to have performed. These arguments fundamentally misunderstand the governing legal standards and fail to cure the deficiencies this Court previously identified.

***Knowledge.*** The Court dismissed Plaintiffs' tortious interference claims because they had not "allege[d] facts that plausibly show[ed] Defendants were aware of Plaintiffs' contracts with WPE, not just that Defendants were aware WPE had contracts with its customers, which happened to include Plaintiffs." Dkt. 51 at 4. The SAC's new allegations do nothing to change the analysis.

Plaintiffs contend the mere existence of a website listing domain names hosted by WP Engine plausibly establishes Defendants' knowledge of *Plaintiffs'* contracts with WP Engine. Opp. 8–9. But Plaintiffs referred to that same website already in the prior amended complaint, where they alleged Defendants "publish[ed] a list of WPE customers and their websites, including websites owned by Plaintiffs" as establishing evidence of knowledge. FAC ¶ 9; *see* Dkt. 51 at 2 (identifying this allegation). Yet as before, this argument again conflates Defendant's awareness that WP Engine generally "had contracts with its customers," with Defendants' specific "aware[ness] of Plaintiffs' contracts with" WP Engine, Dkt. 51 at 4—the very distinction this Court drew in dismissing the First Amended Complaint. And, critically, the tracker is a list of domain names only. Therefore, Plaintiffs' arguments about Defendants "monitor[ing]" WP Engine-hosted websites and "track[ing] outages" are empty statements, Opp. 8—even if true, Plaintiffs do not allege Defendants could identify *who* owns the domain names, *who* entered the contract with WP Engine, or what the contract says.

The fact that Defendants reached out to several dozen WP Engine customers does not bridge the knowledge gap, either. Opp. 8. Plaintiffs attached the domain tracker list to their SAC—it is 800,000 domains long. Having the identities of a handful of customers does not establish (let alone plausibly establish) that Defendants knew the identities of each of the hundreds of thousands of websites that they believed used WP Engine as a hosting service. Thus, the claim fails because there are no

Gibson, Dunn & Crutcher LLP

allegations about "knowledge of any specific contracts or details about the contracts." *Trindade v. Reach Media Grp., LLC*, 2013 WL 3977034, at *15 (N.D. Cal. July 31, 2013). In *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015), for instance, the plaintiff had alleged that, as a general matter, the defendant knew the plaintiff had agreements with "contractors, vendors, employees, and customers"—just like Plaintiffs allege here. Yet the court found those generalized facts insufficient. The plaintiff needed to allege "facts showing … knowledge of the agreements with the[] specific customers [in the complaint] or of the valid contract with [the plaintiff's engineer]." *Id.* (emphasis added).

Plaintiffs' reliance on *PG&E Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990), for the proposition that they need not plead the contract terms because "it is the contractual relationship, not any term of the contract, which is protected," also misapprehends that decision. Opp. 10. The passage Plaintiffs cite was articulated in the context of explaining that interference with at-will contracts is actionable. *PG&E*, 50 Cal. 3d at 1127. In other words, the court was not discussing the knowledge element of the tort—it was addressing whether inducing termination is an actionable interference. Nothing in *PG&E* suggests that a plaintiff can satisfy the knowledge requirement by alleging that a defendant knew contracts generally existed somewhere. To the contrary, *Swipe & Bite,* 147 F. Supp. 3d at 935, establishes the applicable standard. *Supra* 6–7. Plaintiffs' allegations here fall squarely within *Swipe & Bite*'s limits: a general allegation that Defendants knew WP Engine had customers (and that Plaintiffs happened to be among them) does not satisfy the knowledge element absent facts demonstrating Defendants' awareness of *Plaintiffs'* specific contracts.

Plaintiffs also contend that limiting liability to instances where Defendants know the "identity of each website owner" and the "terms of each hosting contract" has no "merit." Opp. 9. Whether Plaintiffs agree with it or not, the Court already adopted this reasoning: "To prevail on their interference claims in this action, Plaintiffs must allege facts that plausibly show Defendants were aware of Plaintiffs' contracts with WPE, not just that Defendants were aware WPE had contracts with its customers, which happened to include Plaintiffs." Dkt. 51 at 4. Doubling down on their collateral attack on the Court's prior order, they also attempt to re-litigate the meaning of *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005). This Court has already explained that it is "misplaced" to argue

that, under *Altera Corp.*, a defendant "need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship." Dkt. 51 at 4. Nonetheless, Plaintiffs attempt to rely on that language again, ignoring this Court's point that *Altera* "reiterated the knowledge requirement that applies here" (*id.*): "[Plaintiffs] must prove not only that [Defendants] knew a contract existed, but must prove … that a valid contract existed. The terms of a contract on paper, with no evidence that any parties agreed to those terms, do not prove the existence of a valid contract." 424 F.3d at 1092 (emphasis added).

