United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RYAN KELLER, et al.,

    Plaintiffs,

    v.

AUTOMATTIC INC., et al.,

    Defendants.

Case No. 25-cv-01892-AMO

**ORDER RE MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 60

Plaintiffs Ryan Keller and Sharon Schanzer, and their respective businesses, Keller Holdings LLC (d/b/a SecureSight) and RLDGroup, bring this putative class action against Defendants Automattic Inc. and Charles Matthew Mullenweg.  Plaintiffs assert claims for intentional interference with contractual relations, intentional interference with prospective economic relations, and for violation of California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200, based on alleged harm they suffered when Defendants blocked a third-party, WPEngine, Inc. ("WPE"), from accessing WordPress.org.  Plaintiffs are WPE customers who rely on its hosting services to operate their own businesses, and deliver services to their own clients, within the WordPress ecosystem.

Defendants move to dismiss Plaintiffs' second amended complaint under Rule 12(b)(1) for lack of Article III standing and pursuant to Rule 12(b)(6) for failure to state a claim.  The motion is fully briefed and suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b).  Accordingly, the hearing currently set for July 30, 2026, is **VACATED**.  Having reviewed the parties' papers, the arguments therein, and the relevant legal authority, the Court **DENIES** the motion **IN PART** and **GRANTS** the motion **IN PART** for the reasons set forth below.  This Order assumes familiarity with Plaintiffs' factual allegations and the procedural history of this case.

United States District Court
Northern District of California

**DISCUSSION**

The Court first takes up the threshold issue of Article III standing that Defendants raise under Rule 12(b)(1), before turning to those they raise under Rule 12(b)(6).

### A.    Article III Standing

To establish standing under Article III of the Constitution, Plaintiffs "must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431 (citations omitted). "For injunctive relief, which is a prospective remedy, the threat of injury must be actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (internal quotations and citation omitted). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way." *Id.* (internal quotations and citation omitted).

Defendants contend Plaintiffs have to establish Article III standing to assert any of their three claims. Dkt. No. 60 ("Mot.") at 11-12. This argument fails as to Plaintiffs' claims for monetary remedies. Plaintiffs allege they were denied the benefit of their bargain with WPE. Under the Scale Plan Keller purchased from WPE for the yearly fee of $3,300, he was entitled to "(i) automated WordPress and PHP updates, described as 'effortless site management'; (ii) security patching and plugin risk scans; and (iii) fully managed WP, PHP, and MySQL updates." Dkt. No. 57 ("SAC") ¶ 73. All of these services required continuous access to WordPress.org. *Id.* When Defendants blocked WPE's access to the platform, Plaintiff Keller had to perform all of these tasks himself, "which took significant time and expense." *Id.* As a result of Defendants' actions, Plaintiff Keller did not receive the benefit of his bargain with WPE. *Id.* ¶ 76.

Plaintiff Schanzer pays $762.12 per month for a Premium 1 Plan with WPE. *Id.* ¶ 87. That plan offers "(i) automated WordPress & PHP updates and '[e]ffortless site management with

daily backups, one-click staging, automatic WordPress & PHP updates, and simple-to-use portal,' (ii) security patching and plugin risk scans, and (iii) fully managed WP, PHP & MySQL updates as well as access to themes[,]" all of which required continuous access to WordPress.org. *Id.* (modifications in original). When Defendants cut off WPE's access to WordPress.org, Plaintiff Schanzer had to perform all of these functions herself, "which took significant time and expense." *Id.* ¶ 90. She, like Plaintiff Keller, did not receive the benefit of her bargain due to Defendants' conduct. *Id.*

These allegations plausibly plead a concrete economic injury,[1] that is fairly traceable to Defendants' conduct and redressable by this Court. This is sufficient to satisfy Article III standing requirements with respect to Plaintiffs' claims for monetary remedies. *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 905 (N.D. Cal. 2020) ("Generally, where plaintiffs plead that they were economically harmed because they did not receive the 'benefit of the bargain,' plaintiffs have adequately alleged Article III standing") (citations omitted). Defendants' attack on this ground therefore fails.

Defendants challenge to Plaintiffs' Article III standing to seek injunctive relief, Mot. at 12, fares better. They argue that because the Court issued an injunction in the related case brought by WPE, "Plaintiffs lack standing for injunctive relief because they do not plausibly allege a 'real and immediate threat of repeated injury.' " *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Plaintiffs assert that, "[i]n the absence of a permanent injunction, Defendants will resume their attempts to harm WPE customers, and Plaintiffs 'will have no option but to terminate their relationships with WPE because of the danger Defendants' unlawful and unfair business practices pose." Opp. at 27 (citing SAC ¶ 147). They contend "[e]quitable relief is particularly appropriate" given the findings in the related action, where the Court issued a preliminary injunction in part because maintaining "continuity and preventing arbitrary disruption stemming from a corporate dispute is in the public interest." *WPEngine, Inc. v. Automattic Inc.*, No. 24-CV-

---

[1] Plaintiffs also allege they incurred mitigation costs. SAC ¶¶ 68, 71, 84; Dkt. No. 62 ("Opp.") at 13. Because the lost benefit of their bargain with WPE is sufficient to confer standing, the Court thus does not reach the parties' arguments about whether mitigation costs independently establish standing under Article III or statutory standing under the UCL.

