JOSEPH R. ROSE, SBN 27902
jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

KAHN A. SCOLNICK, SBN 228686
kscolnick@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800

JOSH A. KREVITT, SBN 208552
jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER (*admitted pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendant Automattic Inc. and Matthew Charles Mullenweg*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

RYAN KELLER and SHARON SCHANZER, individually and on behalf of their businesses, KELLER HOLDINGS LLC (d/b/a SecureSight) and RLDGROUP, and on behalf of all others similarly situated,

Plaintiffs,

vs.

AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,

Defendants.

Case No. 4:25-CV-01892-AMO

**DECLARATION OF ANDREW KASABIAN IN SUPPORT OF STIPULATION RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

**DECLARATION OF ANDREW KASABIAN**

I, Andrew Kasabian, declare as follows:

1. I am a member in good standing of the California Bar and am admitted to practice before this Court. I am an attorney in the law firm of Gibson, Dunn, & Crutcher LLP, counsel of record for Defendants Automattic Inc. and Matthew Charles Mullenweg in this action. I submit this declaration in compliance with Paragraph I.4 of the Court's Standing Order for Civil Cases, which requires that a party submitting a proposed order regarding the discovery of ESI to file "a declaration explaining why use of one of the model orders is not practicable," in support of the parties' Proposed Stipulated Order Regarding Discovery of Electronically Stored Information that is being filed concurrently (ECF No. 79). Unless otherwise stated, the following facts are within my personal knowledge and, if called and sworn as a witness, I could and would testify competently to these facts.

2. The parties' Proposed Stipulated Order used, as a template and guide, the Model Stipulated Order Re: Discovery of Electronically Stored Information found at https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/e-discovery-esi-guidelines-model-stipulated-orders. The Proposed Stipulated Order modifies or omits Sections 2-8 of the Model Order, for several reasons.

3. First, to ensure coordination and consistency, the Proposed Stipulated Order takes a similar approach to the production format—including production components, metadata fields, and data/image load files—of documents produced by Defendants in the related action *WPEngine, Inc. v. Automattic Inc., et al.*, Case No. 3:24-cv-06917-AMO.

4. Second, because this case is related to the earlier-filed *WPEngine, Inc. v. Automattic, Inc.* case and relies on materials collected and produced in that matter, Defendants do not believe that the Model Order's provisions relating to topics such as custodians (Section 4), search methodology (Section 5), and phasing (Section 7) are necessary.

5. Third, the parties have largely completed document production as of the date of this

filing. Therefore, many provisions from the Model Order, such as Section 3 (liaison), Section 4 (preservation, custodians, sources of data), Section 5 (search), and Section 7 (phasing) are inapplicable.

6. Fourth, the Model Order provides a general framework for ESI discovery and addresses the form of production in Section 6, which offers the parties a choice among PDF, TIFF, native, and paper formats (or a combination thereof) together with a general agreement not to degrade the searchability of documents. But the Model Order does not specify the production components, load-file structure, metadata fields, or processing rules necessary to govern the exchange of technical ESI in a case of this nature. This putative class action is premised on technical allegations regarding the web-based WordPress ecosystem. The authenticity, chronology, and completeness of the ESI at issue—and the parties' ability to review and use the ESI efficiently—depend on the accuracy with which native files and their associated metadata are preserved and produced. The Model Order's general approach to production is thus incomplete and not practicable in these circumstances because it doesn't ensure that ESI is produced in a consistent, usable, and non-degraded form.

7. Attached at **Exhibit A** is a redline showing the differences between the Model Stipulated Order Re: Discovery of Electronically Stored Information for Standard Litigation and the parties' Proposed Stipulated Order, as required by Paragraph I.4 of the Court's Standing Order for Civil Cases.

DATED: August 26, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: ______________________
Andrew Kasabian

*Attorney for Defendant Automattic Inc. and Matthew Charles Mullenweg*

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Plaintiff(s)
RYAN KELLER and SHARON SCHANZER, individually and on behalf of their businesses, KELLER HOLDINGS LLC (d/b/a SecureSight) and RLDGROUP, and on behalf of all others similarly situated,

Plaintiffs,

vs.

Defendant(s).
AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,

Defendants.

Case Number: C xx-xxxxNo. 4:25-CV-01892-AMO

**[MODELPROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with This Order addresses only the format and form of ESI productions; the parties' prior agreements regarding ESI, including those set forth in this Court's Guidelines foradopted by the Discovery of ESI.

