STEPHEN SHACKELFORD, JR. (admitted *pro hac vice*)
sshackelford@susmangodfrey.com
SHAWN J. RABIN (admitted *pro hac vice*)
srabin@susmangodfrey.com
GENG CHEN (admitted *pro hac vice*)
gchen@susmangodfrey.com
SHAULI BAR-ON, SBN 356650
sbar-on@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: 212-336-8330
Facsimile: 212-336-8340

ELIZA FINLEY, SBN 301318
efinley@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: 310-789-3100
Facsimile: 310-789-3150

*Attorneys for Defendant Automattic Inc.*

Timothy P. Crudo (State Bar No. 143835)
Rees F. Morgan (State Bar No. 229899)
Mark L. Hejinian (State Bar No. 281417)
Daniel M. Bruggebrew (State Bar No. 307037)
Rachel Rose Suhr (State Bar No. 323531)
**COBLENTZ PATCH DUFFY & BASS LLP**
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663

*Attorneys for Defendant Matthew Charles Mullenweg*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

RYAN KELLER and SHARON SCHANZER, individually and on behalf of their businesses, KELLER HOLDINGS LLC (DBA SecureSight) and RLDGROUP, and on behalf of all others similarly situated,

*Plaintiffs*,

v.

AUTOMATTIC INC., a Delaware corporation, and MATTHEW CHARLES MULLENWEG, an individual,

*Defendants*.

No. 4:25-cv-01892-AMO

Hon. Araceli Martínez-Olguín

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND ENFORCE CLASS ACTION WAIVER; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: February 4, 2027
Time: 2:00 p.m.
Courtroom: 5, 2nd Floor
Judge: Hon. Araceli Martínez-Olguín

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 4, 2027, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5, 2nd Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Araceli Martínez-Olguín, Defendants Automattic Inc. ("Automattic") and Matthew Charles Mullenweg ("Mullenweg," and together with Automattic, "Defendants") will and hereby do move for an order (1) compelling Plaintiffs Ryan Keller and Sharon Schanzer, individually and on behalf of their businesses Keller Holdings LLC (d/b/a SecureSight) and RLDGROUP, to arbitrate their claims against Defendants on an individual basis; and (2) enforcing the class action waiver in Plaintiffs' agreements with WP Engine, Inc. by striking Plaintiffs' class allegations.

This Motion is made under the Federal Arbitration Act, 9 U.S.C. §§ 2–4, on the grounds that (a) Plaintiffs' contracts with WP Engine require [redacted] Ex. B §§ 12(c)–(d) (WPE_KELLER00002186); (b) Defendants may enforce those provisions under the doctrine of equitable estoppel because Plaintiffs' sole remaining claim, for intentional interference with contract, depends on and presumes the existence of those contracts; and (c) Plaintiffs cannot establish waiver, because Plaintiffs did not identify the contracts governing their claims until October 23, 2026, and Defendants moved promptly thereafter.

This Motion rests on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Geng Chen and Exhibits A through Z attached thereto, the pleadings and records on file in this action, and any further evidence and argument presented at or before the hearing.

## STATEMENT OF RELIEF SOUGHT

Defendants request an order (1) compelling Plaintiffs to arbitrate their claims against Automattic and Mullenweg individually before the American Arbitration Association under Section 12(d) of the WP Engine Terms of Service; and (2) enforcing the class action waiver in Section 12(c) by striking the class allegations in the Second Amended Complaint.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES TO BE DECIDED ..... 2

III. BACKGROUND ..... 3

A. Plaintiffs' Contracts with WP Engine Require Individual Arbitration and Prohibit Class Actions ..... 3

B. Plaintiffs Sue Defendants for Interfering With Those Contracts ..... 3

C. For Twenty Months, Plaintiffs Did Not Identify the Contracts They Were Suing On ..... 4

IV. ARGUMENT ..... 6

A. Plaintiffs Must Arbitrate Their Claims Because Their Claims Depend on the WP Engine Agreement ..... 6

1. A Nonsignatory May Enforce an Arbitration Agreement Through Equitable Estoppel ..... 6

2. Plaintiffs' Tortious Interference Claim Is Built on the Agreement That Requires Individual Arbitration ..... 7

B. The Class Action Waiver Independently Bars Plaintiffs' Class Claims ..... 8

C. Defendants Did Not Waive Their Right to Arbitrate ..... 10

1. Waiver Requires Knowledge of an Existing Right to Arbitrate and Intentional Acts Inconsistent With It ..... 10

2. Plaintiffs Cannot Satisfy Either Prong ..... 11

3. Plaintiffs' Anticipated Waiver Arguments Fail ..... 12

V. CONCLUSION ..... 17

INDEX OF EXHIBITS ..... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ............ 8

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023) ............ 10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ............ 8

*In re BAM Trading Servs. Inc. Sec. Litig.*,
733 F. Supp. 3d 854 (N.D. Cal. 2024) ............ 6

*Blau v. AT & T Mobility*,
2012 WL 566565 (N.D. Cal. Feb. 21, 2012) ............ 14

*Britton v. Co–Op Banking Group*,
916 F.2d 1405 (9th Cir. 1990) ............ 10, 11, 16

*Cadena v. Am. Honda Motor Co. Inc.*,
2020 WL 3107797 (C.D. Cal. June 10, 2020) ............ 11, 13, 16

*Coinbase, Inc. v. Bielski,*
599 U.S. 736 (2023) ............ 10

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ............ 8

*Fisher v. A.G. Becker Paribas Inc.*,
791 F.2d 691 (9th Cir. 1986) ............ 2, 10, 17

*Grigson v. Creative Artists Agency L.L.C.*,
210 F.3d 524 (5th Cir. 2000) ............ 1, 6, 8

*In re Intuniv Antitrust Litig.*,
2021 WL 517386 (D. Mass. Jan. 29, 2021) ............ 11