Plaintiffs' reliance on *Ramona Manor Convalescent Hospital v. Care Enterprises*, 177 Cal. App. 3d 1120, 1133–34 (1986), is also misplaced. Opp. 9. There, a defendant decided to hold over beyond the termination of its lease "with the knowledge that such action would frustrate the legitimate contractual expectations [between the plaintiff and] a specific, albeit unnamed, new lessee." *Ramona*, 177 Cal. App. 3d at 1133. That is akin to Defendants being aware that there is a single domain that uses WP Engine's services and there is a contract between that domain holder (even if unnamed) and WP Engine. Here, by contrast, there is no specific, single contract at issue—only the general allegation that Defendants knew there are hundreds of thousands of domains (not necessarily customers) that use WP Engine's services, as reflected on an anonymous list. This is not enough to establish Defendants' knowledge of a contractual relationship between two domain holders and WP Engine within a list of 800,000 domains.

Citing another case that did not persuade the Court in the last round of briefing, Plaintiffs argue that giving Defendants a representative list of affected contracting parties is sufficient to put them "on notice" of specific contractual relationships their conduct would disrupt. Opp. 10 (citing *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001)). *Sebastian* is inapposite because there, the plaintiff "informed" the defendant of the contract information directly by "provid[ing] the [d]efendants with a representative list" of third parties with whom the plaintiff had contractual relations and specific information about those contracts, including the distribution scheme that was allegedly interfered with. *Sebastian*, 162 F. Supp. 2d at 1204. Likewise, in *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1203 (N.D. Cal. 2014), the plaintiff "allege[d] that she informed [the defendant]" of the switch in service providers that prompted the defendant's knowledge. The common requirement in these cases

is notice *of the contracts*. Here, Plaintiffs assume that because there was a list of 800,000 domain names, Defendants knew of their contracts. This conclusion is empty. This assumption—without more—is not sufficient under the federal pleading standards and California law. Plaintiffs' pleadings lack any allegations that such notice was given to Defendants, by Plaintiffs or otherwise.

Because Plaintiffs fail, yet again, to allege that Defendants knew of the unidentified contracts or the existence of any concrete contractual promise, they fail to plausibly allege knowledge. This Court should again dismiss this claim, this time with prejudice, on this basis alone.

***Intent.*** Plaintiffs' intent allegations fail for the same reason as their knowledge allegations: a party cannot intend to interfere with a contract when it does not know about that agreement. Without that knowledge, the requisite intent is lacking. *See Trindade*, 2013 WL 3977034, at *15–16. Plaintiffs respond that the primary purpose need not be the interference, instead interference can be sufficiently alleged when it is "certain or substantially certain to result." Opp. 11 (citing *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998)). The consequence of the act must still be "known to [the defendant] to be a necessary consequence of his action." *Quelimane*, 19 Cal. 4th at 56.

The SAC does not "easily satisf[y] this standard." Opp. 12. Plaintiffs' allegations show only that Defendants intended to harm WP Engine generally, not that they intended to disrupt any specific contract, let alone Plaintiffs' contracts. Similarly, general marketing geared toward WP Engine's customers to "induce customers to abandon" WP Engine does not change this result because offering buyouts simply gives customers a choice to *choose* to leave. *Id*. But even if it did, Plaintiffs do not allege that WP Engine marketed or solicited *them* and they remain WP Engine customers today.

***No disruption.*** The SAC also fails to plausibly allege disruption of Plaintiffs' contracts with WP Engine. Plaintiffs do not dispute that the "central inquiry" to determine disruption is whether the allegations "sufficiently indicate[] the contractual rights that are at issue." *Moog Inc. v. Skyryse, Inc.*, 2023 WL 3432213, at *20 (C.D. Cal. Apr. 14, 2023). Nor can they. Determining the rights at issue is a factual predicate necessary to resolve *how* Defendants' conduct allegedly disrupted those same benefits or made performance more costly or difficult.