06917-AMO, 2024 WL 5077610, at \*16 (N.D. Cal. Dec. 10, 2024).  Here, Plaintiffs claim that without permanent equitable relief, "Defendants remain free to resume the same disruptive conduct that prompted the injunction—conduct that threatens ongoing harm to Plaintiffs, class members, and the broader WordPress ecosystem."  Opp. at 27.  Plaintiffs, however, do not address how they face a "real and immediate threat of repeated injury" while the preliminary injunction issued in the related case remains in effect.  *See generally* Opp.  They have thus failed to establish standing to pursue injunctive relief in this action.

Accordingly, Defendants' motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) is granted, with leave to amend, to the extent Plaintiffs seek injunctive relief.  It is denied to the extent Plaintiffs seek monetary remedies.  The Court now moves to grounds for dismissal that Defendants raise under Rule 12(b)(6) as to Plaintiffs' intentional interference and UCL claims.

### B.      Intentional Interference Claims

#### 1.      <u>Intentional Interference with Contractual Relations</u>

The elements of Plaintiffs' claim for intentional interference with contractual relations are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1191 (9th Cir. 2022) (internal quotations and citation omitted).

Defendants challenge the sufficiency of Plaintiffs' allegations as to the elements of knowledge, intent, and breach or disruption.  Mot. at 12-16.  The Court analyzes each below.

##### a.      *Knowledge*

Plaintiffs have sufficiently pleaded that Defendants knew about their contracts with WPE. As early as November 6, 2024, Defendants published a list of WPE customer websites.  SAC ¶ 101.  While Defendants claim that nothing on that list "indicates who owns those websites," Mot. at 13, Plaintiffs allege that "the technical sophistication required to compile th[e] list demonstrates that Defendants had access and utilized data identifying specific WPE customers[,]"

including "specific identifying information about which domains were hosted on WPE's infrastructure."  SAC ¶ 101.  Indeed, "Defendants had to identify WPE traffic to block it."  *Id.*

The list contained 842,514 different WPE-hosted domains.  *Id.* ¶ 101  "Every single website" that Plaintiff Schanzer "owned or operated appeared on the list."  *Id.* ¶ 103.  Eighteen of the nineteen websites Plaintiff Keller operated appeared on the list.  *Id.*  Defendants "represented publicly that this list represented *every* domain hosted by WPE[] *and* that 'you can see the decline every day' for *each* day since September 21, 2024."  *Id.* ¶ 105.  These were websites Defendants deemed "ready for a new home."  *Id.* ¶ 107.  Defendants used the list to track how many customers WPE was losing each day, determine whether to provide or restrict access to WordPress.org depending on the website's affiliation with WPE, track the sites that changed web hosts each day (down to the minute), and to poach specific WPE customers.  *Id.* ¶¶ 101, 106, 107, 110, 112.

While Plaintiffs do not allege that Defendants tried to poach them specifically, Plaintiffs have pleaded sufficient facts to support a reasonable inference that Defendants knew they had contracts with WPE.[2]  As Plaintiffs themselves note, "Defendants would not have published Plaintiffs' websites on their own WPE customer list if they did not believe that Plaintiffs were WPE customers."  *Id.* ¶ 108.  Defendants may challenge whether the WPE customer list actually conveys the information necessary to prove knowledge at a later stage.  *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1203 (N.D. Cal. 2014) (finding allegation that wireless service providers update wireless accounts when users switch from Apple to non-Apple devices sufficient to establish support an inference of knowledge and noting "Defendant may contest whether the wireless providers' update or Plaintiff's contact with Apple personnel actually conveyed the relevant information to Apple").  For now, the existing allegations in the second amended complaint are sufficient to establish knowledge for purposes of the Plaintiffs' intentional interference with contractual relations claim.  *See id.*

---

[2] To the extent Defendants contend Plaintiffs have failed to allege that Defendants had knowledge about the specifics of their contracts with WPE, Mot. at 13-14, that is not grounds for dismissal at the pleading stage.  *See Moore*, 73 F. Supp. 3d at 1203 (rejecting the argument that the plaintiff had to identify a specific contract term or language).