**3. LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have

access to those who are, knowledgeable about the technicalparties, remain in full force and effect for all other aspects of e-ESI discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only ESI created or received between _________ and _________ will be preserved;

b) The parties have exchanged a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe

## 2. PRODUCTION PROCEDURES

**Known, Responsive ESI**: Specific, non-duplicative ESI that is identified by a party as responsive to a discovery request shall not be withheld from review or production solely on the grounds that it was not identified by (or is subject to an exclusion set forth in) the protocols described in, or developed in accordance with this Order; the protocols described in, or developed in accordance with any prior agreement between the parties regarding ESI; or those described in or developed in accordance with this Court's Guidelines adopted by the parties.

**De-Duplication.** Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI should be preserved, (e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

c) The parties have agreed/will agree on the number of custodians per party for whom ESI will be preserved;

d) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced: [e.g., backup media of [named] system, systems no longer in

usebased on MD5 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

**Email Threading.** Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email"), and need not produce earlier, less inclusive email messages or "thread numbers" that cannot be accessed];

e) Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following: [e.g., backup media created before ________, digital voicemail, instant messaging, automatically saved versions of documents];

f) In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: __________________________________________.

5. **SEARCH**

The parties agreeare fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that shall not be produced. Where a prior email contains an attachment that is not included in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discoverythe Last In Time Email, the prior email and attachment shall be produced. Notwithstanding the foregoing, if the producing party redacts some or all of an earlier "thread member" of an email string, or an attachment to such an email, on the basis of attorney-client privilege, work-product doctrine, or any other applicable privilege, immunity, or protection, the entire string shall be produced containing the redacted material.

3. 6. **PRODUCTION FORMATS**

a. **Production Components**

Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

i. an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

ii. an image load file (.OPT) that can be loaded into commercially acceptable production software (e.g., Concordance or Relativity) that shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT;

iii. The parties agree to produce documents in ☐ PDF, ☐TIFF, ☐ images;

iv. native files; and/or ☐paper or a combination thereof (check all that apply)] file formats.

v. document level .TXT files for all documents containing extracted full text or OCR text.

vi. all produced native files will retain all metadata for such files in an unaltered state.

In addition:

vii. Parent-child relationships will be maintained in production. Links within a document are not considered attachments for the purposes of maintaining a "family" relationship in production. The Receiving Party may make reasonable requests for production of hyperlinked documents on a case-by-case basis.

viii. If a particular documents warrantdocument warrants a different production format, the partiesParties will cooperate in good faith to arrange for thea mutually acceptable production format

**b. Data Load File/Images Load Files**

Each TIFF in a production must be referenced in the corresponding image load file. The total number of such documents. The parties agree not to degrade the searchability of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the

production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

**c. Metadata Fields and Metadata File.**

Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document.

- Start Bates
- End Bates
- Start Attach
- End Attach
- Subject
- From
- To
- CC
- BCC
- Sent Date/Time
- Date Created
- Date Last Modified
- Original Filename
- Document Title
- All Custodians
- Custodian
- Author
- Confidentiality
- MD5Hash

- File Size
- File Extension
- Page Count
- PathToText
- PathToNative
- Has/Does Not Have Redactions

A Producing Party is not obligated to populate or edit manually any of the fields above if such fields cannot be extracted from a document, with the exception of the following: (a) Start Bates, (b) End Bates, (c) Start Attach, (d) End Attach, which should be populated by the Producing Party or the Producing Party's vendor. The Producing Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents. The metadata shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)
- Multi-value delimiter = ; (ASCII Code 059)

d. **Metadata Accuracy**

Each party shall make reasonable efforts to ensure that metadata produced is accurate and complete. If a party discovers that metadata in a prior production was incorrect or missing (e.g., incorrect or missing date information), the party shall promptly notify the opposing party and provide corrected metadata in a supplemental production or load file.

e. **Processing**

With the exception of time zone modification (discussed below), ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification. ESI items shall be produced with all of the metadata and coding fields set forth above.

i. Time Zone. ESI items shall be processed so as to preserve and display the

date/time shown in the document. ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a Producing Party, that time zone shall be Pacific Standard Time (PST), and shall be consistent across each Producing Party's productions. Such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

ii. Hidden Content. ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the document.

iii. TIFFs. Unless excepted below, single page Group IV black and white TIFFs should be provided, with at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the respective page of a document. Each image shall be branded with the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). All images will display all data visible in its native application. Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher-quality TIFF image or the native or original file. TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