*Keane v. 40 Years, Inc.*,
2019 WL 4014769 (W.D. Wash. Apr. 11, 2019) ............ 14

*Last v. M-I, L.L.C.*,
2024 WL 551948 (E.D. Cal. Feb. 9, 2024) ............ 11, 16

*Laver v. Credit Suisse Sec. (USA), LLC*,
976 F.3d 841 (9th Cir. 2020) ............ 9

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986) ........ 12

*Meyer v. WMCO-GP, LLC*,
211 S.W.3d 302 (Tex. 2006) ........ 1, 6, 7

*MouseBelt Labs Pte. Ltd. v. Armstrong*,
674 F. Supp. 3d 728 (N.D. Cal. 2023) ........ 11, 12, 16

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ........ 7

*Naranjo v. Nick's Mgmt., Inc.*,
652 F. Supp. 3d 737 (N.D. Tex. 2023) ........ *passim*

*Narez v. Macy's W. Stores, Inc.*,
2016 WL 4045376 (N.D. Cal. July 28, 2016) ........ 9

*Nieva v. Macys Retail Holdings, LLC*,
2026 WL 2350756 (C.D. Cal. June 30, 2026) ........ 9

*Parsittie v. Schneider Logistics, Inc.*,
2023 WL 2629869 (C.D. Cal. Feb. 8, 2023) ........ 11, 12, 16

*Porteous v. Flowers Foods, Inc.*,
766 F. Supp. 3d 1093 (D. Or. 2025) ........ 9

*Porteous v. Flowers Foods, Inc.*,
2026 WL 2938460 (D. Or. Sept. 30, 2026) ........ 9

*Rathmann v. Ford Motor Co.*,
2023 WL 6150270 (W.D. Tex. Aug. 25, 2023) ........ 8

*Rodriguez v. ABM Indus. Groups, LLC*,
2025 WL 3050213 (C.D. Cal. Sept. 2, 2025) ........ 9

*Rogers v. 12291 CBW, LLC*,
2022 WL 19976339 (E.D. Tex. Mar. 31, 2022) ........ 10

*Sovak v. Chugai Pharm. Co.*,
280 F.3d 1266 (9th Cir. 2002) ........ 10

*Suchite v. ABM Aviation, Inc.*,
741 F. Supp. 3d 878 (S.D. Cal. 2024) ........ 9

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ........ 14

*Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*,
97 F. App'x 462 (5th Cir. 2004) ........ 11, 12

*Van Ness Townhouses v. Mar Indus. Corp.*,
862 F.2d 754 (9th Cir. 1988) .......... 10

**Statutes**

Federal Arbitration Act .......... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' only remaining claim alleges that Defendants interfered with Plaintiffs' contracts with WP Engine. Those contracts require [redacted] Ex. B §§ 12(c)–(d) (WPE_KELLER00002186). Having sued on those contracts, Plaintiffs are bound by their dispute-resolution terms.

Plaintiffs' WP Engine contracts consist of the Terms of Service and [redacted] the Service Level Agreement, Acceptable Use Policy, Data Privacy Addendum, and Privacy Policy (together, the "Agreement"). Ex. B § 1(a) (WPE_KELLER00002179); Exs. C–E. The [redacted] Ex. B § 12(d) (WPE_KELLER00002186), [redacted] *id.* § 12(c) (WPE_KELLER00002186). Plaintiffs' only remaining claim exists solely because of those contracts: it alleges that Defendants disrupted "valid contracts between Plaintiffs and Class Members and the third party WPE," depriving Plaintiffs of "the benefit of their bargain." Dkt. 57 ("SAC") ¶¶ 123, 127. Under Texas law, which the Agreement selects, a signatory must arbitrate claims that "make[] reference to or presume[] the existence of" an agreement requiring arbitration, even against a nonsignatory. *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 306 (Tex. 2006) (quoting *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)) (applying doctrine of equitable estoppel). Plaintiffs cannot "'have it both ways.'" *Grigson*, 210 F.3d at 528. A nationwide class action over contracts that forbid class actions is the clearest case of having it both ways.

Nor can Plaintiffs blame Defendants for the timing of this motion or establish that Defendants waived their right to arbitration. For twenty months, Plaintiffs refused to identify the contracts underlying their claims. Automattic asked in its motion to dismiss. It asked in document requests, interrogatories, and requests for admission. It asked in discovery deficiency letters and set a deadline, which Plaintiffs ignored. On August 5, 2026, Plaintiffs eventually answered that they had not kept copies of their own contracts and committed only to "working with WPE's counsel to identify the Bates numbers corresponding to the plans applicable to Plaintiffs and putative class members during the relevant period, and [to] supplement [their] response with that information if available." Ex. O at 3.

That supplement did not arrive until **October 23, 2026**, when—only after WP Engine's lawyers told them which terms applied—Plaintiffs finally identified the contracts on which they sue. Ex. Q at 1.

Those contracts contain individual arbitration provisions and class action waivers. Defendants met and conferred with Plaintiffs the next business day and filed this motion shortly thereafter. Waiver requires "knowledge of an existing right to compel arbitration" and "acts inconsistent with that existing right." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Plaintiffs can show neither. Defendants could not have known of a right under a contract that Plaintiffs themselves could not name until WP Engine's counsel named it for them. And repeatedly asking Plaintiffs to identify that contract is the opposite of acting inconsistently with a right to arbitrate. Plaintiffs will point to a May 2026 email generically referring to "the WPE Terms of Service," a reservation of defenses in Defendants' Answer, Defendants' motions to dismiss, and WP Engine's third-party production. *See infra* § IV.C.3. None of these told Defendants which version of WP Engine's ever-changing terms bound these Plaintiffs. Plaintiffs cannot manufacture waiver from their own delay.