Plaintiffs continue to wave their hands and refer broadly to the SLA. They again make passing references to "generally 99.95%" uptime "with certain exclusions"—and how there were "multiple

Gibson, Dunn & Crutcher LLP

9

days of severely degraded services" that exceeded the SLA. SAC ¶ 49. As explained above, this cursory allegation is deficient and leaves more questions than answers. *See supra* 2–3. Similarly, Plaintiffs make passing references to their plans offering "daily backups," "security patching," and "plugin risk scans," SAC ¶¶ 73, 87,[2] but the reader is left to guess what those technical terms *within* Plaintiffs' own contracts mean. Absent from these allegations is any meaningful contractual language that outlines: (1) that WP Engine was obligated to deliver these functionalities to Plaintiffs; (2) how those broad categories are defined; (3) how the contractual obligations are tracked or monitored; (4) how they are measured in a defined manner or metric; and (5) how these obligations were not met. Additionally, instead of tying these allegations to any actual security vulnerabilities or damages, Plaintiffs only point to speculative "concerns" about what might happen or "could" occur. *E.g.*, *id.* ¶ 77. Absent these concrete details, Plaintiffs cannot plausibly allege that their contracts were disrupted.

It makes no difference if it is the contractual relationship, not any particular term, that is protected from interference. *See* Opp. 14 (citing *PG&E*, 50 Cal. 3d at 1127); *supra* 7. Even assuming that is the standard, Plaintiffs fail to plausibly allege a contractual relationship that was disrupted, as Plaintiffs continue to contract with WP Engine and utilize its services, and Plaintiffs' customers continue to contract with Plaintiffs.

The only indication of *any* actual disruption is asserted by Plaintiffs for the first time in their Opposition Brief. They argue that Schanzer was forced to provide a 50% discount to "a small local newspaper" because "the disruption prevented the site from functioning properly." Opp. 4 (citing SAC ¶ 84). This does not constitute disruption between Schanzer and *WP Engine* and, in any event, this was a voluntary decision by Schanzer to offer the discount. *See supra* 4.

At the end of the day, this is a question of plausibility, and Plaintiffs fall short. Courts do not require magic words or formulas, but they do require enough factual content to make the alleged contractual rights and disruption intelligible. This is their complaint and these are their contracts—a plaintiff cannot get by on reciting technical terms divorced from any specific contract, followed by a conclusory statement that some contract was disrupted.

---

[2] Plaintiffs also cite to SAC paragraph 55, which has nothing to do with the alleged services that WP Engine provided. *See* Opp. 13.

Gibson, Dunn &
Crutcher LLP

## C.    Plaintiffs do not sufficiently plead their claim for prospective economic relations.

The prospective-economic-relations claim is even weaker than the contractual-interference claim. To state a claim for intentional interference with prospective economic relations, Plaintiffs must assert, among other elements, "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit," "actual disruption of the relationship," and "economic harm proximately caused by the acts of the defendant." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).

Plaintiffs cite *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987) for the proposition that a plaintiff need only allege a relationship with probability of future economic benefit, not a finalized transaction. Opp. 14. But Plaintiffs do not meet that standard. Keller alleges that an existing client was *considering* "adding a new website." *See* SAC ¶ 81. This is too speculative. Keller omits the client's identity, any terms, timing, or scope of the contemplated new business beyond a "new website," and any non-conjectural facts showing a probability of consummation. Even more importantly, Keller admits that he lost this vague prospective opportunity because he—not Defendants—advised the client about the risk of problems, after which the client "elected not to" proceed. *Id.* ¶ 10. As Defendants' cited authority explains, Keller's singular allegation does not amount to anything more than a "hope of future transactions," which falls short of one where there is a "probability of future economic benefit." *Song v. Drenberg*, 2019 WL 1998944, at *7 (N.D. Cal. May 6, 2019); *see Wilson v. Loew's Inc.*, 142 Cal. App. 2d 183, 190 (1956), ("[I]t must appear that such [prospective] contract or relationship would otherwise have been entered into."); *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2014 WL 524076, at *14 (N.D. Cal. Feb. 6, 2014). Allegations about what "could" happen in the future, even regarding relationships with current customers, is not sufficient. *Moog*, 2023 WL 3432213, at *9. Notably, Plaintiffs have no response to any of this authority.