United States District Court
Northern District of California

### b.    Intent

Plaintiffs have also sufficiently pleaded intent.  Defendants disabled WPE's access to WordPress.org, which Defendants knew would degrade WPE's services, and consequently, those of its customers, including Plaintiffs.  SAC ¶ 55.  The goal of their "scorched earth nuclear war" against WPE, *id.* ¶ 100, was to "deliberately target[] and inhibit[] the services and contracts between WPE and Plaintiffs and Class Members."  *Id.* ¶ 56.  "[I]mmediately after the disruptions to WPE began," Defendants' "sales representatives began contacting WPE customers."  *Id.* ¶ 60; *see also id.* ¶ 59.  While Defendants describe this behavior as demonstrating "at most an intent to compete for business," Mot. at 15, the Court must take Plaintiffs allegations as true and draw all inferences in their favor.  *See Gregg v. Hawaii Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017).  On the current allegations then, Plaintiffs have plausibly established that Defendants acted intentionally with the aim of disruption and inducing breach of their contracts with WPE.  *See Moore*, 73 F. Supp. 3d at 1203 (finding intent sufficiently pleaded where plaintiff alleged that "Apple, as designer of the Messages application, knew that use of iMessages would result in undelivered text messages if a user switched to a non-Apple device" but failed to alert consumers about the issue).

### c.    Breach or Disruption

Plaintiffs' allegations of disruption are also sufficient.  The benefits for which Plaintiffs contracted with WPE required continued access to WordPress.org.  SAC ¶¶ 73, 90.  By cutting off WPE's access, Plaintiffs "were unable to install or update Plugins or themes[,]" their administrative access to the websites they operated was limited, as "they could not update the Plugins, themes, and in some cases the content of the website," and they had "limited access to software updates, editing tools, and access control because these features were all tied to the WordPress central repository."  *Id.* ¶ 48.  This "crippled website owners' ability to control and modify their websites in a managed environment, as they had paid WPE for[.]"  *Id.*  It also "created a significant security risk, as security vulnerabilities may not be left unpatched."  *Id.*  As a result, Plaintiffs had to perform the services they had contracted for themselves, leaving them without the benefit of the contracts they had negotiated with WPE.  *Id.* ¶¶ 76, 90.  While

Defendants urge the Court to require Plaintiffs to identify the relevant terms of their actual contracts with WPE and show how Defendants prevented performance or made performance more expensive or difficult, Mot. at 15-16, Plaintiffs' allegations adequately establish disruption at the pleading stage. *See Moore*, 73 F. Supp. 3d at 1204 (finding element of breach or disruption sufficiently pleaded where plaintiff alleged Apple's Messages application prevented her from receiving text messages, a service for which Plaintiff paid as part of her wireless service contract).

### 2.    Intentional Interference with Prospective Economic Relations

The elements of Plaintiffs' claim for intentional interference with prospective economic relations are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).

Defendants argue this claim fails for lack of sufficient allegations of the requisite economic relationship, defendant's knowledge, or independent wrongful acts. Mot. at 18. As before, assuming Plaintiffs adequately plead the remaining elements of this claim, their allegations do not establish "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff." *See CRST Van Expedited, Inc.*, 479 F.3d at 1108. Plaintiff Keller alleges that one of his "clients was considering adding a new website, but declined to do so after [he] advised the clients about the risk of problems caused by the WPE dispute and service disruption."[3] SAC ¶ 81. This allegation, like those in the original complaint, falls short of suggesting a "reasonabl[e] probab[ility] that the prospective economic advantage would have been realized but for defendant's interference." *See AlterG, Inc. v. Boost Treadmills*

---

[3] Plaintiff Schanzer makes no comparable allegation, and so dismissal without leave to amend her claim is warranted for this reason alone.

*LLC*, 388 F. Supp. 3d 1133, 1151 (N.D. Cal. 2019) (internal quotations and citation omitted); *see also Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944, at *8 (N.D. Cal. May 6, 2019) (explaining that "even in a situation where companies were actively engaging in business negotiation," that is not enough to establish the requisite economic relationship).

Accordingly, Defendants' motion to dismiss the claim for intentional interference with prospective economic relations is granted. Because Plaintiffs were previously allowed to remedy the deficiency discussed above, the Court denies further leave to amend. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

### C.    UCL

Defendants seek dismissal of Plaintiffs' UCL claim on the grounds that they lack statutory standing, restitution is unavailable, and an adequate remedy at law exists. Mot. at 18-22. The Court addresses each in turn.

#### 1.    Statutory Standing

Under the UCL's "the narrower standing requirements[,]" a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011).