**f. Hard Copy Documents**

Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Hard copy documents shall be produced with an accompanying metadata load file as forth above in Paragraph 3(c), with the exception of PathToNative and MD5Hash which would not exist for hard copy documents.

i. Unitization of Paper Documents. Paper documents, to the extent collected and/or produced, should be logically unitized for production. Therefore, when scanning paper documents for production, documents should be scanned as they are kept in the regular course of business including maintaining any groupings, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. Producing Parties will make reasonable efforts to unitize documents as they are kept in the regular course of business.

ii. File/Binder Structures (Parent-Child Unitization). Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized as described in subsection (i) above, but maintained together in a parent-child relationship as specified in paragraph 3(c). The parties will make their best efforts to unitize parent-child groups correctly.

iii. Identification. Where a document or a document group—such as folder, clipped bundle, or binder—has an identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as partthe first page of the document production processor grouping.

7. **PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI and the initial production will be from the following sources and custodians: ______________________________________________. Following the initial production

g. **Text Files**

A single multi-page text file shall be provided for each document, and the filename should match its respective Start Bates filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

h. **Native files**

i. All spreadsheet (e.g., Microsoft Excel) files shall be produced as native files with TIFF placeholder images. Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the partiesredacted native file will continuebe produced as provided herein. Presentation files requiring redaction, including Microsoft PowerPoint files, will be produced as TIFF images with redactions, and for presentations with speakers notes, Producing Parties shall take reasonable efforts to prioritizeshow both the order of subsequent productionsslide and speakers' notes for that slide on a single TIFF image. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format.

8. ~~**DOCUMENTS PROTECTED FROM DISCOVERY**~~

ii. Parties may produce native versions of cache or system files, including files with extensions of .cnt and .1, to the extent such documents are responsive. Parties shall be entitled to request separate productions of all presentation (e.g., Microsoft PowerPoint) files in native format. The Producing Party shall make a good faith effort to produce such files in native format within five (5) days of such Request.

iii. Native files will be produced with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 3(c) above. A

Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

iv. a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mereTo the extent other types of documents are produced in this litigation, the parties will meet-and-confer regarding whether production of privileged or work-product-protectedthose documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceedingnative format is feasible and appropriate.

b) The parties have agreed upon a "quick peek" process pursuant to Fed. R. Civ. P. 26(b)(5) and reserve rights to assert privilege as follows ____________________

**i. Confidentiality Designation**

Documents produced in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each document produced in native format will have its confidentiality designation identified in the native filename and text filename and indicated on its corresponding TIFF placeholder.

**j. Withheld Files**

A Bates numbered TIFF placeholder must accompany every file withheld for privilege.

**k. Unreviewable Files**

A Bates numbered TIFF placeholder must accompany every file that is unreviewable due to technical issues.

**l. Proprietary Files**

c) Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriateTo the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties shall meet and confer

regarding the appropriate production format.

m. **Manner of Production**

All productions must be made by secure file transfer to agreed-upon email addresses. In the event the Producing Party deems it is not practical to upload a voluminous production (e.g., a production exceeding 20GB) to a secure file transfer site, it shall be sent to the Receiving Party by overnight mail on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each production shall be accompanied by a cover letter that identifies: (1) the Producing Party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the confidentiality designations, if any, to which the produced materials are subject.

3. ~~9.~~ **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: August 26, 2026 *Is/ Sabita Soneji*

Counsel for ~~Plaintiff~~Plaintiffs

Dated: August 26, 2026 */s/ Kahn Scolnick*

Counsel for ~~Defendant~~Defendants

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:

UNITED STATES DISTRICT/MAGISTRATE JUDGE

**SIGNATURE ATTESTATION**

I, Kahn A. Scolnick, hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the contents of this filing and have authorized it.

| | |
|---|---|
| Dated: August 26, 2026 | */s/ Kahn Scolnick* |
| | Counsel for Defendants |

Document comparison by Workshare on Thursday, August 27, 2026 1:10:27 PM

| **Input:** | |
|---|---|
| Document 1 ID | Model-Stip-E-discovery-OrderStandard.docx |
| Description | originalDocument |
| Document 2 ID | Automattic_Keller - Proposed ESI Protocol (GDC Edits)(5010011370.8).docx |
| Description | modifiedDocument |
| Rendering set | Standard |

| **Legend:** | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| **Statistics:** | |
|---|---|
| | Count |
| Insertions | 187 |
| Deletions | 69 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 256 |