And regardless of whether Plaintiffs' claims must be arbitrated, they may bring their claims solely on an individual basis. Their claims arise under an Agreement providing that [redacted] Ex. B § 12(c) (WPE_KELLER00002186), separately and independently of the arbitration clause. *See Naranjo v. Nick's Mgmt., Inc.*, 652 F. Supp. 3d 737, 750 (N.D. Tex. 2023) (enforcing class and collective action waiver as it "is not dependent upon the validity and applicability of the arbitration provision").

Defendants respectfully request that the Court compel individual arbitration of Plaintiffs' sole remaining claim and enforce the class action waiver by dismissing the class claims.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Defendants may compel Plaintiffs to arbitrate their claims individually under the arbitration provision and class action waiver in Plaintiffs' WP Engine contracts, where Plaintiffs' sole remaining claim alleges interference with those very contracts.

2. Whether Plaintiffs can carry their burden to prove that Defendants waived their right to arbitrate and enforce the class action waiver, where Plaintiffs did not identify the contracts governing their claims until October 23, 2026, and Defendants moved promptly thereafter.

## III. BACKGROUND

### A. Plaintiffs' Contracts with WP Engine Require Individual Arbitration and Prohibit Class Actions

Plaintiffs are longtime WP Engine customers who use WP Engine's managed hosting services to build and maintain websites. SAC ¶ 44. The Terms of Service and [redacted]—the Service Level Agreement, Acceptable Use Policy, Data Privacy Addendum, and Privacy Policy—govern their relationship with WP Engine. Ex. B § 1(a) (WPE_KELLER00002179); Exs. C–E. Under the Terms of Service, WP Engine agrees to [redacted] Ex. B § 2(a) (WPE_KELLER00002179).

The Agreement contains three dispute-resolution provisions that control here. First, [redacted] *Id.* § 12(d) (WPE_KELLER00002186 –87). Second, [redacted] *Id.* § 12(c) (WPE_KELLER00002186). Third, [redacted] *Id.*

### B. Plaintiffs Sue Defendants for Interfering With Those Contracts

Plaintiffs allege that Automattic and Mullenweg disrupted WP Engine's access to WordPress.org resources between September and December 2024, which, they say, prevented WP Engine from delivering the services Plaintiffs had contracted for. SAC ¶¶ 1, 125–27. After two amendments and three motions to dismiss, Plaintiffs' only remaining claim is for intentional interference with contract. *See* Dkt. 51 (Dec. 16, 2025 order granting motion to dismiss First Amended Complaint); Dkt. 75 (July 27, 2026 order granting in part motion to dismiss Second Amended Complaint). They seek to pursue that claim on behalf of a nationwide class of "[a]ll persons in the

United States who had ongoing active WPE WordPress Web Hosting Plans on or before September 24, 2024 through December 10, 2024." SAC ¶ 113.

### C. <u>For Twenty Months, Plaintiffs Did Not Identify the Contracts They Were Suing On</u>

From the very beginning of this case, Defendants asked Plaintiffs to identify the contract with which Defendants supposedly interfered. Defendants' first motion to dismiss explained that Plaintiff "does not identify the terms of that contract, which of those terms WPE supposedly breached, how Defendants were responsible for that breach, and whether Defendants even knew of his contract or the terms at issue." Dkt. 20 at 1. Defendants argued that Plaintiff "does not identify any actual term of a WPE contract." *Id.* at 8. Plaintiffs amended twice. Neither amended complaint attached the contract or even identified the Terms of Service as the contracts governing Plaintiffs' relationships with WP Engine. *See* Dkt. 30; Dkt. 57.

*Discovery requests.* On November 14, 2025, Automattic served document requests asking each Plaintiff to produce "[a]ll of YOUR contracts or agreements with WPENGINE, without regard to date or time period." Ex. H at 8 (RFP No. 1); Ex. I at 7 (same). It served interrogatories asking each Plaintiff to "IDENTIFY each contractual term YOU contend DEFENDANTS interfered with, including: (1) the name of all parties to the contract, (2) the specific contractual terms you allege were breached or disrupted, (3) the date the contract was executed, [and] (4) the term of the contract[.]" Ex. F at 6 (Interrogatory No. 2); Ex. G at 6 (same). And it asked each Plaintiff to admit that "YOU never provided YOUR contract(s) with WPENGINE to DEFENDANTS" and "never provided information about YOUR contract(s) with WPENGINE to DEFENDANTS." Ex. J at 6 (RFA Nos. 1–2); Ex. K (same). Plaintiffs objected that earlier plans "are not relevant" and promised only to "undertake a diligent search … for the plan that was in place" when the alleged disruption began. Ex. L at 3 (Resp. to RFP No. 1); Ex. M at 3 (same). No contract followed.

*The May 2026 emails.* In May 2026, Plaintiffs wrote that they "confirmed that their contracts with WPE were the WPE Terms of Service covering each of their plans." Ex. A at 2. Plaintiffs did not produce these contracts. In fact, Plaintiffs admitted in the next sentence that they could not yet identify

"which plan(s) or service(s) they were subscribed to in 2024." *Id*. Plaintiffs then told Defendants that they would complete their production the following week. *Id*. at 1. Two months later, Defendants were still asking Plaintiffs to identify the relevant contracts. *See* Ex. N at 3.