As for Schanzer, the Court asked for additional "factual content" that would suggest a reasonable probability that a "prospective economic advantage would have been realized but for defendant's interference." Dkt. 51 at 7 (citation omitted). Schanzer failed to provide that content and Plaintiffs do not attempt to defend this claim as to her, "implicitly conced[ing] that" this claim fails as to Schanzer. *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1099 (N.D. Cal.

Gibson, Dunn & Crutcher LLP

2025).

Nor do Plaintiffs plausibly allege that Defendants had any knowledge of any prospective relationships. Mot. 11. Plaintiffs' response is illogical: it was "foreseeable" that Defendants would be interfering with a prospective economic relationship because (1) Defendants had a list of WP Engine-hosted websites, (2) Defendants targeted WP Engine customers, and (3) Plaintiffs rely on WP Engine hosting websites for Plaintiffs' customers. Opp. 15. Those dots don't connect. Even if Plaintiffs' assertions were correct, there is nothing that remotely suggests that Defendants knew Plaintiffs were engaged in a business where they relied on WP Engine to host websites. And this also calls for an adoption of the very type of defendant "knew or should have known" allegations that courts conclude are far too conclusory to survive dismissal. *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021); *see also, e.g.*, *Vascular Imaging Prof'ls, Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1013 (N.D. Cal. 2019) (dismissing claim where there were no non-conclusory allegations of defendants' "knowledge of any relationship" between plaintiff and prospective customers); *Swipe & Bite*, 147 F. Supp. 3d at 935 (alleging defendants "were both aware of [plaintiff's] prospects" did not suffice); *Trindade*, 2013 WL 3977034, at \*17 (dismissing claim where plaintiff failed to allege "knowledge of any specific relationships, rather than just a generalized knowledge that [plaintiff] was in the business of contracting" with others). The claim should be dismissed.

**D.    Plaintiffs lack statutory standing under the UCL because they do not allege they "lost money or property."**

Speculative, non-monetary harm and voluntary expenses are not "lost money or property" sufficient to support a UCL claim. Mot. 12–13. Because Plaintiffs cannot demonstrate Article III standing and UCL standing is "more stringent," they lack statutory standing under the UCL. *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 919 (N.D. Cal. 2013).

Instead, Plaintiffs try to salvage their claim by claiming they did not receive the benefit of the bargain. Opp. 16. This fails for the same reasons discussed above—while they claim that WP Engine promised to provide some broad and ambiguous "hosting services," *id.*, they don't actually explain what WP Engine specifically promised, how those specific services were degraded or made unavailable, and how those "failures" were attributable to Defendants (as opposed to WP Engine). *See*

*supra* 2–3. Plaintiffs have therefore not adequately alleged a "benefit of the bargain theory."

Plaintiffs' final effort to also save their mitigation expenses also fails. They continue their prior conclusory refrain that these mitigations expenses were mandatory, as opposed to voluntary, even though the allegations universally support: (1) Keller *chose* to purchase alternative web hosting services he *never used* based on a *fear* that he might need to change platforms in the future; and (2) Schanzer decided to offer a 50% discount because of inconvenience to the client, not because of any requirement (and certainly not a requirement caused by Defendants). *See supra* 3–4.

**E.    Restitution is not available to Plaintiffs under the UCL.**

Plaintiffs next claim entitlement to restitution because there is some unidentified "money or property in which" they had a "vested ownership interest," even if they did not pay this money directly to Defendants. Opp. 18–19. This misstates the law and they are not entitled to restitution.

As Plaintiffs' cited authority explains, restitution is available to "compel[] a UCL defendant to return money obtained through an unfair business practice." *Trew v. Volvo Cars of N. Am., LLC*, 2006 WL 306904, at *2 (E.D. Cal. Feb. 8, 2006).[3] That is, restitution is available from a defendant who "has been unjustly enriched at the expense of another," even if the defendant was not "the direct recipient" of the funds from the plaintiff. *Troyk v. Farmers Grp. Inc.*, 171 Cal. App. 4th 1305, 1339–40 (2009).