Defendants argue that Plaintiffs' alleged harm is non-monetary or self-inflicted costs. Mot. at 19. Plaintiffs counter that because they have "alleged a direct economic injury—the loss of the benefit of the bargain," that injury "alone satisfies the statute's standing requirement." Opp. at 22, 23. The Court agrees this suffices to the extent Plaintiffs seek a monetary remedy. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *21 (N.D. Cal. Aug. 30, 2017) (allegations of lost benefit of the bargain were sufficient to establish UCL standing). However, to the extent Plaintiffs seek injunctive relief, they lack standing for the reasons previously discussed in this Order. Defendants' motion to dismiss the UCL claim for lack of statutory standing is thus granted in part and denied in part with leave to

amend.

### 2. Restitution

"A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co.*, 29 Cal. 4th at 1144. "[R]estitution is the only monetary remedy authorized in a private action brought under the unfair competition law." *Clark v. Superior Ct.*, 50 Cal. 4th 605, 614 (2010). "[A]n order for restitution [i]s one compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." *Korea Supply Co.*, 29 Cal. 4th at 1144-45 (internal quotations and citation omitted).

Defendants contend that restitution is unavailable to Plaintiffs absent a showing that "Defendants are in possession of money or property in which Plaintiffs have an ownership interest." Mot. at 20-21 (citing *Banga v. Experian Info. Sols.*, No. 4:08-cv-04147-SBA, 2010 WL 11531066, at *3 (N.D. Cal. Mar. 8, 2010). Plaintiffs offer two arguments in opposition. Neither persuades. First, they assert that "[e]ven if restitution ultimately proved unavailable, Plaintiff's UCL claim would survive because Plaintiffs independently seek injunctive relief[.]" Opp. at 23. This argument fails because, as discussed above, Plaintiffs have yet to establish standing to seek such relief. Second, Plaintiffs contend "restitution may be available where a plaintiff loses the benefit of the bargain as a result of a defendant's conduct—even if the plaintiff paid the money to an intermediary." *Id.* at 24. Here, however, Plaintiffs did not pay money to an intermediary. They paid money to WPE, their hosting provider. This renders the three cases on which Plaintiffs rely inapposite. In *Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889, 915 (2007), the court recognized an "ownership interest in any profits Arcadia may have gained through interest or earnings on the plaintiffs' money that Arcadia wrongfully held." The plaintiffs sought to recover restitution based on funds defendant "wrongfully collected from the plaintiffs." *Id.* at 917. In *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1340 (2009), the court of appeal upheld the trial court's conclusion that the defendant could be liable for restitution under the UCL. There, the defendant had not received services charges directly from class members, but through its wholly-owned subsidiary, and the trial court concluded that both companies had operated as a single

enterprise. *Id.* at 1340. In *Trew v. Volvo Cars of N. Am., LLC*, No. CIV-S-051379DFLPAN, 2006 WL 306904, at *3 (E.D. Cal. Feb. 8, 2006), the court permitted the plaintiffs to proceed on their UCL claim because "if Volvo profited from class members who replace defective [electronic throttle modules] by purchasing new ones, then plaintiffs could recover that money from Volvo under a theory of restitution." *Id.*

In light of these authorities, the Court cannot conclude that Plaintiffs' theory of restitution is cognizable. Accordingly, Defendants' motion to dismiss the UCL claim for lack of allegations that Defendants have an ownership interest in the funds Plaintiffs are seeking to recover is granted with leave to amend.

### 3.    <u>Adequate Remedy at Law</u>

Finally, Defendants seek dismissal of Plaintiff's UCL claim because they have not shown that legal remedies are inadequate. Mot. at 21-22. Plaintiffs counter that they "expressly plead their UCL claim in the alternative," and "[t]hat alone is sufficient." Opp. at 26 (citing SAC ¶ 140). The Court disagrees. Although Plaintiffs are free to pursue alternative remedies at the pleading stage, where, as here, Plaintiffs pursue both legal and equitable remedies, they must plead facts as to why legal remedies may be inadequate. *See, e.g.*, *Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 907 (N.D. Cal. 2024) (denying motion to dismiss equitable claims where plaintiff alleged she might lack of adequate remedy at law "if the amount of damages recoverable is less than the price premium she paid" for defendant's products and that "[r]estitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies . . . .").[4] Accordingly, Defendants' motion to dismiss for failure to allege the unavailability of an adequate legal remedy is granted with leave to amend.

### CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs may file a third amended complaint curing the deficiencies

---

[4] Plaintiffs also argue that even if they lack allegations of an inadequate legal remedy, this pleading defect does not bar their request for forward-looking injunctive relief. Opp. at 26. In light of Plaintiffs' failure to establish standing to pursue injunctive relief, the Court does not reach this argument.

United States District Court
Northern District of California

discussed above within 30 days of this order.  They may not otherwise add new substantive allegations, plead new claims, or name additional parties without Defendants' consent or leave of Court.  Courtesy copies of the third amended complaint and the redline required by the Court's Standing Order for Civil Cases is due to chambers within 3 days of filing.

**IT IS SO ORDERED.**

Dated: July 27, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

11