*The July-September 2026 deficiency letters*. On July 8, 2026, Automattic wrote that "[n]either Plaintiff has produced the WPEngine service-plan terms on which their claims depend," that "[t]hese plan terms define the very services Plaintiffs contend were degraded and are central to every claim in this case," and asked: "how do Plaintiffs intend to prove these terms at trial?" Ex. N at 3. Plaintiffs responded that they "did not retain copies of these publicly available contracts" and were "working with WPE's counsel to identify the Bates numbers corresponding to the plans applicable to Plaintiffs." Ex. O at 3. Around this time, Plaintiffs also produced to Defendant documents they had received pursuant to their subpoena to WP Engine. Decl. of Geng Chen ¶ 23. A month passed with no further answer from Plaintiffs. On September 7, Defendants asked Plaintiffs, "[b]y next Monday, September 14," to "identify the terms applicable to Plaintiffs during the September 1, 2024 to December 14, 2024 time period, including any applicable terms of service or service level agreement," explaining that "[w]ith only the tortious interference with contract claim remaining, this is an essential part of the sole remaining cause of action." Ex. P at 1. Plaintiffs ignored the deadline.

*The October 23 identification*. Susman Godfrey appeared for Automattic on October 14, 2026. Dkts. 84–87.[1] After an October 22 meet and confer, Automattic's new counsel again asked for "the Bates numbers of the contracts that applied to plaintiffs during the proposed class period." Ex. Q at 1. The next day, Plaintiffs finally answered, providing "the Bates numbers of the following contractual documents that WPE's counsel has represented to us are the '2024 versions' of each document, and thus applied to Plaintiffs during the proposed class period": the Terms of Service, Acceptable Use Policy, Data Privacy Addendum, and Privacy Policy. *Id.* Those documents are Exhibits B through E to this Motion. [redacted]. Ex. B §§ 12(c)–(d) (WPE_KELLER00002186–87). Automattic met and conferred with Plaintiffs the next business day, October 26, 2026, and promptly filed this motion.

[1] New counsel for Mr. Mullenweg entered notices of appearance on October 23, 2026. Dkts. 95–99.

# IV. ARGUMENT

## A. Plaintiffs Must Arbitrate Their Claims Because Their Claims Depend on the WP Engine Agreement

### 1. A Nonsignatory May Enforce an Arbitration Agreement Through Equitable Estoppel

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 874 (N.D. Cal. 2024) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013)). [redacted]

Under Texas law, "equitable estoppel allows a nonsignatory to compel arbitration . . . when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Meyer*, 211 S.W.3d at 305–06 (quoting *Grigson*, 210 F.3d at 527). In that situation, "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.* at 306 (quoting *Grigson*, 210 F.3d at 527).

Equitable estoppel applies where "the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the nonsignatory." *Naranjo*, 652 F. Supp. 3d at 753 (quoting *Tex. Enters., Inc. v. Arnold Oil Co.*, 59 S.W.3d 244, 249 (Tex. App.—San Antonio 2001, no pet.)). "[T]he linchpin for equitable estoppel is equity—fairness": a plaintiff cannot "'have it both ways'" by "seek[ing] to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision," while "deny[ing] arbitration's applicability because the defendant is a non-signatory." *Grigson*, 210 F.3d at 528.

Put simply, "a signatory cannot simultaneously enjoy the benefits of their contract and avoid its burdens simply because they sue a nonsignatory." *Naranjo*, 652 F. Supp. 3d at 753. That principle applies with particular force to tortious interference claims. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1231 n.7 (9th Cir. 2013) (collecting cases permitting nonsignatories to compel arbitration under equitable estoppel and observing that such cases commonly "involve contract-based causes of action, such as tortious interference or breach of contract").

**2. Plaintiffs' Tortious Interference Claim Is Built on the Agreement That Requires Individual Arbitration**

Equitable estoppel applies with full force here. Plaintiffs' sole remaining claim is for intentional interference with *contract*, and the contract at issue is the Agreement, which requires [redacted] Ex. B § 12(d) (WPE_KELLER00002186). Plaintiffs' claim does not merely "make[] reference to or presume[] the existence of" the Agreement, *Meyer*, 211 S.W.3d at 306; it is built on the Agreement from start to finish.

*First*, the Agreement is the alleged object of the interference. The Second Amended Complaint opens by alleging that Defendants acted to "purposefully, deliberately, and repeatedly disrupt contracts between Plaintiffs and the putative class, and the third-party business WPEngine Incorporated." SAC ¶ 1. Count One then alleges that "there were valid contracts between Plaintiffs and Class Members and the third party WPE," *id.* ¶ 123; that Defendants "knew that class members maintained valid contracts with the third party WPE," *id.* ¶ 124; and that Defendants acted "with the intent to disrupt those contracts" so that "WPE could not fully fulfill its contractual obligations to the Plaintiffs and Class Members for website hosting and related services," *id.* ¶ 125.

*Second*, Plaintiffs' theory of injury is measured by the Agreement. Plaintiffs allege that "[a]s a result of Defendant's targeted conduct, Plaintiffs and the Class did not receive the benefit of their bargain with WPE," SAC ¶ 127, and that "neither Plaintiff received the contracted-for WordPress updates, security patching and plugin risk scans, or fully managed WP updates," *id.* ¶ 126. A benefit-of-the-*bargain* injury cannot be measured without the *bargain* itself. Whether Plaintiffs were denied anything "contracted-for" will turn on what the Agreement promised, including its provisions that

[redacted] Ex. B § 11(e) (WPE_KELLER00002186), [redacted] *id.* § 12(b) (WPE_KELLER00002186).

*Third*, Plaintiffs themselves have identified the Agreement as the contract at issue. On October 23, 2026, they identified the Terms of Service, Acceptable Use Policy, Data Privacy Addendum, and Privacy Policy as the documents that "applied to Plaintiffs during the proposed class period." Ex. Q at 1. Those documents are attached as Exhibits B through E.

In short, Plaintiffs seek to hold Defendants liable for WP Engine's alleged failure to deliver what the Agreement promised, while avoiding the Agreement's requirement [redacted] Ex. B § 12(d) (WPE_KELLER00002186). That is exactly the "have it both ways" pleading that equitable estoppel forbids. *Grigson*, 210 F.3d at 528; *Naranjo*, 652 F. Supp. 3d at 753. Plaintiffs must arbitrate their claims against Defendants.