While Plaintiffs may have had a vested interest in money paid to WP Engine, the fundamental problem they face is that they cannot show Defendants obtained any money. *See* Mot. 14. Plaintiffs' cases all involve instances where a plaintiff paid a third party and the defendant was unjustly enriched because of that payment, such as where a plaintiff pays a subsidiary of a defendant, *Troyk*, 171 Cal. App. 4th at 1340–41; or a plaintiff pays a mechanic to replace a car part and the mechanic must purchase that part from the defendant, *Trew*, 2006 WL 306904, at *3. On the other hand, the SAC does not allege that Defendants made even a single penny (directly or indirectly) off of Plaintiffs and therefore there is no "money obtained" by Defendants that must be "return[ed]." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149. Nor can they. Plaintiffs concede that Defendants' services are "free and open source" and all plugins are "freely available." SAC ¶ 32. Therefore, Plaintiffs have not alleged

---

[3] Plaintiffs incorrectly cite this case as *Trew v. Volvo Cars of N. Am., LLC*, 2006 WL **80495** (E.D. Cal. **Feb. 7**, 2006). *See* Opp. 19.

Gibson, Dunn &
Crutcher LLP

that they are entitled to restitution and, in fact, have all but demonstrated they *cannot* allege entitlement to restitution.

### F.    The UCL claim also fails because Plaintiffs alleged adequate remedies at law.

Plaintiffs last contend that it's enough to just plead their UCL claim in the alternative because some courts in this District have declined to dismiss equitable claims. They are mistaken.

First, it is beyond dispute that Plaintiffs do not allege how restitution would go beyond the general and punitive damages they seek. This alone precludes UCL-based restitution. *See* Mot. 14–15. Plaintiffs' request for injunctive relief fares no better. Despite Plaintiffs' assertion to the contrary, "nothing about the Ninth Circuit's reasoning indicates that the decision is limited to claims for restitution," and therefore "Plaintiffs are required to allege that they lack an adequate remedy at law in order to seek injunctive relief." *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (citing cases). This reasoning is also consistent with Supreme Court guidance, which has not "draw[n] any distinction among the various forms of equitable relief when requiring the absence of a 'plan, adequate, and complete remedy at law' to obtain it." *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *5 (N.D. Cal. Nov. 6, 2020) (citing *Guaranty Tr. Co. v. York*, 326 U.S. 99 (1945)). Because Plaintiffs "have not established that they have Article III standing to pursue such claims for injunctive relief," they fail to allege inadequate remedies at law. *Margolis v. Apple Inc.*, 777 F. Supp. 3d 1060, 1071 (N.D. Cal. 2025).

Second, Plaintiffs cite a handful of cases for the proposition that they need only say that the UCL claim is pleaded "in the alternative" to survive a motion to dismiss. Opp. 20. While Plaintiffs "may plead alternate theories, . . . even an alternative equitable claim must plead any necessary prerequisite to such a claim," *Lopez v. Mead Johnson Nutrition Co.*, 2025 WL 895213, at *6 (N.D. Cal. Mar. 24, 2025), and none of their cases endorse the broad rule Plaintiffs suggest.

In *Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 907 (N.D. Cal. 2024), for example, the Court declined to dismiss equitable claims because the plaintiff had alleged that she may lack an adequate remedy at law because "the amount of damages recoverable [could be] less than the price premium she paid" and equitable remedies may be "more certain, prompt, and efficient than other legal remedies." *See* Opp. 19. In *Coleman v. Mondelez International Inc.*, 554 F. Supp. 3d 1055, 1065 (N.D.

14

Gibson, Dunn & Crutcher LLP

Cal. 2021), the Court likewise declined to dismiss plaintiff's request for equitable relief because the plaintiff expressly alleged that she "may be entitled to restitution under the UCL, while not entitled to damages under other causes of action" and therefore the allegations "sufficiently plead that 'restitution . . . would be more certain, prompt, or efficient'" than monetary damages. Opp. 20. And their other cases contain no meaningful analysis, let alone explain what the plaintiffs alleged and why those allegations were sufficient. *See, e.g.*, *Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1289 (N.D. Cal. 2024); *Steiner v. Vi-Jon Inc.*, 723 F. Supp. 3d 784, 796 (N.D. Cal. 2024).

Here, however, Plaintiffs do not explain (1) how the damages recoverable could be less than the restitution sought or (2) how any equitable remedies could be more certain, prompt, or efficient, consistent with *Valiente* and *Coleman*. That is, even under the most generous interpretation of *Sonner*, Plaintiffs have not met their burden. All they've alleged is that they "plead this claim for equitable relief . . . in the alternative to their claims for damages." SAC ¶ 140. This is not enough.

### III.    CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Second Amended Complaint with prejudice.

DATED: March 24, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Kahn A. Scolnick*
Kahn A. Scolnick

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

Gibson, Dunn & Crutcher LLP