**B. <u>The Class Action Waiver Independently Bars Plaintiffs' Class Claims</u>**

The same estoppel principles that entitle Defendants to enforce the Agreement's arbitration clause as to Plaintiffs' claim of intentional interference with contract apply equally to its class action waiver. *Naranjo*, 652 F. Supp. 3d at 753 (applying Texas law to conclude that "[t]he logic underlying equitable estoppel applies with no less force in the context of collective action waivers"). The FAA requires courts to enforce class action waivers "according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *see also Rathmann v. Ford Motor Co.*, 2023 WL 6150270, at *2 (W.D. Tex. Aug. 25, 2023) (enforcing class action waiver in warranty contract under Texas law), *report and recommendation adopted*, 2023 WL 6150787 (W.D. Tex. Sept. 20, 2023). [redacted] Ex. B § 12(c) (WPE_KELLER00002186). [redacted]

[redacted] *Id.* § 12(d) (WPE_KELLER00002186) (emphasis added).

Plaintiffs' class allegations run headlong [redacted] Plaintiffs seek to represent a nationwide class defined by the Agreement itself: "[a]ll persons in the United States who had ongoing active WPE WordPress Web Hosting Plans on or before September 24, 2024 through December 10, 2024." SAC ¶ 113. And Count One alleges interference with "valid contracts between Plaintiffs and Class Members and the third party WPE." *Id.* ¶ 123. Every one of those contracts contains [redacted] Ex. B § 12(c) (WPE_KELLER00002186). A class action built on contracts [redacted] is the clearest example of a plaintiff trying to have it both ways.

When a contract contains an enforceable arbitration clause and class action waiver, courts strike or dismiss the class claims and compel arbitration of any remaining individual claims. *Suchite v. ABM Aviation, Inc.*, 741 F. Supp. 3d 878, 888–89 (S.D. Cal. 2024) (granting "Motion to Strike class claims because of the valid waiver in the Agreement" and compelling arbitration of the "individual claims that are subject to arbitration"); *Narez v. Macy's W. Stores, Inc.*, 2016 WL 4045376, at *5 (N.D. Cal. July 28, 2016) (dismissing class claims and compelling arbitration of individual claims); *Nieva v. Macys Retail Holdings, LLC*, 2026 WL 2350756, at *6–7 (C.D. Cal. June 30, 2026) (same); *Rodriguez v. ABM Indus. Groups, LLC*, 2025 WL 3050213, at *6–7 (C.D. Cal. Sept. 2, 2025) (finding arbitration clause and class action waiver applicable and dismissing "action in its entirety").

Nonetheless, arbitration clauses and class action waivers remain "conceptually distinct." *Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020) (quoting *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 176 (2d Cir. 2015)) (cleaned up) (analyzing the two provisions separately). Accordingly, courts have enforced class action waivers separately from arbitration clauses. *See, e.g.*, *Porteous v. Flowers Foods, Inc.*, 766 F. Supp. 3d 1093, 1107 (D. Or. 2025) (concluding that arbitration clause could not be enforced against plaintiff under an exception to the FAA, but striking class and collective allegations because waiver provision was "distinct from the agreement to arbitrate"), *reconsideration denied*, 2026 WL 2938460 (D. Or. Sept. 30, 2026).

Even when a party has arguably waived its right to arbitrate, it may still enforce a class action waiver to dismiss the class claims and proceed solely on an individual basis. *See, e.g.*, *Naranjo*, 652 F. Supp. 3d at 750-51 (applying equitable estoppel to permit a party to enforce an class action waiver, while declining to consider whether it had waived its right to arbitration, because "the collective action provision is not dependent upon the validity and applicability of the arbitration provision"); *Rogers v. 12291 CBW, LLC*, 2022 WL 19976339, at *7-8 (E.D. Tex. Mar. 31, 2022) (concluding under Texas law that "even if the Arbitration Provision were waived as to the named Plaintiffs, the Class Waiver would remain," as "[w]aiver of some rights does not mean that the party relinquishes its rights to have the contract fully performed as to the remaining provisions" (quoting *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 911 (Tex. App.—Houston [1st Dist.] 1995, writ denied))).

Because the Agreement's class action waiver independently bars Plaintiffs from [redacted] Ex. B § 12(c) (WPE_KELLER00002186), the Court should dismiss the class allegations in the Second Amended Complaint.

**C. <u>Defendants Did Not Waive Their Right to Arbitrate</u>**

**1. Waiver Requires Knowledge of an Existing Right to Arbitrate and Intentional Acts Inconsistent With It**

Federal law governs whether a party has waived its right to arbitrate. *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002).

Because waiver extinguishes a valid "contractual right," *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988), Plaintiffs bear the burden of proving waiver, *Britton v. Co–Op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990), *abrogated on other grounds by Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). They must show "(1) knowledge of an existing right to compel arbitration" and "(2) acts inconsistent with that existing right." *Fisher*, 791 F.2d at 694.[2] Delay alone does not establish waiver. *Britton*, 916 F.2d at 1413 (reversing district court's order finding waiver,

[2] Although prejudice was previously a factor, it is no longer one. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023).

even though party waited "a year after appellees filed their complaint" and six months after initially demanding arbitration "before he moved the court to compel arbitration").

A nonsignatory defendant lacks knowledge of its right until it "ha[s] the actual Arbitration Agreement in its possession," even if it "suspected that an arbitration agreement existed." *Parsittie v. Schneider Logistics, Inc.*, 2023 WL 2629869, at *4 (C.D. Cal. Feb. 8, 2023); *see Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 465 (5th Cir. 2004) (no knowledge until agreement "produced in discovery"); *MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728, 735–36 (N.D. Cal. 2023).

Waiver is measured from "when" the defendant acquired "'knowledge' of [its] right to compel arbitration." *Britton*, 916 F.2d at 1413. A defendant that moves promptly once it learns of the right has not waived it, even after "substantial litigation." *MouseBelt Labs*, 674 F. Supp. 3d at 736 (timing "of no consequence" because defendants "previously lacked knowledge of a right to arbitrate" until plaintiff produced the relevant agreement); *Tristar*, 97 F. App'x at 465 (no waiver where defendant "promptly moved to compel arbitration once it became aware of the arbitration clause"); *Cadena v. Am. Honda Motor Co. Inc.*, 2020 WL 3107797, at *8 (C.D. Cal. June 10, 2020) (rejecting waiver because moving party "was ***not*** on notice of its right to compel arbitration while it litigated . . . as it was not aware of its right to enforce the arbitration clause[.]"); *Last v. M-I, L.L.C.*, 2024 WL 551948, at *6–7 (E.D. Cal. Feb. 9, 2024) (no waiver despite defendant's "significant litigation" because the conduct was done "without knowledge that plaintiff's employment agreement with [a third party] contained an arbitration clause" and "defendant conducted a reasonable inquiry under the circumstances which presumably shed light on its ability to move to compel arbitration in the first instance"); *In re Intuniv Antitrust Litig.*, 2021 WL 517386, at *11 (D. Mass. Jan. 29, 2021) (no waiver where moving party "was not aware of the arbitration agreements when it was invoking the litigation machinery").

**2. Plaintiffs Cannot Satisfy Either Prong**

Plaintiffs did not identify the contracts they were suing on until October 23, 2026. The Terms of Service they identified [redacted] *See supra* Background § C;

Ex. Q at 1; Ex. B §§ 12(c)–(d) (WPE_KELLER00002186–87). Until then, despite twenty months of requests, Defendants did not know which agreement governed. Ex. N at 3; Ex. P at 1. At most, they could have "suspected that an arbitration agreement existed," but suspicion is not knowledge. *Parsittie*, 2023 WL 2629869, at *4. Indeed, by Plaintiffs' own account, even *they* did not know which terms applied until WP Engine's counsel told them. Ex. O at 3; Ex. Q at 1. Plaintiffs cannot charge Defendants with knowledge of contract terms that Plaintiffs themselves did not have.

Nor did Defendants act inconsistently with their right to arbitrate. Before Defendants learned of the arbitration clause and class action waiver, everything they did aimed at one question: what contract are Plaintiffs suing on? Asking that question in a motion to dismiss, in written discovery, and in meet-and-confer letters is how a defendant learns whether it has an arbitration right. It cannot abandon an arbitration right it did not know it had. Diligently demanding the very contract that is ultimately revealed to contain an arbitration clause shows the opposite of waiver.

Defendants acted immediately once they had "a sound basis for bringing a motion to compel." *Parsittie*, 2023 WL 2629869, at *4. Plaintiffs identified the contracts on Friday, October 23, 2026. Ex. Q at 1. Automattic met and conferred the next business day, Monday, October 26, and promptly filed this motion. Decl. of Geng Chen ¶ 15. That is exactly the prompt response that defeats waiver. *See Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 & n.3 (9th Cir. 1986); *Tristar*, 97 F. App'x at 465; *MouseBelt Labs*, 674 F. Supp. 3d at 736.

### 3. Plaintiffs' Anticipated Waiver Arguments Fail

Plaintiffs may try to move the knowledge date earlier. Each of their likely arguments fails.

***The May 6, 2026 email***. Plaintiffs will likely argue that their May 6 email, which stated that Plaintiffs' contracts "were the WPE Terms of Service covering each of their plans," gave Defendants knowledge of the arbitration clause. Ex. A at 2. This argument fails.

*First*, Plaintiffs did not produce any contracts with their May 6 email. Simply telling Defendants that their contracts "were the WPE Terms of Service covering each of their plans" does not inform Defendants of their right to arbitrate.

*Second*, the email did not identify *which* Terms of Service applied. WP Engine's terms are not a single fixed document: [redacted] Ex. B § 1(c) (WPE_KELLER00002179), and [redacted], *see* Ex. N at 3 (noting Terms of Service [redacted]).

*Third*, the same email admitted that Plaintiffs themselves were unsure of the terms of their contracts. Ex. A at 2 (noting that Plaintiffs' counsel still needed "to confirm which plan(s) or service(s) they were subscribed to in 2024"). Defendants, as non-signatories to Plaintiffs' contracts, cannot be charged with more knowledge than Plaintiffs had themselves.

*Fourth*, this uncertainty over Plaintiffs' contracts persisted for months and only just resolved. In August they said they "did not retain copies" of their contracts and were still "working with WPE's counsel to identify" which terms applied. Ex. O at 3; Ex. P. And on October 23 they identified the governing documents only on the basis that "WPE's counsel has represented to us" that they were the "'2024 versions.'" Ex. Q at 1. If Plaintiffs did not know which terms governed until October 23, Defendants could not have known in May.

***The Answer.*** Plaintiffs may point to Defendants' Answer, which asserts as its twenty-fifth and twenty-sixth affirmative defenses that "[t]he claims of Plaintiffs and the alleged putative class are barred to the extent they are subject to valid and binding arbitration agreements," that "Defendants hereby reserve, and do not waive, their right to arbitrate under any such agreement," and that "Plaintiffs and the putative class are barred from maintaining, joining, or participating in any class, collective, or representative action against Defendants." Dkt. 81 at 22. These defenses cut against waiver, not for it. A party that pleads a defense *preserves* the right; it does not act inconsistently with it. *Cadena*, 2020 WL 3107797, at *4 (defendant answering complaint "while expressing its right to arbitrate . . . fail[s] to rise to the level of inconsistent action necessar[y] to find waiver").

***The motions to dismiss and discovery.*** Plaintiffs may argue that Defendants' motions to dismiss, which the Court resolved on December 16, 2025 and July 27, 2026, sought a judicial merits ruling inconsistent with an intent to arbitrate. *See* Dkts. 20, 36, 51, 60, 75.[3] But "it is well-established

[3] The Court terminated as moot the initial May 5, 2025 motion to dismiss, Dkt. 20, after Plaintiffs filed their First Amended Complaint on May 23, 2025. *See* Dkts. 28, 32.

that a party does not waive its right to arbitrate merely by filing a motion to dismiss." *Blau v. AT & T Mobility*, 2012 WL 566565, at *2 (N.D. Cal. Feb. 21, 2012) (quoting *Sharif v. Wellness Int'l Network, Ltd.,* 376 F.3d 720, 726 (7th Cir. 2004)); *see also In re TFT–LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4017961, at *5 (N.D. Cal. Sept. 9, 2011) ("Nor is the fact that defendants filed motions to dismiss inconsistent with their right to arbitrate."). As one court explained, "[i]t is also inconsistent with common sense that Defendants knew they could move to compel arbitration but instead chose to pursue a thorny and complicated motion to dismiss." *Blau*, 2012 WL 566565, at *2. In any event, conduct before a party knows of its right cannot waive that right. Defendants filed both motions before Plaintiffs identified any contract: the first on June 20, 2025, and the second on February 17, 2026, nearly three months before even the May 6, 2026 email. *See* Dkt. 60. And both motions argued that Plaintiffs had failed to identify the contracts or contractual terms at issue—the very information Defendants lacked. *See* Dkt. 20 at 2, 8.

***WP Engine's production.*** Plaintiffs may argue that Defendants *should* have known of their right because they could have found WP Engine's terms on its website, or because the Terms of Service were eventually produced by WP Engine in response to Plaintiffs' subpoena (Bates-stamped WPE_KELLER). But "constructive knowledge alone certainly does not provide a compelling basis for finding waiver." *Keane v. 40 Years, Inc.*, 2019 WL 4014769, at *4 (W.D. Wash. Apr. 11, 2019) (surveying case law to conclude that "actual knowledge would seem to provide more compelling support for a finding of waiver"). And whether constructive or actual, Defendants' knowledge requires awareness that *these Plaintiffs* accepted an arbitration agreement covering *these claims*. A publicly posted current version of the terms, or one version among others in a third party's production, says nothing about which version bound Plaintiffs in 2024. That is why WP Engine itself objected to producing "the terms of all contracts with WPE's tens of thousands of customers," Ex. R at 17, and why Plaintiffs had to ask WP Engine's counsel which documents were the "'2024 versions.'" Ex. Q at 1.

Finding the applicable contract in WP Engine's production was not a matter of searching for a needle in a haystack; it was impossible, because nothing in the production identified which of the many

differing versions was the needle. Defendants simply did not know which version of the agreements applied to Plaintiffs, and many of WP Engine's produced terms do not contain arbitration clauses and class action waivers. WP Engine's 2019, 2020, and 2022 Enterprise Terms of Service contain [redacted] Ex. S § 12(c) (WPE_KELLER00002102) (2019 Enterprise Terms); Ex. T § 12(c) (WPE_KELLER00002121) (2020 Enterprise Terms); Ex. U § 12(c) (WPE_KELLER00002166) (2022 Enterprise Terms). A non-Enterprise version of WP Engine's Terms of Service labeled [redacted] Ex. V § 14(c) (WPE_KELLER00002290) (2026 Terms), while a WP Engine Terms of Service Rider [redacted] and provides that [redacted] Ex. W (WPE_KELLER00002050). Other versions do contain [redacted], though with differences in wording and structure. *Compare* Ex. X (WPE_KELLER00002056) (2014 Online Terms) *and* Ex. Y (WPE_KELLER00002075) (2017 Terms) [redacted], *with* Ex. Z §§ 12(c)–(d) (WPE_KELLER00001843) (2018 Standard Terms) *and* Ex. B §§ 12(c)–(d) (WPE_KELLER00002186) [redacted] Whether Plaintiffs are bound to arbitrate turns on which version, and which agreement form (standard or enterprise), govern their accounts. That is precisely the information Plaintiffs withheld until October 23, 2026. Until then, Defendants could not know whether Plaintiffs' contracts required arbitration, precluded class or collective action, permitted litigation only in Texas courts, or something else entirely.

Compounding the problem, many of the agreements produced by WP Engine do not state on their face when they took effect or the period during which they governed. The 2017 Terms, the 2018 Standard Terms, and the 2019, 2020, and 2022 Enterprise Terms bear no effective date at all; at most, some carry an [redacted] *See* Exs. S, T, U, Y, Z. But even [redacted] do not

reliably track the documents' dates: the 2020 Enterprise Terms, for example, carry the same [redacted] as the 2019 version. *Compare* Ex. S (WPE_KELLER00002097), *with* Ex. T (WPE_KELLER00002116). For some, the only indication of timing is a year in the title of the produced PDF file itself—nothing more specific, such as an effective date, an end date, or the period during which the terms governed. And the Rider contains only [redacted] Ex. W (WPE_KELLER00002050). Even with WP Engine's production in hand, Defendants could not determine from the documents themselves which terms were in effect during the proposed class period, let alone which bound these Plaintiffs. Nor could Defendants assume that WP Engine's production contained every agreement that might apply, as Plaintiffs have never represented that this production was complete. WP Engine itself objected to producing "the terms of all contracts with WPE's tens of thousands of customers," Ex. R at 17.

Had Defendants moved to compel based on a guess about which of these varying terms applied, Plaintiffs might well have argued that Defendants could not compel arbitration without first identifying the specific contract and terms binding these Plaintiffs—the very deficiency Defendants had pressed against Plaintiffs' own pleadings. *See* Dkt. 20 at 1, 8. The law does not require a party to move on speculation; it requires a party to move promptly once it has "a sound basis for bringing a motion to compel." *Parsittie*, 2023 WL 2629869, at *4. At most, the mix of produced terms might have led Defendants to "suspect[] that an arbitration agreement existed," but a nonsignatory lacks knowledge until it "had the actual Arbitration Agreement in its possession." *Id.* Defendants cannot be charged with knowledge of a right that depends on facts not in their possession nor even in the Plaintiffs' possession, particularly where, as here, the defendant "conducted a reasonable inquiry under the circumstances" to determine whether it could compel arbitration. *Last*, 2024 WL 551948, at *7; *see MouseBelt Labs*, 674 F. Supp. 3d at 736 (no waiver where defendants "previously lacked knowledge of a right to arbitrate"); *Cadena*, 2020 WL 3107797, at *8 (no waiver where moving party "was not aware of its right to enforce the arbitration clause"). Because waiver is measured from when the defendant acquired "'knowledge' of [its] right to compel arbitration," *Britton*, 916 F.2d at 1413, and Defendants could not know whether

that right existed until October 23, 2026, Plaintiffs cannot carry their burden. *See Fisher*, 791 F.2d at 694.

## V. CONCLUSION

For these reasons, Defendants respectfully request that the Court enter an order (1) compelling Plaintiffs to arbitrate their claims against Automattic and Mullenweg individually [redacted]; and (2) enforcing [redacted], Ex. B § 12(c) (WPE_KELLER00002186), by dismissing Plaintiffs' class allegations.

DATED: October 30, 2026

Respectfully submitted,

SUSMAN GODFREY LLP

By: */s/ Shauli Bar-On*
Shauli Bar-On

*Attorneys for Defendant Automattic Inc.*

COBLENTZ PATCH DUFFY & BASS LLP

By: */s/ Daniel M. Bruggebrew*
Daniel M. Bruggebrew

*Attorneys for Defendant Matthew Charles Mullenweg*

# INDEX OF EXHIBITS

| Exhibit | Bates Number | Title |
|---|---|---|
| A | N/A | Email correspondence between counsel regarding Plaintiffs' WP Engine contracts (May 2026) |
| B | WPE_KELLER00002179–2190 | Filed Under Seal |
| C | WPE_KELLER00001881–1898 | WP Engine Data Privacy Addendum (updated Jan. 1, 2024) |
| D | WPE_KELLER00001955–1961 | WP Engine Privacy Policy (updated Jan. 1, 2024) |
| E | WPE_KELLER00001863–1866 | WP Engine Acceptable Use Policy (updated Feb. 5, 2019) |
| F | N/A | Automattic's First Set of Interrogatories to Plaintiff Keller (Nov. 14, 2025) |
| G | N/A | Automattic's First Set of Interrogatories to Plaintiff Schanzer (Nov. 14, 2025) |
| H | N/A | Automattic's First Set of Requests for Production to Plaintiff Keller (Nov. 14, 2025) |
| I | N/A | Automattic's First Set of Requests for Production to Plaintiff Schanzer (Nov. 14, 2025) |
| J | N/A | Automattic's First Set of Requests for Admission to Plaintiff Keller (Nov. 14, 2025) |
| K | N/A | Automattic's First Set of Requests for Admission to Plaintiff Schanzer (Nov. 14, 2025) |
| L | N/A | Plaintiff Keller's Responses and Objections |

| Exhibit | Bates Number | Title |
|---|---|---|
| | | to Automattic's First Set of Requests for Production (Dec. 15, 2025) |
| M | N/A | Plaintiff Schanzer's Responses and Objections to Automattic's First Set of Requests for Production (Dec. 15, 2025) |
| N | N/A | Letter from Automattic's counsel to Plaintiffs' counsel regarding discovery deficiencies (July 8, 2026) |
| O | N/A | Email correspondence between counsel (Aug. 5–12, 2026) |
| P | N/A | Email correspondence from Automattic's counsel to Plaintiffs' counsel requesting identification of applicable terms (Sept. 7, 2026) |
| Q | N/A | Email correspondence between counsel identifying contracts applicable to Plaintiffs (Oct. 22–23, 2026) |
| R | N/A | WP Engine, Inc.'s Responses and Objections to Subpoena (Aug. 22, 2025) |
| S | WPE_KELLER00002097–2104 | Filed Under Seal |
| T | WPE_KELLER00002116–2123 | Filed Under Seal |
| U | WPE_KELLER00002161–2168 | Filed Under Seal |
| V | WPE_KELLER00002280–2294 | Filed Under Seal |

| Exhibit | Bates Number | Title |
|---|---|---|
| W | WPE_KELLER00002050–2051 | Filed Under Seal |
| X | WPE_KELLER00002052–2058 | Filed Under Seal |
| Y | WPE_KELLER00002072–2076 | Filed Under Seal |
| Z | WPE_KELLER00001839–1846 | Filed Under Seal |

## CERTIFICATION OF ACCURACY

Pursuant to Part H.4 of the Court's Standing Order, I certify that I have personally verified the accuracy of this brief's contents.

*/s/ Stephen Shackelford, Jr.*
Stephen Shackelford, Jr.

## ATTESTATION

I, Shauli Bar-On, am the ECF user whose ID and password are being used to file the above Declaration. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Stephen Shackelford, Jr. and Daniel M. Bruggebrew have concurred in the aforementioned filing.

*/s/ Shauli Bar-On*
Shauli Bar-On

## CERTIFICATE OF SERVICE

I, Shauli Bar-On, declare that on October 30, 2026, I served a copy of the foregoing document on all counsel of record by causing it to be filed via CM/ECF.

*/s/ Shauli Bar-On*
Shauli Bar-On